FILED-USBC, FLS-MIA
'26 SEP 29 PM2:50
MBH

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

*Underlying proceeding: United States Bankruptcy Court for the District of Nevada, Lead Case No. 25-10341-nmc (Chapter 11)*

In re:

NUMALE CORPORATION, et al.,

Debtors.
_______________________________________/

*Miscellaneous Proceeding*
Case No. ______________________

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ERIC BOYER, AND EDWARD PRIETO'S: (I) MOTION TO QUASH SUBPOENAS, AND (II) FOR PROTECTIVE ORDER**

Quintairos, Prieto, Wood & Boyer P.A. ("**QPWB**"), Eric Boyer, and Edward Prieto (collectively, the "**Subpoena Targets**"), submit this Motion to Quash Subpoenas and for Protective Order ("**Motion**"), and state:

## I. INTRODUCTION

1. The Subpoena Targets are threatened targets of the Trustee's[1] purported legal-malpractice claims arising from QPWB's representation of NuMale in an underlying state court action. For months, they cooperated extensively with the Trustee's pre-suit investigation. They produced thousands of pages from the NuMale[2] client file, including the relevant attorney-client communications, in February 2026; participated in multiple meetings and interviews since then; and provided detailed financial and organizational information to facilitate settlement discussions. The Trustee has possessed all documents and information necessary to his purported claims for months.

2. In fact thus armed, the Trustee represented—in writing—that his claims were "substantial, exceptionally well-documented, and supported by an extensive evidentiary record."

---

[1] "**Trustee**" refers to Michael Carmel who was the Chapter 11 Trustee in *In re NuMale Medical, Inc., et al.*, Case No. 25-10341-nmc (Bankr. D. Nev) and is the Liquidating Trustee for the Liquidation Trust created in that matter.

[2] "**NuMale**" refers to NuMale Corporation and NuMale New Mexico SC which are two of seven entities that were petitioners in a jointly administered bankruptcy in the U.S. District of Nevada along with Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida PLLC, and NuMale Nebraska LLC.

In fact, on May 18, 2026 he dropped a ***26-page*** demand letter on QPWB, threatening over $2 billion in exposure and stating he was "prepared to file suit immediately." In subsequent correspondence, the Trustee further threatened to use the purported $2 billion contingent liability on those claims as a basis in a fraudulent transfer action to avoid all QPWB firm distributions since November 2024 to fund any recovery. QPWB, in good faith, spent the summer attempting to address and resolve those disputes with the Trustee. Those efforts culminated in the Trustee's firing a final offer that warned that if the Subpoena Targets did not accept by September 10, 2026, that he would file his complaint against QPWB, its shareholders, and all appropriate transferees, on, of all dates, September 11, 2026.

3. When settlement discussions failed, the Trustee did not file. Instead, on September 10, 2026, he sought, and was granted, authority *ex parte* from the U.S. Bankruptcy Court for the District of Nevada to issue subpoenas not just to QPWB, but its two equity partners, Mr. Boyer and Mr. Prieto, individually in Florida. The Subpoenas[3], now served, demand sweeping personal financial disclosures—tax returns, monthly bank statements, trust instruments, marital agreements, records of transfers to family members—that are abusive and only meant to intimidate the targets and their families into capitulation. This is vexatious harassment, not pre-litigation investigation.

4. Those tactics are unsurprising given the financial incentives at play. The Trustee's counsel, Garman Turner Gordon LLP, was retained under a court-approved hybrid fee arrangement that includes a contingency component of 17.5% of the first $10 million in gross estate recoveries and 8.75% on amounts above that threshold, giving counsel a direct financial stake in maximizing the estate's litigation recoveries.[4]

5. Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), made applicable by Bankruptcy Rule 9016, this Court has the jurisdiction and authority to quash or modify these subpoenas and issue a protective order because the Subpoenas are an abuse of Rule 2004, seeking to subject the Subpoena Targets to the invasive, harassing burden of disclosing intimate personal and family financial details to a litigant who has already declared he is ready to sue. Rule 2004 is not a tool to extract settlement leverage or to pry into the private financial affairs of attorneys and

---

[3] *See* Subpoena to QPWB, ***Exhibit A***; Subpoena to Eric Boyer, ***Exhibit B***; Subpoena to Edward Prieto, ***Exhibit C***.

[4] *See Application for Order Approving Employment of Garman Turner Gordon LLP* [ECF No. 199]; Order Approving Employment [ECF No. 293].

their families. The Court should quash the Subpoenas and enter a protective order.

## II. FACTUAL BACKGROUND

### A. About the Subpoenaed Parties.

6. Quintairos, Prieto, Wood & Boyer, P.A., or QPWB, is a Miami-based law firm founded in 1998 that has grown into a national practice with offices across the United States. The firm represents businesses, insurers, professionals, and individuals in a broad range of matters, including complex commercial litigation, insurance defense, regulatory matters, and corporate law. From its roots in South Florida, QPWB has developed a substantial national litigation platform while maintaining a significant presence in Miami.

7. Edward C. Prieto is a founding partner of Quintairos, Prieto, Wood & Boyer, P.A. and the managing partner of its West Palm Beach office. A former assistant state attorney, he has practiced in South Florida for more than three decades and handles insurance defense, medical malpractice, and nursing home litigation.

8. Eric W. Boyer is a named partner and the managing partner of Quintairos, Prieto, Wood & Boyer, P.A. He joined the firm in 1998 and has served as its managing partner since 2005, helping guide its growth from a Florida practice into a national law firm. Based in Miami, Mr. Boyer represents clients in complex liability and insurance matters and is frequently called upon to negotiate settlements.

### B. Procedural Overview.

9. **QPWB's Representation of NuMale**. The Rule 2004 discovery at issue arises from NuMale's jointly administered bankruptcy in the U.S. District of Nevada.[5] The Trustee is pursuing three related claims: (1) legal malpractice claims, (2) Uniform Fraudulent Transfer Act ("**UFTA**") fraudulent conveyance claims, and (3) Florida Business Corporation Act ("**FBC Act**") unlawful distribution claims. The purported legal-malpractice claims arise from QPWB's representation of NuMale and certain NuMale officers/employees[6] ("**Individual NuMale Parties**," and together with NuMale, the "**NuMale Parties**") during pre-petition litigation in New

---

[5] The lead case in the jointly administered bankruptcy matters is Case No. 25-10341-NMC. The docket citations herein refer to docket entries in that matter. Counsel can provide these documents to the Court upon request.

[6] Those officers/employees were Brad Palubicki, Carlos Feliciano, Chris Asandra, and Justin Pulliam.

Mexico ("***Sanchez* Lawsuit**").[7] Even though the legal malpractice claims remain unliquidated and unfiled, the Trustee argues those claims somehow create a contingent liability exceeding $2 billion and render QPWB insolvent.[8] Through the UFTA and FBC Act, the Trustee threatens the Subpoena Targets with fraudulent transfer and unlawful distribution claims that would impose personal liability for all firm distributions since November 2024.[9] Thus, all three claims are linked to QPWB's representation of the NuMale Parties in the *Sanchez* Lawsuit and its purported liability for those claims.

10. In the *Sanchez* Lawsuit, NuMale's insurer, Beazley, engaged QPWB mid-lawsuit to represent the NuMale Parties in July 2022,[10] and QPWB represented them through trial. The plaintiff, Michael Sanchez, pursued various claims against the NuMale Parties arising from treatment he obtained from NuMale. Trial occurred in November 2024 and resulted in a $412 million verdict, which consisted of compensatory damages of $37 million and punitive damages of $375 million (the "***Sanchez* Verdict**"). Of significance, neither Messrs. Boyer nor Prieto participated in the trial or in any pretrial discovery. The Trustee alleges the *Sanchez* Verdict caused NuMale to file for bankruptcy relief in January 2025.[11]

11. **The NuMale Bankruptcy**. Shortly after NuMale filed for bankruptcy, the Trustee was appointed to take control of the NuMale bankruptcy estates.[12] He represented to the Nevada Bankruptcy Court that the estates had few liquid assets, that their largest assets were litigation claims, and that he had begun pursuing those claims.[13]

12. Michael Sanchez was the estates' largest creditor, holding 98% of all claims as a result of the *Sanchez* Verdict.[14] There was also ongoing legal action with Beazley related to its coverage of NuMale in the *Sanchez* Lawsuit. Beazley disputed coverage and the Trustee pursued bad faith claims.[15]

---

[7] *See* Demand Letter, ***Exhibit D.***

[8] *See* Fraudulent Transfer Notice to Eric Boyer, ***Exhibit E***; Fraudulent Transfer Notice to Edward Prieto, ***Exhibit F***.

[9] *See* Fraudulent Transfer Notice to Eric Boyer, *Exhibit E*; Fraudulent Transfer Notice to Edward Prieto, *Exhibit F*.

[10] *See* Demand Letter, *Exhibit D*, at 3.

[11] *See* Demand Letter, *Exhibit D*, at 9.

[12] *See* [ECF No. 156].

[13] *See* [ECF No. 201, at 3].

[14] *See* [ECF No. 431, at 3].

[15] *See* [ECF No. 431, at 7].

13. By August 1, 2025, the Trustee had entered into a Global Settlement that resolved both the Beazley coverage dispute and Sanchez's claim arising from the *Sanchez Verdict*, preserved NuMale's purported claims against QPWB, and in which the Individual NuMale Parties assigned their purported legal malpractice claims against QPWB to the Trustee.[16] The alleged claims against QPWB and assignment formed the core of NuMale's plan of reorganization, which was confirmed on September 24, 2025.[17] The confirmed plan established a Litigation Trust and identified the "Quintairos Claims" as the claims the Liquidation Trust would pursue.[18] Those purported claims became the primary litigation asset available to satisfy the estate's remaining obligations.[19]

14. Notably, the Nevada Bankruptcy Court has already approved over $9.3 million in fees to the Trustee's counsel under its contingency fee arrangement, with a deferred balance of nearly $4.7 million tied to the estate's litigation recoveries.[20] The Trustee's counsel thus has a substantial financial incentive to pursue aggressive pre-suit discovery and to maximize the pressure on the Subpoena Targets.

### C. The Trustee's Investigation.

15. **The Subpoenaed Parties' Extensive Cooperation**. On October 6, 2025, without using Rule 2004 discovery, the Trustee demanded QPWB's complete client file from the *Sanchez* Lawsuit.[21] He stated that he was actively investigating potential claims arising from QPWB's representation and that litigation was reasonably anticipated.[22] QPWB voluntarily complied, transferring thousands of pages of materials, including NuMale client correspondence, pleadings, work product, and their attorney-client communications, while engaging with the Trustee about the documents and asserted claims.[23]

---

[16] The Individual NuMale Parties assigned the Trustee sole direction and control over their claims against QPWB. *See* [ECF No. 726, at 21].

[17] *See* [ECF Nos. 434 and 726].

[18] *See* [ECF No. 435, at 41]; *see also* [ECF No. 434-1, at 103] (preserved litigation claims); [ECF No. 435-2] (liquidation analysis).

[19] [ECF No. 435-2] (liquidation analysis).

[20] *See* Order Approving Second and Final Fee Application [ECF No. 866].

[21] *See* Demand for Transfer of Client File, ***Exhibit G***.

[22] *See* Litigation Hold Notice, ***Exhibit H***, at 1.

[23] *See* Demand Letter, *Exhibit D*.

16. Armed with that file, the Trustee served QPWB a 26-page demand letter on May 18, 2026, with 39 exhibits, that the Trustee stated was "organized as [the] complaint will be."[24] The letter provided that the Trustee was the lead plaintiff in a joint action with each of the Individual NuMale parties where they were collectively pursuing legal malpractice claims against QPWB.[25] It further boasted that the claims were "substantial, ***exceptionally well-documented, and supported by an extensive evidentiary record,"*** that total exposure exceeded $2 billion, and that the Trustee was "***prepared to file suit immediately***" and prosecute the claims through verdict and appeal.[26]

17. **The Trustee Targets Boyer and Prieto**. The Trustee also asserted fraudulent-transfer theories against Messrs. Boyer and Prieto. On June 30, 2026, he sent a draft notice threatening claims concerning QPWB distributions. On August 4, 2026, he sent a revised draft adding statutory theories. Finally, on September 10, 2026, the Trustee formally sent Boyer and Prieto Fraudulent Transfer Notices. Each notice threatened "separate claims" against Boyer and Prieto personally and stated that the Trustee "may pursue these claims now."[27]

18. **QPWB's Efforts to Resolve the Claims**. Settlement negotiations continued through the summer. The Trustee made an initial settlement offer and, after extensive discussions, delivered a revised settlement term sheet on August 28, 2026. The term sheet warned that rejecting the proposal would result in the filing of a complaint on September 11, 2026.

19. Throughout this negotiation period, QPWB cooperated extensively with the Trustee. It participated in multiple telephone conferences and substantive meetings with the Trustee's counsel. QPWB sent one of its attorneys, Mike Connery, from Philadelphia to Newport Beach, California, for the parties' first extensive settlement meeting. QPWB also provided access on a confidential basis to hundreds of pages of company structure and financial documents, at the Trustee's request.[28] While doing so, QPWB explained what those documents showed about the Trustee's asserted claims. QPWB participated in a lengthy interview during which QPWB

---

[24] *See* Demand Letter, *Exhibit D*, at 5.

[25] *See* Demand Letter, *Exhibit D*, at 1–2.

[26] *See* Demand Letter, *Exhibit D*, at 25 (emphasis added).

[27] *See* Fraudulent Transfer Notice to Eric Boyer, *Exhibit E;* Fraudulent Transfer Notice to Edward Prieto, *Exhibit F*.

[28] These documents were provided pursuant to a confidentiality and non-disclosure agreement ("NDA"). QPWB does not waive any rights, protections, or remedies provided for in that NDA.

answered every question posed by the Trustee's counsel. QPWB also provided a comprehensive explanation of its relevant financial processes and protocols.[29]

20. After QPWB rejected a take it or leave it settlement offer, the Trustee immediately issued the Rule 2004 discovery at issue.

21. **The Subpoenas' Requests Are Invasive and Disproportionate**. The breadth of the Subpoenas underscores their true purpose. Rather than seeking information to evaluate whether claims exist, the document requests read like a post-judgment asset search, demanding the kind of intrusive personal financial records that would be extraordinary even in executed-judgment collection proceedings, let alone a pre-litigation investigation under Rule 2004. The following requests are illustrative.

22. The Boyer and Prieto Subpoenas demand, among other things, "Monthly statements, for the Transfer Period, for each Financial Account into which any QPWB Payment was deposited" (Request No. 4), as well as "[a]ll premarital, marital, postnuptial, transmutation, or property-characterization agreements executed or amended during the Transfer Period, and all deeds, assignments, and account re-titling Documents by which any property was conveyed to or re-titled in the name of Your spouse or any other Family Member during the Transfer Period" (Request No. 9).[30]

23. The Boyer and Prieto Subpoenas also demand "[d]ocuments sufficient to show each Transfer of money or property having a value of $25,000 or more (individually, or in the aggregate to the same transferee within any 12-month period) made during the Transfer Period by You, or by any entity You own or control, to (a) any Family Member; (b) any trust; (c) any entity in which You or any Family Member holds an interest; or (d) any other person for less than reasonably equivalent value" (Request No. 6). They further demand the trust agreements, amendments, schedules of assets, and all funding documents for every trust that received any such transfer or of which they are a settlor or grantor and also a beneficiary (Request No. 8).[31]

24. The QPWB Subpoena, with its 34 document requests, is no less overreaching. It demands "QPWB's written compensation plans, policies, point systems, formulas, and

---

[29] These documents were similarly provided pursuant to the NDA. QPWB does not waive any rights, protections, or remedies provided for in that NDA.

[30] *See* Subpoena to Eric Boyer, *Exhibit B*; Subpoena to Edward Prieto, *Exhibit C*.

[31] *See* Subpoena to Eric Boyer, *Exhibit B*; Subpoena to Edward Prieto, *Exhibit C*.

methodologies in effect at any time during the Transfer Period for Covered Lawyers, including Documents describing (a) each component of shareholder and partner compensation (base, draw, guaranteed payment, bonus, year-end allocation, capital return); (b) whether year-end allocations are based on ownership percentage, origination, collections, hours, or a combination, and the weighting of each; (c) whether allocations are contingent on firm profitability; and (d) the calendar for computing, approving, and paying year-end distributions" (Request No. 9). It also demands "All loan, credit facility, and line-of-credit agreements to which QPWB was a party during the Transfer Period, with all compliance certificates, borrowing-base certificates, financial covenant calculations, guaranties (including any personal guaranty by a Covered Lawyer), and notices of default, together with Documents sufficient to show each deposit account held by QPWB during the Transfer Period (institution and last four digits of account number)" (Request No. 16).[32] With Request No. 17, the Trustee demands to know QPWB's cash balances: "Documents sufficient to show QPWB's month-end cash and cash-equivalent balances, by account, from January 1, 2024 through the present."[33]

25. Far from investigating whether malpractice claims exist, these requests seek to strip-mine the personal and financial lives of attorneys and their families and to extract confidential commercial information from a law firm, all to create leverage. The Subpoenas should be quashed.

## III. LEGAL STANDARD

26. Bankruptcy Rule 2004(a) permits a court, on a party in interest's motion, to "order the examination of any entity."[34] These are confined to "the debtor's acts, conduct, or property; the debtor's liabilities and financial condition; any matter that may affect the administration of the debtor's estate; and the debtor's right to a discharge."[35] "Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred."[36]

---

[32] *See* Subpoena to QPWB, *Exhibit A*.

[33] *Id.*

[34] Fed. R. Bankr. P. 2004(a).

[35] *Id.*

[36] *In re Banco Master, S.A.*, 678 B.R. 690, 697 (Bankr. S.D. Fla 2026) (quoting *In re Washington Mutual, Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)).

27. **This Court Is the Proper Forum to Hear This Motion.** Compliance with a 2004 examination or production is enforced through Fed. R. Civ. P. 45.[37] Under Fed. R. Civ. P. 45, the court for the district where compliance is required must quash or modify a subpoena that fails to allow a reasonable time to comply, requires disclosure of privileged or other protected matter where no exception or waiver applies, or subjects a person to undue burden.[38] Courts may quash or modify a subpoena requiring disclosure of confidential research, development, or commercial information.[39] Once a motion to quash 2004 discovery is filed, "[t]he party seeking information under Rule 2004 has the burden of demonstrating good cause for conducting the requested discovery."[40]

28. Moreover, Bankruptcy Rule 7004 which provides for nationwide service of process, applies to adversary proceedings and contested matters, not to Rule 2004 examinations. Rule 2004(c) specifically provides that attendance at an examination is compelled "as provided in Rule 9016," which incorporates Fed. R. Civ. P. 45 (governing subpoenas), not Rule 7004 (governing service of process).[41] *Marathe* recognized that while Rule 7004 would permit nationwide service of a summons and complaint in an adversary proceeding, a Rule 2004 examination is merely "an investigative tool prior to the filing of an adversary proceeding," where attendance is compelled through a subpoena issued under Rule 45, not process under Rule 7004.[42]

29. As *Correra* explained, compelling a Rule 2004 examination of a non-party is "an extraordinary thing—to take a deposition that is often referred to as a 'fishing expedition,' and to ask for documents, from a non-party witness who has not been sued," and a subpoena, not mere service of process, is the mechanism by which jurisdiction is established.[43]

---

[37] *See* Fed. R. Bankr. P. 2004(c) (incorporating Rule 9016 which provides that Rule "45 applies in a bankruptcy case").

[38] Fed. R. Civ. P. 45(d)(3)(A)(i), (iii), (iv).

[39] Fed. R. Civ. P. 45(d)(3)(B)(i).

[40] *In re Gaime*, No. 8:18-BK-05198-RCT, 2018 WL 7199806, at *2 (Bankr. M.D. Fla. Dec. 18, 2018) (quoting *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985).

[41] *In re Marathe*, 459 B.R. 850, 855–56 (Bankr. M.D. Fla. 2011) (carefully distinguishing between adversary-proceeding jurisdiction established through Rule 7004's nationwide service of process and the subpoena-based mechanism for compelling attendance at Rule 2004 examinations under Rule 9016/Rule 45).

[42] *Id.* at 856; *see* also *In re Correra*, 589 B.R. 76, 109–10 (Bankr. N.D. Tex. 2018) (providing a thorough analysis of the distinction between Rule 7004 and Rule 2004 and explaining that when an order is entered compelling a witness who is not a debtor and is not otherwise a party-in-interest to submit to an examination pursuant to Rule 2004, a subpoena should be served in addition to the order to compel attendance, as provided for in Rule 9016.

[43] *In re Correra*, 589 B.R. 76, at 110.

30. Fed. R. Civ. P. 45's 2013 amendments clarified that motions to quash or modify subpoenas must be brought in "the court for the district where compliance is required."[44] As the Court explained in *Landmark*, the purpose of the 2013 amendments to Rule 45 were specifically designed "[t]o protect local nonparties."[45]

31. Here, the Subpoenas command compliance in Miami, Florida. Specifically, production is to be delivered electronically by October 1, 2026, and testimony at Berger Singerman, 1450 Brickell Avenue, Suite 1900, Miami, Florida. The Southern District of Florida is therefore the compliance district and this Court is the proper forum to adjudicate this Motion.

## IV. ARGUMENT

32. The Trustee's investigation is over. He received and reviewed the complete QPWB client file, conducted interviews, and reviewed financial and organizational documents. The Trustee then sent a 26-page demand letter laying out his theories with 39 exhibits, threatened $2 billion in exposure, and set a deadline to sue, and declared that. The claims, he admits are "substantial, exceptionally well-documented, and supported by an extensive evidentiary record." There is nothing left to investigate. Yet instead of filing the complaint he threatened, he launched Rule 2004 Subpoenas, seeking intimate financial details about the firm, its equity partners, and their families rather than information about QPWB's representation of NuMale. The Subpoenas are an abuse of process, vexatious and designed to intimidate the Subpoena Targets into settling.

33. Rule 2004 was never intended to hand the Trustee a strategic advantage, particularly after he said he was "prepared to prosecute these claims to verdict and through appeal"[46] over four months ago.

### A. The Subpoenas are an Impermissible End-Run Around the Federal Rules of Civil Procedure because the Trustee has Already Completed his Investigation.

34. The scope of a Rule 2004 examination is limited to "(A) the debtor's acts, conduct, or property; (B) the debtor's liabilities and financial condition, (C) any matter that may affect the

---

[44] Fed. R. Civ. P. 45(d)(3); *Landmark Portfolio Mezz LLC v. Opc-Jw LLC*, No. 24-MC-81595, 2025 WL 2720219 *2 (S.D. Fla. Feb. 18, 2025); *see* also *In re SBN Fog Cap II LLC*, 562 B.R. 771, 774 (Bankr. D. Colo. 2016) (holding that the bankruptcy court where the case was pending, "has no authority to quash subpoenas requiring compliance outside of" its district and that the target of the subpoenas "must seek relief" in the district where compliance was required.

[45] *Landmark*, No. 24-MC-81595, 2025 WL 2720219 at *2 (quoting Advisory Committee Notes to 2013 Amendment).

[46] *See* Demand Letter, *Exhibit D*, at 26.

administration of the debtor's estate, or (D) the debtor's right to a discharge.[47] The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks.[48]

35. Further, the primary purpose of the examination is to investigate "the debtor's acts, conduct, or financial affairs so as to discover the existence and location of assets of the estate.[49] Thus, Rule 2004 is generally used for examination of the debtor regarding the debtor's assets and liabilities and not for examination of creditors.[50]

36. In fact, third parties are only subject to examination pursuant to Rule 2004 if they "possess[] knowledge of the debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy."[51] For instance, in *Wilcher*, the court rejected a Rule 2004 examination because the examinee "has not been shown to have been involved in the debtor's business affairs in any way, save for his purchase of the Sherman Avenue apartment building."[52]

37. In certain situations, a trustee may use Rule 2004 for pre-litigation purposes when "information [is] needed to determine ***whether*** litigation should be filed."[53] But if a trustee believes a third party is liable to the estate, the proper avenue of discovery is contained in the Federal Rules of Civil Procedure, which provides numerous procedural safeguards that are absent in Rule 2004.[54]

***(i) The Trustee identified the Subpoena Targets as litigation targets over a year ago and has no remaining investigative need.***

38. Although Rule 2004 may be used to evaluate potential litigation claims, it cannot be used to circumvent the procedural safeguards applicable to discovery in litigation.[55]

---

[47] Fed. R. Bankr. P. 2004(b)(1).

[48] *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (Bankr. D. Del. 2016); *see also Bank of Am., N.A. v. Landis*, No. 2:11-CV-1338-RCJ-PAL, 2011 WL 6104495, at *6 (D. Nev. Dec. 7, 2011) ("Although a Rule 2004 examination may be ordered ex-parte, once a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery.").

[49] *In re Dinubilo*, 177 B.R. 932, 940 (Bankr. E.D. Cal. 1993) (citation omitted).

[50] *In re Board of Directors of Hopewell Intern. Ins. Ltd.*, 258 B.R. 580, 586 (Bankr. S.D.N.Y. 2001).

[51] *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (citations and quotations omitted); *see also In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990).

[52] *Wilcher*, 56 B.R. at 434.

[53] *In re J&R Trucking*, 431 B.R. 818, 822 (Bankr. N.D. Ind. 2010) (emphasis added); *see also In re Kearney*, 590 B.R. 913, 921 (Bankr. D.N.M. 2018) (Rule 2004 can be used as a "pre-litigation device to determine whether there are grounds to bring an action to determine a debtor's right to discharge a particular debt.").

[54] *Wilcher*, 56 B.R. at 434.

[55] *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983) ("[T]he debtors are now in a position to file an action against certain of the individuals and entities... It appears the debtors are attempting to use Rule 2004 to circumvent the procedural safeguards provided a litigant by the Federal Rules of Civil Procedure[.]"); *In re Defoor*

39. Courts consistently reject the misuse of Rule 2004 for pre-litigation purposes where a litigation target has previously been identified. In *In re Transmar*, the court denied Rule 2004 discovery where a party "has identified [the recipient] as a litigation target and is seeking to utilize the liberal discovery available under Rule 2004 to further this ultimate litigation."[56] Likewise, in *In re Interpictures Inc.*, the court rejected a Rule 2004 examination where "it is apparent from the application that Mr. Miller seeks the examination not so much to discover the existence of assets on behalf of the debtor, but rather for the purpose of discovery in a pending or proposed proceeding."[57]

40. Here, the Trustee identified QPWB as a litigation target over a year ago when he entered the Global Settlement.[58] Intent to prosecute these alleged claims was confirmed through the Plan which established a Litigation Trust and specifically stated the claims against QPWB "will be pursued."[59] Acting on the Global Settlement and the Plan, the Trustee demanded QPWB provide him the entire client file from the *Sanchez* Lawsuit without requesting Rule 2004 discovery.[60] QPWB complied with that request and the Trustee "reviewed the entire QPWB file."[61] Notably, this was not a limited production of documents to the Trustee. It consisted of thousands of pages of documents and included otherwise privileged NuMale communications because the Trustee is asserting malpractice claims against Subpoena Targets.

41. With access to that information, the Trustee dropped a 26-page Demand Letter supported by 39 exhibits. The letter menaced "total exposure exceed[ed] $2 ***billion***."[62] As recently as September 10, 2026, the Trustee reiterated his intent to pursue UFTA and FBC Act claims against the Subpoena Targets where he threatens to void all QPWB profit distributions since November 2024 because of the purported liability from the legal malpractice claims.[63] Any need

---

*Ctr., LLC*, 634 B.R. 630, 632 (Bankr. M.D. Fla. 2021) ("A Rule 2004 examination is meant to provide the Debtor with the preliminary information needed to file a complaint. Here, the Debtor already has that information.").

[56] *In re Transmar Commod. Grp., Ltd.*, No. 16-13625-JLG (Bankr. S.D.N.Y.), June 9, 2017 Hr'g Tr. (ECF No. 367) at 22:7-11.

[57] 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988); *accord In re Waddell*, 2025 WL 957733, at *7 (Bankr. S.D.N.Y. Mar. 28, 2025).

[58] *See* [ECF No. 430-1, at 12, 85].

[59] *See* [ECF No. 435, at 41].

[60] *See* Demand for Transfer of Client File, *Exhibit G*.

[61] *See* Demand Letter, *Exhibit D*, at 4.

[62] *Id.*, at 4 (emphasis in original).

[63] *See* Fraudulent Transfer Notice, *Exhibits E & F*.

for 2004 discovery on these issues is contradicted by QPWB's provision of numerous financial documents to the Trustee and meeting where QPWB answered all of the Trustee's questions regarding its financial transactions.[64]

42. By the time he issued the Subpoenas, the Trustee had completed his preliminary fact-gathering and was prepared for litigation.[65] In the Trustee's own words, "[t]he claims against QPWB and against each of you individually are substantial, exceptionally well-documented, and supported by an extensive evidentiary record."[66] For the UFTA and FBC Act claims, the Trustee similarly represented he "may pursue these claims now."[67]

43. *In re Defoor Ctr., LLC*,[68] from this District's neighboring court in the Middle District of Florida is particularly instructive. There, like the Trustee did here, the debtor took claims on assignment and "was able to identify the potential cause of action against Newtek on its schedules; it articulated the facts giving rise to its potential claims (whether direct or by way of assignment) in its Case Management Summary; and it included the potential causes of action in its plan.[69] Nevertheless, the debtor sought Rule 2004 discovery post confirmation for those claims. The court quashed the subpoenas because the "[d]ebtor ha[d] the preliminary information needed to bring whatever claims it may have."[70] It reasoned that "allowing the [d]ebtor to conduct Rule 2004 discovery would give the [d]ebtor an unfair strategic advantage" and "should not be allowed to delay the filing of an adversary proceeding so that it can avoid the 'pending proceeding' rule and gain a tactical advantage by 'going fishing' under Rule 2004, thereby discovering information it could not in the adversary proceeding.[71]

44. The same principles from *In re Defoor* apply here. The Trustee identified the Subpoena Targets as litigation targets, preserved the claims through the Plan, investigated the alleged claims, and made demands on those claims. Rule 2004 is therefore not the proper vehicle.

---

[64] The provision of documents and meeting took place under pursuant to the NDA agreed to by QPWB and the Trustee. QPWB does not waive any rights, protections, or remedies it has under the NDA.

[65] *See* Demand Letter, *Exhibit D*, at 26 (stating the Trustee is "prepared to prosecute these claims to verdict and through appeal").

[66] *Id.*, *Exhibit D*, at 25.

[67] *See* Fraudulent Transfer Notice, ***Exhibits E & F.***

[68] 634 B.R. 630 (Bankr. M.D. Fla. 2021).

[69] *Id.* at 639.

[70] *Id.*

[71] *Id.* at 639–640.

The Trustee has threatened $2 billion in litigation and the voiding of any profit distributions over the last two years outside the court's direct oversight. Those threats show that he believes he has enough information to proceed and defeat any attempt by the Trustee to meet his burden of establishing good cause.

***(ii) The Trustee cannot demonstrate the prerequisite need for the information.***

45. The Trustee "bears the burden of proving that 'good cause' exists for the discovery it seeks."[72] Additionally, the court must inquire into the "reasonableness of the subpoena, including the need for and unavailability of the information sought."[73]

46. As explained above, the Subpoena Targets have extensively cooperated with the Trustee by providing the *Sanchez* client file, numerous other documents, and participated in multiple meetings with the Trustee. However, the Subpoena Targets are not the only source of information for the Trustee because he is jointly prosecuting the claims along with the Individual NuMale Parties.[74] Both the Trustee and the Individual NuMale Parties have the same counsel.[75] Through this joint prosecution and representation, the Trustee has complete access to all information relating to the purported claims. The Individual NuMale parties are even required to cooperate and provide the Trustee any information they have.[76]

47. These multiple sources negate a finding of good cause and make the Subpoenas unreasonable.[77] Even if the Subpoena Targets had not previously cooperated with the Trustee, the information is available to him through alternative methods that would not even require discovery. The Court should not allow the Trustee to harass the Subpoena Targets when he can obtain the same information from persons who are already required to provide it to him.

---

[72] *In re Defoor Ctr., LLC*, 634 B.R. at 638; *accord Bank of Am., N.A.*, 2011 WL 6104495, at *6 ("Although a Rule 2004 examination may be ordered ex-parte, once a motion to quash a subpoena is made, the examiner bears the burden of proving that good cause exists for taking the requested discovery.").

[73] *See In re Duque*, 134 B.R. 679, 683 n.3, 684 (Bankr. S.D. Fla. 1991) ("even where a subpoena is served to compel attendance at a rule 2004 examination, the reasonableness consideration of rule 45(b) applies.").

[74] *See* Demand Letter, *Exhibit D.*

[75] *See* Demand Letter, *Exhibit D.*

[76] *See* [ECF No. 726, at 21] ("The NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano shall fully cooperate with, and assist the Liquidation Trustee in, prosecuting the Quintairos Claims, Quintairos Non- Debtor Claims, and Quintairos PF Claims, including in connection with providing documents and testimony necessary for the successful prosecution of such claims.").

[77] *See In re Duque*, 134 B.R. at 686 ("the court's inquiry into the subpoenas' reasonableness should take into account the trustee's need for the information and the availability of the information from other sources.").

***(iii) The Trustee is exploiting Rule 2004 to gain an unfair tactical advantage in anticipated litigation and harass the Subpoena Targets.***

48. Rule 2004 examinations are not a substitute for conventional discovery, which must be pursued where available.[78] Courts enforce this restriction because Rule 2004 does not provide the same procedural safeguards as ordinary discovery. For example, a witness generally has no right to representation during a deposition and has limited rights to object to immaterial or improper questions.[79]

49. Here, no legitimate bankruptcy purpose supports the Subpoenas. The Trustee has already decided to bring claims against the Subpoena Targets, as shown by the Plan and numerous litigation threats.[80] QPWB previously provided the Trustee with extensive documentation, including its case file related to the representation of the NuMale Defendants.[81]

50. The only question is *when* the Trustee will commence litigation. By seeking Rule 2004 discovery instead of commencing litigation, the Trustee is seeking greater leverage and an advantage outside the safeguards of the Federal Rules of Civil Procedure. The Court should reject such tactics.[82]

***(iv) The Trustee's representations are inconsistent with the Subpoenas.***

51. The Trustee declared, in writing, that he was ready to file claims against the Subpoena Targets on May 18. The Demand Letter stated that he was "prepared to file suit immediately." The August 28 term sheet set September 11, 2026 as the filing deadline and threatened a complaint if settlement was rejected. The September 10 Fraudulent Transfer Notice stated that the Trustee "may pursue these claims now."

52. When settlement negotiations broke down on September 10, 2026, the Trustee chose not to file the complaint he had repeatedly represented was ready. Instead, he filed *ex parte* applications seeking Rule 2004 examinations of Mr. Boyer, Mr. Prieto, and QPWB, representing

---

[78] *J&R Trucking, Inc.*, 431 B.R. at 821; *see also In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990) ("Many courts have expressed distaste for efforts of parties to utilize [Rule] 2004 to circumvent the restrictions of the [Federal Rules of Civil Procedure] in the context of adversary proceedings or contested matters.").

[79] *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009).

[80] *See, e.g.*, Fraudulent Transfer Notice to Eric Boyer, *Exhibit E*; Fraudulent Transfer Notice to Edward Prieto, *Exhibit F*; Demand Letter, *Exhibit D*.

[81] *See* Demand Letter, *Exhibit D*, at 4 (stating the Trustee "ha[s] reviewed the entire QPWB file").

[82] *See In re Defoor Ctr., LLC*, 634 B.R. at 639–40.

to the court that examination was needed concerning the Debtors' litigation claims, assets, liabilities, and financial condition.

53. These representations cannot be reconciled. Under Bankruptcy Rule 9011, every paper filed with the Court certifies that its factual contentions have evidentiary support or are likely to have such support after a reasonable opportunity for further investigation. Fed. R. Bankr. P. 9011(b)(3). A trustee cannot tell targets that claims are ready for immediate prosecution and then tell a court that he needs Rule 2004 discovery to investigate whether those claims exist. These simultaneous representations are in direct conflict.

54. If the demand letter, term sheet, and Fraudulent Transfer Notices are accurate, the *ex parte* applications were unnecessary and the Subpoenas serve no legitimate Rule 2004 purpose. If those representations overstated the Trustee's readiness, he made them without the evidentiary support that Rule 9011 would require. Either way, the Subpoenas are improper.

55. This inconsistency independently supports quashing the Subpoenas or entering a protective order because it shows that they lack the good-faith investigative purpose Rule 2004 requires. The Court should not permit the Trustee to make one representation to the Subpoena Targets and another to the Court.

**B. The Subpoenas Are Facially Overbroad, Harassing, and Designed to Maximize Leverage Rather Than Gather Relevant Information.**

56. The Subpoenas should be quashed because they are unduly burdensome and seek information irrelevant to what is discoverable under Rule 2004. In the Eleventh Circuit, courts must "balance the interest served by demanding compliance with the subpoena against the interests furthered by quashing it."[83] Subpoenas issued under Fed. R. Civ. P. 45 are subject to a relevancy requirement and must be quashed to the extent they seek irrelevant information.[84] Moreover, in the post-confirmation context, the scope of Rule 2004 is even more narrow due to the court's limited post-confirmation jurisdiction.[85]

---

[83] *Jordan v. Commissioner, Mississippi Dep't of Corrections*, 947 F.3d 1322, 1337 (11th Cir. 2020).

[84] *Id.* at 1329. The Subpoenas were issued pursuant to Fed. R. Civ. P. 45, which is made applicable to this proceeding by Fed. Bankr. R. P. 9016.

[85] *In re Defoor Ctr., LLC*, 634 B.R. at 634; *see also In re Express One Intern., Inc.*, 217 B.R. 215, 216-17 (Bankr. E.D. Tex. 1998).

57. The Court should evaluate the breadth of the Subpoenas in the context of Rule 2004's purpose.[86] The Trustee's purpose in conducting discovery is purportedly to investigate whether to bring pre-litigation claims against the Subpoena Targets. But the Trustee has already identified these claims and indicated in the Demand Letter that it is "prepared to prosecute these claims to verdict and through appeal."[87]

58. The scope of the Subpoenas far exceeds the central inquiry over the existence of claims. For example, the Boyer and Prieto Subpoenas request tax returns, marital agreements, trust instruments, homestead declarations, monthly bank statements, real property deeds and closing statements, and other voluminous financial information.[88] The QPWB Subpoena[89] demands cash balances as well as compensation plans, payroll information, bonus schedules, and tax documents for each "Covered Lawyer"[90] and similarly broad information for every "Partner-Titled Lawyer."[91] These requests are more akin to a judgment debtor examination than a pre-litigation investigation, and even then they would be objectionable. They are facially overbroad, irrelevant, and harassing.

59. Courts consistently reject overbroad Rule 2004 discovery where they request voluminous information of a non-debtor. "It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs."[92] Although the scope of Rule 2004 is broad, "[r]elevance alone is not sufficient to justify a Rule 2004 request."[93] It further cannot be used to abuse or harass or stray into matters that are not relevant to its basic inquiry.[94]

---

[86] *See In re Kearney*, 590 B.R. at 921 (Rule 2004 can be used as a "pre-litigation device to determine ***whether*** there are grounds to bring an action to determine a debtor's right to discharge a particular debt." (emphasis added)); *In re Defoor Ctr., LLC*, 634 B.R. at 639–40 (Rule 2004 "should not be allowed to delay the filing of an adversary proceeding so that [the proponent] can avoid the 'pending proceeding' rule and gain a tactical advantage").

[87] *See* Demand Letter, *Exhibit D*, at 26.

[88] *See* Subpoena to Eric Boyer, *Exhibit B*; Subpoena to Edward Prieto, *Exhibit C*.

[89] *See* Subpoena to QPWB, *Exhibit A*.

[90] The QPWB Subpoena defines "Covered Lawyer" to reach all shareholders, officers, directors, managing partners, and practice group leaders, among others.

[91] The QPWB Subpoena defines "Partner-Titled Lawyer" to reach all attorneys in the firm whose title contains the word "partner", "shareholder", "principal" or "director".

[92] *Wilcher*, 56 B.R. at 434; *see also In re Yellowstone Mountain Club, LLC*, 2009 WL 982233, at *3 (Bankr. D. Mont. Feb. 18, 2009) (same); *In re Continental Forge Co., Inc.*, 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987) (same); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393-94 (Bankr. W.D. Pa. 2008) (same).

[93] *In re Gawker Media LLC, No. 16-11700 (SMB)*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. June 28, 2017).

[94] *In re Mastro*, 585 B.R. 587, 597 (9th Cir. BAP 2018).

60. The Trustee is misusing Rule 2004 in an attempt to either gain a strategic advantage in litigation or coerce a settlement. Neither is a proper purpose. This Court should reject such misuse of Rule 2004 and quash the Subpoenas.

### C. The Subpoenas Demand Privileged Communications and Protected Work Product that the Trustee has no Right to Obtain.

61. Federal Rule of Civil Procedure 45 mandates that a court quash a subpoena when it "requires disclosure of privileged or other protected matter."[95] Here, the Trustee seeks production of all conflict-of-interest analyses, memoranda, internal or external ethics consultations, and communications relating to QPWB's representation of NuMale and the Individual NuMale Parties. The Trustee is not entitled to all internal QPWB communications and work product.[96] Communications and work-product relating to QPWB's representation of the Individual NuMale Parties, as well as internal communications and work product, are privileged and protected.

### D. A Protective Order Must Also Issue.[97]

62. Federal Rule of Civil Procedure 26(c), made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014(c), authorizes a protective order for good cause.[98] The Eleventh Circuit evaluates good cause under four factors: "(1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order."[99]

63. The first factor strongly favors protection. The Boyer and Prieto Subpoenas demand tax returns, W-2s, 1099s, K-1s, monthly statements for financial accounts, gift-tax returns, trust instruments, marital and postnuptial agreements, deeds, closing statements, mortgages, homestead declarations, and records of transfers to family members, trusts, and related entities.[100] The QPWB Subpoena demands tax returns, financial statements, shareholder and buy-sell

---

[95] Fed. R. Civ. P. 45(d)(3)(A)(iii).

[96] *See Travelers Ins. Companies v. Superior Ct.*, 143 Cal. App. 3d 436, 453, 191 Cal. Rptr. 871, 882 (Ct. App. 1983) ("We are aware of no precedent allowing even the former client of an attorney access to writings that reflect that attorney's "impressions, conclusions, opinions, or legal research or theories.").

[97] Per Local Bankruptcy Rule 2004-1(e), the filing of a motion for protective order automatically stays the examination and production pending the Court's ruling.

[98] *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1249 (11th Cir. 2020).

[99] *Id.* at 1251 (quoting *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)).

[100] *See* Subpoena to Eric Boyer, ***Exhibit B***; Subpoena to Edward Prieto, ***Exhibit C***.

agreements, capitalization tables, ownership and governance records, compensation plans and formulas, payroll and distribution records, loan and credit documents, cash balances, and other sensitive corporate materials.[101] These categories of documents have nothing to do with the Trustee's claim against QPWB and are, instead, akin to what would be requested in connection with a judgment debtor examination after the conclusion of litigation.

64. Compliance would impose enormous cost and burden on a professional services firm and individuals who are not parties to this bankruptcy. It would also force QPWB to disclose confidential commercial information concerning its internal operations, compensation structures, ownership, capitalization, financial condition, banking relationships, and governance. The Boyer and Prieto requests likewise invade highly personal financial and family matters that have no legitimate connection to the Trustee's asserted malpractice claims against QPWB.

65. The Trustee's own conduct independently establishes good cause to issue a protective order. He threatened suit, set a filing deadline, issued detailed settlement demands, and turned to Rule 2004 after settlement broke down. That sequence shows that the Subpoenas are aimed at creating settlement pressure and increasing litigation leverage. The Trustee already has the information needed to determine whether claims exist, so the Subpoenas lack a good-faith investigative purpose.

66. A protective order is independently warranted to prevent compelled disclosure of attorney-client communications and protected work product. The Subpoenas seek conflict analyses, ethics memoranda, internal communications, settlement evaluations, and other protected materials concerning the representation of the Individual NuMale Parties. The Trustee has no right to compel QPWB's internal work product or privileged communications.

67. The requested relief is narrowly drawn. An order quashing the Subpoenas would prevent only these improper Rule 2004 examinations and related document productions. It would not prejudice the Trustee from pursuing the same discovery through an adversary proceeding subject to the Federal Rules, where relevance, proportionality, privilege, and burden can be addressed in the ordinary course. A protective order therefore supplies a precise remedy without foreclosing any legitimate claim or discovery path.

---

[101] *See* Subpoena to QPWB, *Exhibit A*.

68. If the Court does not quash the Subpoenas in their entirety, the Subpoena Targets request the issuance of a protective order pursuant to Federal Rules of Civil Procedure 26(c), made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014(c).

## V. CONCLUSION

69. The Subpoena Targets cooperated extensively with the Trustee's investigation, producing thousands of pages of documents, including privileged attorney-client communications; participating in meetings and interviews; and providing detailed financial and organizational information. The Trustee declared his claims "substantial, exceptionally well-documented, and supported by an extensive evidentiary record," then sent a 26-page demand letter, threatened $2 billion in exposure, and set a deadline to file suit. Instead of filing the complaint he promised, he launched Rule 2004 subpoenas seeking intimate personal financial details about the firm, its equity partners, and their families, including tax returns, bank statements, marital agreements, and records of transfers to family members. The Subpoenas amount to vexatious harassment designed to bully the Subpoena Targets into settling. The Subpoena Targets respectfully request that the Court quash the Subpoenas in their entirety and enter a protective order.

## CERTIFICATE OF CONFERRAL

Prior to the filing of this Motion, and pursuant to Local Rule 9013-1(a), undersigned counsel for Quintairos, Prieto, Wood & Boyer P.A., Eric Boyer, and Edward Prieto certifies that he conferred with counsel for the Trustee concerning the matters set forth in this Motion in a good-faith effort to resolve the issues raised by this Motion. Counsel for the Trustee does not consent to the relief sought herein.

Dated: September 29, 2026

Respectfully submitted,

COLE SCHOTZ P.C.
Brickell City Tower
80 SW 8th Street, Suite 1900
Miami, FL 33130
Telephone: 305.374.4848
Email: lsalazar@coleschotz.com
Secondary Email: alee-sin@coleschotz.com

By: /s/ ______________________
Luis Salazar
Florida Bar No. 147788

Alex L. Fugazzi (*Pro Hac Vice Forthcoming*)
Charles E. Gianelloni
Snell & Wilmer
1700 South Pavilion Center Drive, Suite 700
Las Vegas, NV 89135

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of September, 2026, the foregoing document was filed with the Clerk of Court for the U.S. Bankruptcy Court for the Southern District of Florida. I further certify that a true and correct copy of the foregoing document is being served via U.S. Mail, postage prepaid, and electronic mail on:

Gregory E. Garman, Esq.
Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, NV 89119
ggarman@gtg.legal
tgray@gtg.legal

/s/ ______________________
Luis Salazar