**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION, et al.,<br><br>Debtors. | *Miscellaneous Proceeding*[1]<br>Case No. 26-00101-CLC |

**OPPOSITION TO QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ERIC BOYER, AND EDWARD PRIETO'S: (I) MOTION TO QUASH SUBPOENAS, AND (II) FOR PROTECTIVE ORDER**

Michael Carmel, the Liquidating Trustee of the NuMale Liquidating Trust (the "Trustee") and the former Chapter 11 trustee of the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), by and through his counsel, Garman Turner Gordon LLP, which also represents Christopher Asandra, M.D., Carlos Feliciano, M.D., Brad Palubicki, and Justin Pulliam (collectively, the "Individuals"), hereby opposes the *Quintairos, Prieto, Wood & Boyer, P.A., Eric Boyer, and Edward Prieto's: (I) Motion to Quash Subpoenas, and (II) For Protective Order* ("Motion") filed on September 29, 2026, by Quintairos, Prieto, Wood & Boyer, P.A. ("Quintairos"), Eric Boyer ("Boyer"), and Edward Prieto ("Prieto") (collectively, the "Movants").

This Opposition is made and based upon the following Memorandum of Points and Authorities; the exhibits hereto; the Declaration of Gregory E. Garman, Esq. filed herewith (the "Garman Decl."); the papers and pleadings on file herein and in the Chapter 11 Cases pending before the Nevada Court, of which the Trustee respectfully requests the Court take judicial notice

[1] Underlying proceeding: United States Bankruptcy Court for the District of Nevada Lead Case No. 25-10341-NMC (Chapter 11). Unless otherwise noted, all references to "Nevada ECF No." are to the documents filed in the Nevada Lead Case as they appear on the docket maintained by the Clerk of Court of the U.S. Bankruptcy Court for the District of Nevada ("Nevada Court").

pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b); and any argument the Court may entertain at hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to and as expressly authorized by the confirmed Plan[2] in the Debtors' bankruptcy cases (collectively, the "Chapter 11 Cases"), the Trustee is investigating all rights, claims, and causes of action "against [Quintairos] and its attorneys, employees, Insiders, and Affiliates."[3] The Quintairos Litigation Claims[4] were a significant asset of the NuMale bankruptcy estates and are, by far, the largest asset of the NuMale Liquidation Trust ("Trust"), which was established for the benefit of Debtors' creditors. Conservatively, the statute of limitations deadline to bring the Quintairos Litigation Claims is **November 23, 2026**.

What remains in dispute is far narrower than the Motion suggests. After four meet-and-confer conferences, the Trustee offered in writing on October 7, 2026, to replace nine of the requests in the subpoenas to Messrs. Prieto and Boyer with three requests limited to transfers of $250,000 or more in a calendar year; to replace eleven of the requests in the subpoena to Quintairos with two requests for the compensation agreements and aggregate compensation of the eighty to one hundred attorneys Quintairos itself describes as "rainmakers" or heads of "business units";

---

[2] The *Joint Plan of Reorganization* [Nevada ECF No. 434] (as confirmed, the "Plan") (without internal exhibits, **Exhibit "2"** hereto). The *Findings of Fact and Conclusions of Law in Support of the Order Confirming Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization* [Nevada ECF No. 726] and the *Order Confirming the Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization* [Nevada ECF No. 727] (together, composite **Exhibit "3"** hereto, are herein referenced collectively as the "Confirmation Order").

[3] *See* **Ex. 2** (Plan), Nevada ECF No. 434 at §§ 1.1.113-114 (p. 19 of 56).

[4] Referred to in the Plan as *Quintairos Claims* (belonging to the Debtors) and *Quintairos Non-Debtor Claims* (under the Plan as confirmed, belonging to the Individuals) (herein together, the "Quintairos Litigation Claims") and "jointly prosecute[d]" pursuant to the confirmed Plan "under the sole direction and control of the [Trustee]." *See* **Ex. 2** (Plan), Nevada ECF No. 434 at § 5.12 (pp. 34-35 of 56); *see also* **Ex. 3** (Confirmation Order), Nevada ECF No. 726 at pp. 21-22 of 30. Consistent with the confirmed Plan, the "Individuals" refers, collectively, to Christopher Asandra, M.D., Carlos Feliciano, M.D., Brad Palubicki, and Justin Pulliam.

and to withdraw six more requests to Quintairos without prejudice. **Ex. 4** (the "October 7 Letter"). Movants rejected the offer. Garman Decl. ¶ 7. Every request the Motion quotes as illustrative of overreach—including the requests for monthly account statements, marital and postnuptial agreements, trust instruments, compensation formulas, credit facilities, and month-end cash balances—has been withdrawn and replaced. *Compare* Motion ¶¶ 22-24, *with* Section II, *infra*. The Trustee therefore asks the Court to deny the Motion and to order compliance with the Subpoenas[5] as narrowed by the October 7 Letter.

The three Subpoenas challenged by the Movants are directly related to the Trustee's investigation of these claims. Prepetition, Quintairos had represented a group of defendants (that included the Debtors and the Individuals), in the Second Judicial District Court, County of Bernalillo, New Mexico Case No. D-202-CV-2020-06336 ("Sanchez Lawsuit"), in which the jury rendered a verdict of $37,005,149 in compensatory damages and $375,000,000 in punitive damages, against the defendants, in a verdict issued November 25, 2024.[6] The Debtors filed for bankruptcy fifty-eight (58) days later.

As part of the Trustee's investigation of the Quintairos Litigation Claims, he demanded the turnover of the Debtors' file (the "Malpractice File"). It took three written demands over more than four months to obtain what Quintairos represented was the Debtors' complete file.[7] The Trustee reviewed the Malpractice File, digested it, and ultimately prepared a demand letter

[5] The Subpoenas were issued pursuant to Fed. R. Bankr. P. 2004 examinations authorized by the Nevada Court. *See* Nevada ECF Nos. 972, 973, 981 (2004 examination orders authorizing examination of Quintairos, Mr. Boyer, and Mr. Prieto) (collectively, "2004 Orders"). Subpoenas were then issued to Quintairos, Mr. Boyer, and Mr. Prieto (collectively, the "Subpoenas"). Copies of the Subpoenas (with some legibility issues) are appended to the Motion as Exhibits "A" (Quintairos subpoena), "B" (subpoena to Mr. Prieto), and "C" (subpoena to Mr. Boyer); copies of the Subpoenas are also on file with the Nevada Court, Nevada ECF Nos. 974, 975, 987.

[6] *See* Nevada ECF No. 100-1 ("Jury Verdict").

[7] Quintairos also produce portions of hundreds of other clients' files causing significant difficulty in identifying the Debtors' actual client file and raising further questions regarding Quinatiros' compliance with the rules of professional conduct.

regarding the malpractice claims. *See* Motion, Exhibit D. That letter concerns the Trustee's investigation, *to that date*, of the malpractice claims, based on the documents Quintairos had produced. Quintairos has since called the completeness of that record into question. In a September 14, 2026, letter that Movants omitted from the Motion (the "Extortion Letter"), Quintairos asserted that there "appears to have been a decision made to deliberately ignore numerous pieces of evidence which completely absolve QPWB from any liability," and that its "substantive defenses to liability" are "addressed separately." **Ex. 1** at 2. If that evidence exists, it was not apparent in the Malpractice File, which raises the question whether Quintairos produced the complete file. The Trustee is entitled to know, and to examine Quintairos about it, before he files suit.

Second, the Quintairos Litigation Claims that belong to the Trust are not limited to legal malpractice claims. As provided by the *Liquidation Trust Agreement*,[8] the powers of the Trustee include that he "Investigate and prosecute any and all Litigation Claims and compromise, settle, waive, and/or litigate any Litigation Claims."[9] Pursuant to the confirmed Plan, these include all rights, claims, and causes of action "against [Quintairos] and its attorneys, employees, Insiders, and Affiliates[.]"[10] Thus, consistent with his duties as the trustee of the Trust, the Trustee is investigating other claims and causes of action—notably, fraudulent transfer and improper distribution claims, which the Trustee currently estimates range from millions to tens of millions of dollars. Those claims must be asserted against named transferees, and the Trustee does not know who they are, what they received, or under what arrangements. The requisite documents were not produced in the Malpractice File, and the limited documents produced this summer are subject to a non-disclosure agreement that precludes the Trustee from using them in his anticipated lawsuit.

---

[8] *See* **Ex. 3** (Confirmation Order) at internal Exhibit 3, Nevada ECF No. 726-1 pp. 8-28 ("Trust Agreement"). *See also* Nevada ECF No. 595-1 (same).

[9] *See* Trust Agreement at §3.1(g). Under the confirmed Plan, "Litigation Claims" includes the Quintairos Litigation Claims.

[10] *See, e.g.*, **Ex. 2** (Plan), Nevada ECF No. 434 at §§ 1.1.113-114 (p. 19 of 56).

Third, the Extortion Letter did not merely question the Trustee's investigation; it threatened him for it. Sent four days after the Trustee filed his 2004 Motions,[11] it opens with Quintairos "plac[ing] the Trustee and his counsel on formal notice of the deficiencies in the claims,"[12] asserts that "it is still unclear exactly what QPWB did that would give rise to any malpractice claim," and threatens to sue ***the Trustee personally***, to pursue "a referral to and motion practice before the Office of the United States Trustee" and "referral to any other regulatory or law enforcement agency," and to seek fee shifting under 28 U.S.C. § 1927, removal under 11 U.S.C. § 324, and disgorgement of Court-approved fees—all while demanding that the Trustee "[w]ithdraw any and all pending demands against QPWB."[13] Quintairos has not rescinded, withdrawn, or stood down from the Extortion Letter. Garman Decl. ¶ 8. Having threatened the Trustee for not investigating enough, Quintairos filed the Motion, in this District, where the Chapter 11 Cases are not pending, to *halt* the Trustee's investigation.

Fourth, the Subpoenas are not punitive, nor were they issued for leverage. The Trustee held discovery in abeyance for months while he, in good faith, sought a consensual pre-suit resolution of the Quintairos Litigation Claims. However, after the Trustee made two settlement offers to Quintairos, to which Quintairos refused to even provide a counter, discussions concluded on September 10, 2026. Accordingly and appropriately, the Trustee then proceeded with Rule 2004 discovery in furtherance of completing his investigation of the Trust's claims. The conservative limitations deadline for him to bring the Quintairos Litigation Claims is November 23, 2026, and Movants have closed every path that would relieve that pressure. During the meet-and-confer process, Quintairos offered only a generalized description of the compensation paid to the

[11] *Compare* **Ex. 1** (Extortion Letter), *with* Nevada ECF Nos. 969, 970, 971 (Fed. R. Bankr. P. 2004 motions seeking to examine Movants (collectively, the "2004 Motions")).

[12] *See, e.g.*, Extortion Letter (**Ex. 1**) at p. 1.

[13] *See* **Ex. 1** (Extortion Letter) at 4–5, 7, 9, 13.

attorneys it calls "rainmakers" or heads of "business units," without identifying them. The Trustee offered to accept that limited information if the unidentified recipients would toll the claims against them. Quintairos refused. Garman Decl. ¶ 9.

On October 7, 2026, in the Nevada Court, these very same Movants (Quintairos, Mr. Prieto, Mr. Boyer) filed a motion seeking, *inter alia*, relief from the Confirmation Order, removal of Mr. Carmel as Trustee, disqualification of his counsel, and an order quashing or staying the Rule 2004 subpoenas—the same relief Movants seek here. *See* Nevada ECF No. 1007. This motion materializes the threats in the Extortion Letter.[14] Quintairos has also refused to comply with a subpoena served on its Henderson, Nevada, office on September 28, 2026, which contains the same requests as the subpoena issued to Quintairos here (the "Quintairos Subpoena") but commands compliance in Las Vegas (the "Nevada Subpoena"). *See* Nevada ECF No. 994; Garman Decl. ¶ 10. The Trustee's motion to compel compliance with the Nevada Subpoena, as narrowed by the October 7 Letter, is pending before the Nevada Court. *See* Nevada ECF No. 1015. The Trustee does not seek duplicative compliance: documents produced and testimony given in response to either the Quintairos Subpoena or the Nevada Subpoena will satisfy both.

The Trustee's Subpoenas are reasonable and appropriate. The Trustee respectfully requests this Court deny the Motion in its entirety and, given the impending conservative limitations deadline of November 23, 2026, order that the documents called for by the Subpoenas, as narrowed by the October 7 Letter, be produced by the Movants no later than October 30, 2026, at 5:00 p.m. (Pacific Time), and that Movants sit for examination on a date agreed by the parties on or before November 4, 2026, or, absent agreement, on November 4, 2026—the same schedule the Trustee has requested in the Nevada Court.

[14] In addition to Quintairos now taking legal action against the Trustee and his counsel, a separate motion to enforce and compel compliance with other Fed. R. Bankr. P. 2004 orders and the production of subpoenaed documents from other Quintairos parties is already pending in the Nevada Court. *See, e.g.*, Nevada ECF No. 997.

## II. THE NARROWED SUBPOENAS

The Subpoenas, as issued, were proper and are not an undue burden. Nevertheless, because the limitations deadline is approaching and the Trustee cannot afford a protracted dispute over scope, and to resolve Movants' asserted (but disputed) objections to breadth and burden, the Trustee offered in the October 7 Letter to narrow the subpoenas issued to Messrs. Prieto and Boyer (the "Prieto Boyer Subpoenas") and the Quintairos Subpoena as follows, and he asks the Court to enforce the Subpoenas only as so narrowed. **Ex. 4**.

### A. The Prieto Boyer Subpoenas.

**Request Nos. 1-3.** The Trustee stands on Request Nos. 1-3, which seek the re-production of documents previously produced under a non-disclosure agreement the Quintairos parties insisted on earlier this year. The witnesses can re-produce the documents or confirm in writing that the Trustee may use the documents already produced, notwithstanding that agreement. The Trustee agrees to a protective order that protects these documents from public disclosure and requires their redaction to the extent used in court filings.

**Request Nos. 4-12.** The Trustee will replace Request Nos. 4 through 12 of each of the Prieto Boyer Subpoenas with the following three requests, which will still enable the Trustee to investigate subsequent transfers, consistent with his fiduciary duties, in the least burdensome manner possible:

i. For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, during the 2024 calendar year, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

ii. For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, during the 2025 calendar year, produce Documents sufficient to

show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

iii. For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, since January 1, 2026, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

**B. <u>The Quintairos Subpoena.</u>**

**Request Nos. 3, 7-14, 16, and 17.** The Trustee will replace these eleven requests with the following two requests:

i. For the 80 to 100 attorneys described by QPWB as "rainmakers" or as heads of "business units" within QPWB, produce the: (i) agreement between Quintairos and such lawyer(s) governing their compensation and other rights with respect to QPWB; and (ii) Documents sufficient to identify their aggregate compensation in 2024, 2025, and year to date 2026.

**Request Nos. 21-23 and 26-28.** The Trustee withdraws these six requests without prejudice.

**Remaining Requests.** The Trustee stands on Request Nos. 1, 2, 4-6, 15, 18-20, 24, 25, and 29-34 as written.

## III. <u>STATEMENT OF FACTS</u>

1. On January 22, 2025, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, and on April 7, 2025, the Trustee was appointed. *See* Nevada ECF Nos. 1 and 157.

2. As a result of the verdict issued in the Sanchez Lawsuit, Mr. Sanchez filed his proof of claim in the Debtors' Chapter 11 Cases in an amount ***exceeding half a billion dollars***. *See* Claim No. 7 filed in bankruptcy case number 25-10341-nmc, and Claim No. 3 filed in bankruptcy case number 25-10347-nmc (each in the asserted amount of $579,442,390.01 as of the Petition Date).

3. The more-than-half-a-billion-dollars in liability asserted against the Debtors' bankruptcy estates is the basis for the Trustee's asserted malpractice claims against Quintairos.

4. On August 1, 2025, the Trustee filed the Plan, and the Confirmation Order was entered on October 7, 2025. *See* Exs. 2 and 3.

5. Pursuant to the confirmed Plan and the Global Settlement Agreement (as defined in the Plan), the Sanchez Claim was allowed in the significantly reduced amount of $410,000,000. *See, e.g.*, Plan (**Ex. 2**) at §§ 1.1.128, 3.2, 4.9. Beazley, the insurer that retained Quintairos to defend the Debtors and the Individuals in the Sanchez Lawsuit, paid the Debtors' bankruptcy estates $108.5 million to resolve the estates' bad faith insurance claims. Significantly, the malpractice, fraudulent transfer, and related claims transferred to the Trust for prosecution on behalf of the estates' creditors (the Quintairos Litigation Claims) arise from the same underlying misconduct: the gross malfeasance of Quintairos and its attorneys in their representation of the Debtors and the Individuals in the Sanchez Lawsuit. The magnitude of Beazley's settlement underscores the extraordinary financial consequences of that misconduct. The Quintairos Litigation Claims represent a potentially substantial source of recovery for the estates' creditors, with damages against Quintairos and its attorneys exceeding hundreds of millions of dollars.

6. Pursuant to the confirmed Plan, the NuMale Liquidation Trust was formed.[15]

[15] *See, e.g.*, **Ex. 2** (Plan), ECF No. 434 at §§ 1.1.74–1.1.81 (p. 15 of 56) and § 5.8 (pp. 30-32 of 56). *See also* Trust Agreement, **Ex. 3** (Confirmation Order) at internal Exhibit 3, Nevada ECF No. 726-1 pp. 8-28. *See also* Nevada ECF No. 595-1.

7. Consistent with the confirmed Plan and the Trust Agreement, the Trustee undertook his investigation of the Quintairos Litigation Claims, including malpractice, fraudulent transfer, and improper distribution claims.

8. On October 6, 2025, the Trustee sent Quintairos a demand for the entire NuMale client file. *See* Exhibit "G" to Motion.

9. Quintairos produced only part of the file. This was followed by a second turnover demand issued on behalf of the Trustee on December 17, 2025, identifying entire categories of documents absent from the production, and a "THIRD AND FINAL DEMAND" on January 7, 2026. Quintairos produced what it represented was the balance of the file on February 19, 2026, more than four months after the first demand. Garman Decl. ¶ 11.

10. On May 18, 2026, the Trustee issued correspondence outlining his analyses then-to-date of the malpractice claims. *See* Exhibit "D" to Motion.

11. Thereafter, the Trustee participated in good faith in settlement negotiations with the Quintairos parties in an effort to reach a consensual resolution without need of filing suit, and held in abeyance discovery necessary to his investigation. Quintairos provided limited information during those negotiations, conditioned on a non-disclosure agreement that bars the Trustee from using it outside the negotiations. Garman Decl. ¶ 12.

12. However, after the Trustee made two settlement offers to Quintairos, to which Quintairos refused to even provide a counter, discussions concluded on September 10, 2026. Accordingly and appropriately, the Trustee then proceeded with Rule 2004 discovery in furtherance of completing his investigation of the Trust's claims. *Id.* ¶ 13.

13. As such, and facing a conservative limitations deadline of November 23, 2026, the Trustee filed the 2004 Motions. *See* Nevada ECF Nos. 969, 970, 971.

14. While the 2004 Motions were pending, Quintairos issued the Extortion Letter. *See generally* **Ex. 1** hereto.

15. The Nevada Court then issued its 2004 Orders. *See* Nevada ECF Nos. 972, 973, 981.

16. The 2004 Orders, entered on September 15 and 22, 2026, were not challenged and remain valid, enforceable orders of the Nevada Court. *See* Docket in Chapter 11 Cases.

17. The Trustee moved quickly to issue and serve the 2004 Orders and Subpoenas. *See, e.g.*, Nevada ECF Nos. 974, 975, 987.

18. On September 28, 2026, the Trustee served the Nevada Subpoena on Quintairos at its Henderson, Nevada office. *See* Nevada ECF No. 994.

19. Two days before the document production deadline set in all of the Subpoenas, *see, e.g.*, Nevada ECF Nos. 974, 975, 987, the Movants filed the instant Motion in this Court.

20. Between September 29 and October 6, 2026, counsel met and conferred four times without resolution. Quintairos offered only a generalized description of the compensation paid to the eighty to one hundred attorneys it identifies as "rainmakers" or "heads of 'business units,'" without identifying them or the amounts they received. The Trustee offered to accept that limited information if the unidentified recipients would toll the claims against them. Quintairos refused. Garman Decl. ¶ 14.

21. On October 7, 2026, the Trustee sent Movants the October 7 Letter, narrowing the Subpoenas and the Nevada Subpoena as set forth in Section II. **Ex. 4**. Movants rejected the proposal. Garman Decl. ¶¶ 6-7. The same day, Movants filed their motion in the Nevada Court. *See* Nevada ECF No. 1007.

22. On October 8, 2026, Quintairos served written objections to the Nevada Subpoena and to date has produced no documents. Garman Decl. ¶ 15. The Trustee's motion to compel compliance with the Nevada Subpoena is pending. *See* Nevada ECF No. 1015.

## IV. ANALYSIS

The Movants did not challenge either the 2004 Motions or the 2004 Orders with the Nevada Court, and the 2004 Orders remain valid and enforceable.[16] Instead, the actual relief requested in the Motion, to quash the Subpoenas issued *pursuant to* the 2004 Orders (or obtain a protective order), is premised on Civil Rule 45,[17] incorporated into bankruptcy cases by operation of Bankruptcy Rule 9016. The Movants have failed to carry their burden. The Motion should be denied.

### A. Movants Have Failed to Carry Their Burden of Showing that Quashing the Subpoenas is Warranted.

The bases for quashing a subpoena are narrow. A court may quash or modify a subpoena only if it fails to allow a reasonable time to comply, requires compliance beyond the geographical limits of Civil Rule 45(c), requires disclosure of privileged or other protected matter, or subjects a person to undue burden. Civil Rule 45(d)(3)(A).

"The party which seeks to quash a subpoena bears the burden of establishing that its request should be granted." *Bledsoe v. Remington Arms Co., Inc.*, 2010 WL 147052, *1 (M.D. Ga. 2010) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)).

**The burden is a heavy one**. The movant must establish "that compliance with the subpoena would be 'unreasonable and oppressive,'" and a movant that presents no evidence of the

---

[16] Furthermore, in light of the broad scope of Fed. R. Bankr. P. 2004, using it to discover potential claims belonging to a debtor "is precisely in line with" its purpose. *See In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) (citation omitted); *see also In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("[T]he investigation of potential claims on behalf of a debtor is not an improper use of Rule 2004 discovery[.]" (citations omitted)).

[17] Herein, all references to "Civil Rule" are to the Federal Rules of Civil Procedure. All references to "Rule" or "Fed. R. Bankr. Proc." are to the Federal Rules of Bankruptcy Procedure.

time, cost, or inconvenience of compliance fails to carry that burden. *See In re Yassai*, 225 B.R. 478, 483-84 (Bankr. C.D. Cal. 1998) (citations omitted).

Movants cite to, *inter alia*, *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322 (11th Cir. 2020), for the premise that "courts must 'balance the interest served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *See* Motion ¶ 56. *Jordan* looks to the factors identified in *Wiwa*: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. *Jordan*, 947 F.3d at 1337; *Wiwa*, 392 F.3d at 818. The Motion does not address these factors. Each favors enforcement of the Subpoenas as narrowed.

**1. Relevance of the Information Requested.**

The Motion makes much of the purpose of Fed. R. Bankr. P. 2004 but misses entirely that the scope of the Trustee's examination goes beyond malpractice claims and encompasses all rights, claims, and causes of action "against [Quintairos] **and its attorneys, employees, Insiders, and Affiliates**[.]"[18] The narrowed requests go directly to those claims: the client-file requests to the malpractice claims, and the compensation and transfer requests to the identity of the transferees, including subsequent transferees, against whom any fraudulent transfer and improper distribution claims must be brought.

Moreover, Quintairos has already conceded that the information sought via the Subpoenas is relevant, because—as the Extortion Letter makes clear—the Trustee and his counsel shall suffer a parade of (dire) consequences in the event the Trustee does *not* fully investigate the Quintairos Litigation Claims.[19] Last, without this necessary evidence, the Trustee will be forced to plead

[18] *See, e.g.*, **Ex. 2** (Plan), Nevada ECF No. 434 at §§ 1.1.113-114 (p. 19 of 56) (emphasis added).

[19] *See* **Ex. 1** (Extortion Letter). *See also* Nevada ECF No. 1007 (motion filed on October 7, 2026, bringing certain of these threats to life via a contested matter with the Nevada Court).

certain claims without the specificity required, and the Quintairos parties will most certainly file a Civil Rule 12 motion seeking to dismiss the Trustee's complaint on that basis.

2. **<u>The Trustee's Need for the Documents.</u>**

The Trustee's need for the documents is paramount. When produced, the Subpoenaed documents will:

- Accomplish the turnover of the full client file by Quintairos (thus providing the Trustee with information requested more than *one year ago*). The Extortion Letter, and ¶ 61 of the Motion, both suggest that Quintairos has not provided the entire Malpractice File to the Trustee. The Trustee is entitled to the entire client file. And, to the extent *any* aspects of the file have been withheld or not produced to date, the Trustee is entitled to those portions and to ask Quintairos under oath why they were not previously produced.
- Provide the Trustee with the information to fully investigate the fraudulent transfer and improper distribution claims. Without the identities of the transferees, the agreements governing the payments, and the amounts paid, the Trustee cannot determine whom to sue, and the Quintairos parties have refused to toll the claims against the people they will not identify. The Trustee, as the trustee of the Trust, is a fiduciary; the beneficiaries of the Trust are essentially the unsecured creditors of the NuMale bankruptcy estates, and the Quintairos Litigation Claims are the largest asset of the Trust.

3. **<u>The Breadth of the Document Requests.</u>**

The Subpoenas, as originally issued, were reasonable. The financial requests were limited in time, most to a defined "Transfer Period" beginning January 1, 2023 or January 1, 2024; many sought only "Documents sufficient to show"; and the transfer requests excluded transactions below specified monetary thresholds. *See* Motion, Exs. A–C. Requests so circumscribed are not overbroad. *See, e.g.*, *S.E.C. v. Dowdell*, 144 F. App'x 716, 723-24 (10th Cir. 2005) (affirming

denial of a motion to quash where, among other things, the subpoena specified a minimum financial threshold, thus eliminating "many of the transactions that may be unrelated to the investigation"). The Motion does not explain how any request, as issued, was unreasonable or oppressive; it simply labels the Subpoenas a "strip-mine." Motion ¶ 25.

Nevertheless, with the limitations deadline approaching, the Trustee has made reasonable requests more reasonable still. Every request the Motion quotes as "invasive and disproportionate"—Request Nos. 4, 6, 8, and 9 of the Prieto Boyer Subpoenas and Request Nos. 9, 16, and 17 of the Quintairos Subpoena—has been replaced. *Compare* Motion ¶¶ 22-24, *with* Section II, *supra*. What remains is circumscribed: as to Messrs. Prieto and Boyer, documents sufficient to show transfers of $250,000 or more in a calendar year, excluding real property they still own, and documents they have already produced; as to Quintairos, the compensation agreements and aggregate compensation of a defined group of attorneys, together with ownership, governance, insurance, and Sanchez Lawsuit records.

**4. <u>The Time Period Covered By the Subpoenas.</u>**

The Motion is silent as to the time period covered by the Subpoenas, effectively conceding its reasonableness. In any event, the narrowed compensation and transfer requests reach back only to January 1, 2024, the year of the verdict in the Sanchez Lawsuit.

**5. <u>The Particularity With Which the Trustee Describes the Requested Documents.</u>**

The Motion is silent as to, and appears to take no issue with, the specificity with which the Trustee describes the documents requested via the Subpoenas. As such, the Movants have conceded this factor.

**6. <u>The Burden Imposed.</u>**

Here, too, the Motion does not specify the burden that compliance would impose on any Movant—no estimate of documents, custodians, time, or cost.

**a. As to the Prieto Boyer Subpoenas.**

Request Nos. 1–3 are unchallenged, and responsive documents were previously provided to the Trustee during negotiations; re-producing them, or authorizing their use, imposes no burden. The three replacement requests call only for documents sufficient to show transfers of $250,000 or more in a calendar year, which Messrs. Prieto and Boyer can readily assemble. And the Nevada Court has held that Fed. R. Bankr. P. 2004 examinations are an appropriate vehicle for investigating subsequent transferees, even when an adversary proceeding asserting fraudulent transfers has already been filed.[20]

**b. As to the Quintairos Subpoena.**

Here too, the Movants do not establish how compliance with the Quintairos Subpoena would be oppressive, unreasonable, or an undue burden to this national law firm, which boasts 660 attorneys in 61 offices. More specifically:

- **The replacement requests.** The two requests replacing Request Nos. 3, 7-14, 16, and 17 concern the eighty to one hundred attorneys whom Quintairos itself has identified as "rainmakers" or heads of "business units," and seek only their compensation agreements and documents sufficient to show their aggregate compensation for 2024, 2025, and 2026 to date. A law firm of this size should be able to readily and easily produce those records.
- **Request Nos. 1, 2, 4-6, and 15.** These requests seek formation, ownership, governance, and financial-statement records the firm should readily have available. Nos. 2, 4, and 6 are limited to "Documents sufficient to show"; Nos. 1, 2, 5, and 6 are limited to the

[20] *See, e.g.*, Nevada Bankr. Case No. 23-10048 (*In re Advantage Cap. Holdings-I, LLC*), Dkt. Nos. 644 (transcript of oral ruling on motion to quash subpoenas and protective order) and 629 (order denying motion to quash).

Transfer Period, which begins January 1, 2024[21]; No. 4 is limited to a period commencing January 1, 2022; and No. 15 is limited to fiscal year 2023 forward.

- **Request Nos. 18-20, 24, 25, and 29-34.** These all pertain to the Sanchez Lawsuit, and many should have been included when the Malpractice File was turned over. To the extent they have already been produced, Quintairos simply makes the representation that the documents have already been produced; to the extent the documents do not exist, Quintairos simply makes the representation that they do not exist. To the extent Quintairos contends a document is privileged as against the Trustee, who holds the Debtors' privilege, it may withhold and log the document under Civil Rule 45(e)(2)(A); that contention is not a basis to quash the requests. And if, as the Extortion Letter and the Motion (¶ 61) suggest, not all of the client file was turned over, there is no burden to this national law firm in turning over the balance of the client file—*as it has had more than one year to do so*.

The foregoing requests are foundational to the Trustee's investigation. The Movants have failed to demonstrate how compliance with the Quintairos Subpoena is unreasonable or oppressive to them, or an undue burden.

### B. <u>Taking the Foregoing Into Consideration and Balancing Interests, the Court Must Deny the Motion.</u>

Here, and as set forth above, the information requested via the Subpoenas is highly relevant to the Trustee's pre-suit investigation of the Quintairos Litigation Claims, much of it is available only from Movants, and it is needed before a limitations deadline that Quintairos has refused to toll. Moreover, Quintairos, through Nevada counsel, has threatened the Trustee and his counsel with legal action for allegedly not fully investigating the Quintairos Litigation Claims. Against

[21] *See* Motion Ex. A, Definitions ¶ 20 (defining the "<u>Transfer Period</u>" as "January 1, 2024 through the date of Your production").

that, Movants offer an unquantified burden and a confidentiality concern the Trustee has already offered to address through a protective order.

Taking the foregoing considerations into account, this Court should deny the Motion as the Movants have simply not carried their burden of showing why they are entitled to relief in the form of quashing the Subpoenas.

**C. The Request for a Protective Order Should Be Denied.**

Neither are the Movants entitled to a protective order barring the discovery. Under the authority Movants cite, the Court considers, among other factors, "the availability of a less onerous alternative." *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1251 (11th Cir. 2020) (quoting *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)); *see* Motion ¶ 62. The only concrete harm Movants identify is the disclosure of confidential compensation, financial, and personal information. Motion ¶¶ 63-64. The Trustee does not dispute that compensation terms and personal financial information may warrant protection, and he consents to production subject to an appropriate protective order limiting their use and requiring their redaction or filing under seal. That is the less onerous alternative. Movants' remaining asserted harm—that the discovery may support claims against them—is not good cause to bar it. The request for a protective order should be denied.

## V. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests the Court deny the Motion in its entirety and order that the documents called for by the Subpoenas, as narrowed by the October 7 Letter, be produced by the Movants no later than October 30, 2026, at 5:00 p.m. (Pacific Time), and the Movants sit for examination on a date agreed by the parties on or before November 4, 2026, or, absent agreement, on November 4, 2026; and that the Court grant other and further relief as is just and proper.

Date: October 13, 2026

Respectfully Submitted,

Gregory E. Garman, Esq. (*pro hac vice pending*)
Talitha Gray Kozlowski, Esq. (*pro hac vice pending*)
GARMAN TURNER GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119

-and-

BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By: */s/ Jordi Guso*
Jordi Guso
Florida Bar No. 863580
jguso@bergersingerman.com
Erin M. Hoskins
Florida Bar No.: 1003283
ehoskins@bergersingerman.com

*Attorneys for Michael Carmel, Trustee of the NuMale Liquidating Trust*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 13, 2026, a true and correct copy of the foregoing was served by electronic transmission through the Court's CM/ECF system upon all parties listed on the Electronic Notice List, and via first class, U.S. Mail, postage prepaid upon the parties listed below.

By: */s/ Jordi Guso*
Jordi Guso

**VIA U.S. MAIL**

Alex L. Fugazzi, Esq.
Charles E. Gianelloni, Esq.
Bob Olson, Esq.
SNELL & WILMER
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135

**Electronic Mail Notice List**

- **Luis Salazar** lsalazar@coleschotz.com, luis-salazar-4791@ecf.pacerpro.com;JCeide@coleschotz.com;Alee-sin@coleschotz.com;DFernandez@coleschotz.com;EVazquez@coleschotz.com

# EXHIBIT 1

EXHIBIT 1

SGRO | ROGER
ATTORNEYS AT LAW

LAS VEGAS | RENO | MILAN

September 14, 2026

**VIA Certified Mail & Electronic Mail**
Gregory Garman, Esq.
Garman Turner Gordon
7251 Amigo Street Suite 210
Las Vegas, Nv 89119
www.gtg.legal
Phone: 725 777 3000
Fax: 725 777 3112
*Email:ggarman@gtg.legal*

**Re: In re NuMale Corporation, et al., Case No. 25-10341-nmc (Bankr. D. Nev.) — Demand for Withdrawal of Claims Asserted Against Quintairos, Prieto, Wood & Boyer, P.A.; Notice of Ethical, Fiduciary, and Statutory Deficiencies; Reservation of Rights Regarding the Barton Doctrine and Related Remedies**

Dear Mr. Garman:

Please be advised we have been retained to represents Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB") relative to claims against you and/or the Trustee in connection with the above-referenced bankruptcy estate. Specifically, we have been retained to explore the integrity of a settlement accomplished within the rubric of said bankruptcy estate and the claims the Trustee has asserted, and threatens to assert, against QPWB arising out of QPWB's trial representation of NuMale [entity] ("Debtor") in the underlying New Mexico state-court medical malpractice action (the "Underlying Action"). We are not replacing Snell & Wilmer or Mr. Fugazzi. However, we ask that you include our office on all communications concerning these related matters. Further, please do not communicate directly with QPWB concerning the subject matter of this representation.

We write to place the Trustee and his counsel on formal notice of the deficiencies in the claims described below, to demand the immediate withdrawal of the demand served on QPWB, and to reserve QPWB's rights to pursue the remedies outlined herein. These remedies include relief under the Barton doctrine and a referral to the Office of the United States Trustee. We are also exploring the appearance of ethical improprieties that occurred in the underlying trial which likely contributed to the grossly disproportionate jury verdict which you seek to continue to collect on.

The exorbitant demand against QPWB is itself a central concern. I am unaware of any analysis completed that sought to crystalize QPWB's legally supportable, causally attributable exposure. It

appears the alleged punitive component of an underlying verdict has released parties whose conduct bears directly on the verdict's size. It also appears said actions were executed to impose coercive leverage rather than to obtain a recovery grounded in law, evidence, and the estate's actual interests. QPWB is evaluating which claims are available to them because of the assertion and pursuit of that demand, together with the settlement and claim-resolution structure described below. There also appears to have been a decision made to deliberately ignore numerous pieces of evidence which completely absolve QPWB from any liability. Nonetheless, as recently as yesterday, you continue to confirm that the baseless pursuit of QPWB will continue.

At a minimum, no monies should be distributed until the issues addressed herein are resolved. To the extent there have already been any distributions, we ask those be immediately returned to the bankruptcy estate until this matter is resolved. This includes monies that you and the Trustee benefitted from. This letter is not exhaustive of QPWB's substantive defenses to liability, which are addressed separately. It instead focuses on the conduct of the Trustee and his counsel in pursuing this claim.

We have also been made aware of, and reviewed, your correspondence dated September 10, 2026. That correspondence serves only to compound the concerns addressed herein.

**I. Factual Background**

As you and the Trustee are aware:

- Predecessor counsel represented the Debtor and the individual physician defendants through the pretrial phase of the Underlying Action and were replaced during discovery. QPWB was retained thereafter and served as trial counsel.

The Debtor's liability carrier was heavily involved in settlement discussions throughout the case and, by all indications, made its own independent decision not to settle within available limits in a timely matter. As referenced above, this fact alone absolves QPWB of any liability relative to the instant jury verdict. Throughout the course of their representation, the debtor was adamant about the case's lack of merit and wanted the case tried. During trial, likely due to nefarious and unethical conduct of the Plaintiff lawyers, all the debtor's representatives decided to leave the trial against the advice of counsel. Indeed, Plaintiffs' counsel used their absence in his arguments to the jury, and it was a significant factor in the size of the jury award. The jury returned a compensatory verdict of \$37,005,149 and punitive damage verdict of \$375,000,000. Despite the disproportionate punitive damage award, that verdict was never reduced to a final judgment. No post judgment motions were filed because before judgment was entered, the Debtor filed for Chapter 11 protection, and a trustee was appointed based on disarray within the company and findings regarding the unfitness of prior management. Each of these circumstances that predate, and are independent of, QPWB's role as trial

SGRO | ROGER
ATTORNEYS AT LAW

LAS VEGAS | RENO | MILAN

counsel. No post-trial motions were conducted and no other motion practice that we are aware of has ever been brought relative to apportionment of the claim you are seeking to pursue. In addition, we are not aware of how the $108 million dollar settlement was allocated between "settlement" of punitive v. compensatory damages.

- Following his appointment, you and the Trustee made the decision not to pursue an appeal, not to seek remittitur, and not to pursue mitigation or other available defenses that could have reduced the estate's stated exposure. Clearly, post-trial motions, particularly to seek remittitur, would have likely reduced the overall award. Said reduction would not have been in the best interests if you or the trustee. It was the carrier's initial decision not to settle, and it was the debtor's representative's decision to leave the trial. One of the debtors' representatives spoke directly to plaintiff's counsel without QPWB present. Each of these decisions were made by parties other than QPWB and were made after QPWB's role in the Underlying Action had concluded. Rather than pursue remittitur, appeal, or otherwise mitigate the estate's exposure, the Trustee and his counsel instead negotiated a settlement with the liability insurer for approximately $108,000,000 and obtained releases for the insurer, the Debtor's principals, and the individual physician-managers. Each of these parties had actual exposure under New Mexico's pure comparative fault regime for their own role in the size and finality of the verdict, leaving QPWB as the sole remaining target of a hyper-inflated claim divorced from any real damage assessment, much less QPWB's share in such damages. Instead, without disclosing the potential for conflict, the debtor and the Trustee orchestrated a scenario where issues were ignored, all the while trying to maximize the opportunity to wrongfully pursue QPWB.
- Dr. Asandra was, a key, if not primary, witness for the defense in the Sanchez litigation. The day before Dr. Asandra was supposed to testify, plaintiff's counsel manufactured a conflict by offering to drop Dr. Asandra as a defendant from the case in exchange for his agreement not to testify.
- The Trustee and his counsel cannot benefit by keeping an inflated, non-final verdict alive rather than reducing it. They cannot benefit by deciding to release every other potentially responsible party in exchange for a fixed recovery, and then pursue the remaining defendant, mistakenly perceived to have the deepest available insurance coverage on a contingency-fee basis.

**II. The Perceived Claim Against QPWB is Legally and Factually Deficient**

New Mexico follows a pure comparative fault regime. See *Scott v. Rizzo*, 634 P.2d 1234,1242 (N.M. 1981); NMSA 1978 § 41-3A-1. The releases described above extinguished claims against multiple parties with direct, independent exposure for the size of the verdict: the carrier, whose own settlement decisions are subject to scrutiny; and the physician-managers, whose refusal to settle and failure to appear for trial the record reflects contributed materially to the verdict amount. A claim that attempts to place the entirety of a $400,000,000 verdict on trial counsel, while releasing every party whose own conduct bears directly on the size and finality of that verdict, is inconsistent with New Mexico's comparative fault framework on its face.

Causation is likewise deficient. QPWB's role concluded with the verdict. The decisions not to appeal, not to seek remittitur, and not to pursue mitigation were made afterward, by the Trustee and his counsel, and are the proximate reason the verdict was never reduced. A trustee cannot decline to exercise available, ordinary loss-mitigation tools, tools squarely within the Trustee's own control, and then attribute the resulting exposure to trial counsel who had no role in, and no ability to affect, that post-verdict decision.

The Trustee likewise cannot convert the punitive component of the underlying verdict into QPWB's alleged compensatory exposure merely by demanding it. Any legal malpractice recovery must be confined to loss that is legally recoverable and proximately caused by QPWB's alleged conduct, rather than amounts attributable to the conduct of other parties, the carrier's decisions, post-verdict choices made after QPWB's representation ended, or a punitive award imposed in the underlying action. Although New Mexico permits punitive damages in a legal-malpractice action only upon proof of independently culpable conduct, such as malicious, intentional, fraudulent, or wanton conduct, the present demand identifies no supported basis to attribute the underlying punitive award to QPWB. *Rodriguez v. Horton*, 95 N.M. 356, 622 P.2d 261 (Ct. App. 1980). As of this writing, it is still unclear exactly what QPWB did that would give rise to any malpractice claim. In other words, did they fail to comply with discovery deadlines? Did they fail to notice an expert? Was any evidence precluded because of motion practice where the trial court found their conduct to be sanctionable? It appears the only assertion made thus far is the false equivalency narrative that ONLY because there was a large verdict, there MUST HAVE BEEN malpractice. That is clearly insufficient.

We are aware of authority, including cases addressing sanctions against trustees and their counsel for maintaining inflated or contested claims for improper leverage rather than pursuing available reduction, and disapproving of the use of estate litigation to generate contingency-fee recoveries rather than to maximize net value to creditors. *See*, *e.g.*, *In re Jones*, 356 B.R. 39, 45 (Bankr. D. Idaho 2005) (refusing to validate counsel's contingency fee arrangement and identifying as problematic counsel's actions while questioning "whether [c]ounsel was driven by his own interests rather than his clients' interests"); *In re Scoggins*, 142 B.R. 940, 945-46 (Bankr. D. Or. 1992) (upholding order

SGRO | ROGER
ATTORNEYS AT LAW

LAS VEGAS | RENO | MILAN

disgorging the trustee's attorney's fees where the attorney pursued meritless claims and a cost benefit analysis would have indicated that the only parties likely to receive any funds from the litigation was the trustee and trustee's attorney); *In re Barnes*, No. 12-65084-tmr7, 2013 Bankr. LEXIS 2876, *12-*19 (Bankr. D. Or. July 16, 2013) (denying the trustee's application to employe counsel who agreed to be paid on a contingency fee basis to pursue bad faith and legal malpractice claims and noting counsel had a personal interest in recovering fees). That authority is directly relevant to the posture of this claim.

The demand to QPWB is entirely grounded in baseless legal theories and poses serious conflicts for you and your client. You and the Trustee will definitely be witnesses is this litigation. The continued threats to law firm partners across the country rises to the level of unreasonable and vexatious litigation which warrants fee shifting, which we will pursue under 28 U.S.C. § 1927. *Franco v. Dow Chem. Co. (In re Girardi), 611 F.3d 1027, 1065 (2010)* citing *B.K.B. v. Maui Police Dep't*, 276 F3d 1091, 1107 (9th Cir. 2002)("[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct").

**III. The Trustee's Fiduciary and Statutory Duties**

A Chapter 11 trustee is a fiduciary to the estate and its creditors and is charged with maximizing the value of the estate, not with manufacturing the largest nominal claim against the most solvent available target. See 11 U.S.C. § 704(a)(1) (duties incorporated for chapter 11 trustees via § 1106(a)(1)); *Mosser v. Darrow*, 341 U.S. 267, 274, 71 S. Ct. 680, 683 (1951) (explaining "a trusteeship is serious business and is not to be undertaken lightly or so discharged," and recognizing that the most effective sanction against a trustee "is personal liability for the consequences of forbidden acts"). Where a trustee releases every party with direct, independent exposure for a verdict's size, the carrier that refused to timely settle and the debtors representatives actually leaving the trial, in exchange for a fixed sum, declines to pursue remittitur or appeal that would reduce the estate's stated exposure, and then pursues a contingency-fee claim against trial counsel with no comparable causal or culpability nexus, that pattern is directly relevant to whether the Trustee is exercising independent business judgment in the estate's interest, or is instead structuring recoveries to maximize contingency-fee return to himself and his counsel. It should be noted that the carrier's "settlement" has been calculated by you on a dollar-for-dollar basis relative to the alleged "balance" left to pursue against QPWB. The undersigned has never met a carrier who ever settled dollar for dollar.

We intend to investigate, through appropriate discovery and motion practice, the Trustee's and counsel's engagement and compensation agreements, all analyses (if any) of remittitur or appeal, all communications regarding the decision to release the carrier and the physician-managers, and all records reflecting other matters in which the Trustee and this counsel have employed a similar structure.

A bankruptcy trustee serves as the legal representative and fiduciary of the estate. *In re AFI Holdings, Inc.*, 530 F.3d 832, 844 (9th Cir. 2008). The Trustee therefore owed an obligation to conserve estate assets and maximize distributions to creditors. *In re Rigden*, 795 F.2d 727, 730 (9th Cir. 1986). The Trustee must hold no interest adverse to the estate, and an appearance of impropriety or potential conflict of interest may itself constitute grounds for removal. *In re AFI Holdings*, 530 F.3d at 845, 850. Trustees must not advance their self-interest in a manner that calls into question the disinterestedness of their administration. 7 Collier on Bankruptcy ¶ 1106.02 (16th ed. 2026).

QPWB's present understanding is that the "settlement" channeled $96.5 million of the $108.5 million paid by Beazley directly to Sanchez, while GTG received over $9.3 million and the Trustee personally received approximately $3.3 million, leaving unsecured creditors with only pennies on the dollar. QPWB further understands that the Trustee released the insurer from any obligation to pay the full judgment amount and assigned estate claims against other parties to the insurer, further diminishing the estate's recovery. Had the Trustee challenged the verdict and simultaneously pursued Beazley on the insurance claim, the likelihood is that all unsecured creditors would have been paid in full.

Under 11 U.S.C. §§ 1106(a)(1) and 704(a)(5), a Chapter 11 trustee must perform the incorporated duty to examine proofs of claim and object to the allowance of any improper claim if a purpose would be served. A trustee has not only the right but the duty to object to any claim not entitled to allowance against estate assets and to eliminate or modify claims to ensure equitable distribution to the proper creditors of the estate. 4 Collier on Bankruptcy ¶ 502.02 (16th ed. 2026). The duty to administer estate claims includes the duty to appear and prosecute, or defend against, causes of action on behalf of the estate that may benefit or adversely affect estate property. *In re Smart World Technologies, LLC*, 423 F.3d 166, 175 (2d Cir. 2005). That principle includes the obligation to object to improper claims. *In re International Yacht & Tennis, Inc.*, 922 F.2d 659, 661 (11th Cir. 1991).

The Trustee's own Rule 9019 motion reportedly acknowledged the estate's obligation to mitigate damages and seek to reduce the Jury Verdict as much as possible. Yet the only identified evidence of any appeal analysis is a single line in the Trustee's declaration that he became aware of the difficulty generally involved in overturning the Jury Verdict, with no substantive explanation. Beazley had agreed to pay for all post-judgment motions and appeals, eliminating the cost barrier that might otherwise have been offered to justify inaction. By stipulating to an inordinate claim rather than challenging it, the Trustee ensured that the claim remained artificially inflated to the detriment of every other unsecured creditor.

**IV. Fee Arrangement and Rule 2014 Disclosure Concerns**

Trustee's counsel compensation is subject to Bankruptcy Court approval and the reasonableness standards of 11 U.S.C. §§ 328 and 330, and counsel's retention is subject to the disclosure requirements of Fed. R. Bankr. P. 2014(a), which requires disclosure of all connections with the debtor, creditors, and other parties in interest, and of the terms of any proposed compensation arrangement, including contingency terms. At the hearing on counsel's contingent-fee retention, the Court expressed hesitation about authorizing compensation on a contingency basis. The Court granted the retention motion only after the Trustee reserved the right to contest counsel's entitlement to a contingent fee. The Trustee's presentation was not forthright for two independent reasons. First, notwithstanding that express reservation, the Trustee has never contested counsel's entitlement to the contingency fee. Second, the Trustee and counsel knew when the retention request was presented that the case was about to settle, eliminating the actual risk of nonpayment that ordinarily provides the economic justification for a contingent-fee arrangement. In these circumstances, the Court should be provided a complete explanation of the basis for the contingency arrangement, the timing and status of settlement negotiations when retention was sought, the Trustee's reservation of rights, and the Trustee's decision never to invoke that reservation. To the extent the contingency-fee terms governing pursuit of the QPWB claim, the allocation of the $108,000,000 insurer settlement, or any prior similar arrangement in other estates were not fully and accurately disclosed to and approved by this Court, that is an independent basis for relief, including disgorgement under § 328(c) and possible removal under § 324. QPWB's present understanding, subject to verification through the Rule 2004 examination and discovery described in Section VIII, is that the Trustee's and his counsel's connections, including any prior contingency-fee relationship between the Trustee and his counsel, and any comparable contingency-fee arrangements either has had with other counsel or other trustees, respectively, may not have been fully disclosed as Rule 2014(a) requires. This would independently support disgorgement, not only of compensation paid to the Trustee and his counsel in this case, but, to the extent the same non-disclosure or the same pattern described in Section I recurs, of compensation paid to the Trustee and his counsel in any other matter in which they have acted together on a contingency-fee basis.

Before the Court approved GTG's employment on May 22, 2025, GTG attorneys had already engaged in extensive settlement discussions with Beazley and Sanchez, beginning as early as April 14, 2025, with a Zoom call with Beazley's counsel. QPWB further understands that GTG had negotiated a term sheet and begun drafting the settlement agreement and a Chapter 11 plan before the Court's employment ruling.

None of that activity was disclosed to the Court in the GTG Employment Application or the supporting declarations. The application sought approval of a contingency-fee arrangement on the ground that the largest estate asset was litigation claims, which were by their nature speculative. But,

by the time the Court ruled, those claims allegedly were no longer speculative because a settlement term sheet was already in hand.

Attorneys who file employment applications have a continuing responsibility to disclose facts material to the application, even after it is filed. *In re Metropolitan Environmental, Inc.*, 293 B.R. 871, 887 (Bankr. N.D. Ohio 2003). The failure to update the Court was materially relevant to the contingency-fee decision and would have likely saved the estate millions of dollars in administrative expenses. Counsel for a trustee is also a fiduciary to the estate. *In re Evangeline Refining Co.*, 890 F.2d 1312, 1323 (5th Cir. 1989) (trustees and attorneys for trustees are held to high fiduciary standards of conduct). Trustee's counsel owes a higher fiduciary duty to the estate than to the Trustee. *In re Delta Petroleum (P.R.), Ltd.*, 193 B.R. 99, 111 (D.P.R. 1996).

Those fiduciary obligations were not met if GTG concealed the full status of negotiations that directly affected the Court's evaluation of the fee structure. QPWB reserves the right to seek discovery into the timing, participants, substance, and disclosure of all settlement negotiations and to seek appropriate relief if the evidence confirms that the Court was not provided information material to its employment and compensation decisions.

QPWB raises these concerns mindful that undisclosed connections among the professionals administering a bankruptcy estate are not a theoretical harm. *In re Professional Fee Matters Concerning the Jackson Walker Law Firm,* No. 23-00645 (Bankr. S.D. Tex.), saw the Office of the United States Trustee pursue disgorgement of tens of millions of dollars in fees across dozens of bankruptcy cases arising from a connection among bankruptcy professionals that went undisclosed as the rules required, a matter that resolved through a $15,000,000 settlement announced in August 2026. QPWB does not suggest that the facts here are the same as those in that matter. The relevant point is the principle the U.S. Trustee and the courts applied: undisclosed connections among the professionals administering an estate compromise the integrity of the bankruptcy process, and where such nondisclosure recurs across matters, the appropriate response is a coordinated investigation and disgorgement reaching each affected estate, not case-by-case tolerance of the underlying conduct.

**V. The Barton Doctrine and QPWB's Reservation of Rights**

Pursuant to the holding in *Barton v. Barbour*, 104 U.S. 126 (1881), and its progeny, a party ordinarily must obtain leave of the appointing bankruptcy court before suing a trustee for acts taken within the scope of the trustee's official duties. QPWB does not concede that the conduct described above falls within that protection. Courts recognize that Barton does not shield a trustee for acts outside the scope of authority, for ultra vires conduct, or for conduct undertaken to benefit the trustee personally rather than the estate, and the pattern described in Sections I and III bears directly on that question. See,

e.g., *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875, 884 (B.A.P. 9th Cir. 1995) (recognizing *Barton* only applies to suits against trustees for actions done within the scope of their official duties); *Muratore v. Darr*, 375 F.3d 140 (1st Cir. 2004).

**VI. Potential Professional Responsibility Violations**

We would like you to explain how you navigated your participation in this matter without violating the following list of ethical rules:

- Nev. RPC 1.5 and its counterparts — the reasonableness of contingency-fee arrangements entered by a fiduciary on behalf of an estate, and whether those arrangements were structured to benefit counsel and the Trustee rather than creditors;
- Nev. RPC 1.7/1.8 — conflicts of interest between the Trustee's/counsel's own contingency-fee interest and the estate's interest in maximizing net recovery through mitigation, remittitur, or appeal, and in pursuing the parties (the carrier, the physician-managers) with the most direct exposure;
- Nev. RPC 3.1 and 3.3 — assertion of claims and damages figures (here, a demand exponentially exceeding the actual verdict against trial counsel while releasing parties with direct, independent exposure for the verdict and where the defendants are also significantly responsible for the alleged damages) without a good-faith basis in law or fact, and candor in representations made to this Court regarding the basis for and reasonableness of the claim and the releases;

**VII. Potential Civil Conspiracy**

Such a claim generally requires: (1) an agreement between two or more persons; (2) to accomplish an unlawful objective, or a lawful objective by unlawful means (including breach of fiduciary duty for personal gain); (3) one or more overt acts in furtherance of the agreement; and (4) resulting damage. Preservation of the materials bearing on this claim is addressed in Section IX below.

**VIII. Document Preservation and Litigation Hold Notice**

QPWB intends to pursue, concurrently and without regard to any single track's independent outcome: (i) a motion for leave of this Court to proceed against the Trustee individually under the exceptions to the Barton doctrine described in Section V; (ii) a referral to and motion practice before the Office of the United States Trustee, including under Fed. R. Bankr. P. 2004 and 11 U.S.C. § 324; and (iii) referral to any other regulatory or law enforcement agency. Because QPWB intends to present these

SGRO | ROGER
ATTORNEYS AT LAW
LAS VEGAS | RENO | MILAN

matters together, on a coordinated basis, this section serves as formal notice that all documents, communications, and electronically stored information relevant to any of the foregoing must be preserved in their entirety, effective immediately.

The federal bankruptcy courts in Nevada follow the Nevada Rules of Professional Conduct, which "are largely identical to, the ABA Model Rules of Professional Conduct." *Dignity Health v. Seare (In re Seare)*, 493 B.R. 158, 182-83 (Bankr. D. Nev. 2013). *See also McKenna v. Chesnoff*, No. 2:14-cv-01773-JAD-CWH, 2017 U.S. Dist. LEXIS 25499, *7 (D. Nev. Feb. 23, 2017) ("In the United States District Court for the District of Nevada, attorneys must abide by the Model Rules of Professional Conduct as adopted by the Supreme Court of Nevada.) (citing LR IA 11-7(a)).

This notice constitutes a litigation hold and demand for preservation directed to the Trustee, Trustee's counsel, and their respective firms, agents, and any third-party vendors or service providers holding responsive materials on their behalf. The duty to preserve extends, without limitation, to:

- All engagement letters, retention applications, compensation and fee agreements (including any contingency-fee terms), and all Rule 2014 disclosures made to this Court in connection with the Trustee's or his counsel's retention in this case;
- All analyses, drafts, notes, and communications concerning remittitur, appeal, or other post-verdict relief in the Underlying Action, and the decision not to pursue any such relief;
- All communications and negotiation records concerning the settlement with, and release of, the liability carrier, the Debtor's principals, and the physician-managers, including drafts of the releases and any analysis of their comparative-fault exposure;
- All records concerning the calculation, allocation, and proposed distribution of the $108,000,000 insurer settlement, including any portion allocated or anticipated to be allocated to the Trustee's or his counsel's compensation;
- All documents and communications concerning any other bankruptcy estate, matter, or case in which the Trustee and his counsel have acted together, to the extent bearing on the pattern described in Section I;
- All documents and communications reflecting any prior contingency-fee relationship between this Trustee and this counsel; any contingency-fee engagement this counsel has had with any other trustee; and any other contingency-fee litigation this Trustee has pursued with different counsel, the categories of discovery identified in Section VIII;

- All communications between the Trustee, his counsel, and any other party, including the liability carrier, the Debtor's principals, the physician-managers, and predecessor counsel, occurring prior to the filing of the Chapter 11 petition. QPWB does not concede that the Barton doctrine has any application to this category of material: Barton protects only acts taken within the scope of a trustee's official duties following appointment, and pre-petition communications and conduct necessarily fall outside that protection, whatever their relevance to the pattern, connections, and disclosure issues described in this letter;
- All calendars, billing records, time entries, and internal firm communications concerning the decision to pursue QPWB, including any communications with the U.S. Trustee's office, other creditors, or the Court regarding that decision.

This preservation demand applies regardless of any document retention or auto-deletion policy otherwise in effect, and QPWB reserves all rights and remedies, including spoliation-based relief, sanctions, and adverse-inference remedies, should any responsive material be lost, altered, or destroyed after the date of this letter.

**IX. Settlement Process, Lack of Notice, and Improper Allocation of Exposure**

QPWB did not receive adequate notice or a meaningful opportunity to be heard before material settlement, plan, claim-resolution, release, assignment, carve-out, or related decisions were negotiated, presented, approved, or implemented. QPWB was not afforded a meaningful opportunity to protect its interests before those decisions became final, including the opportunity to review and respond to pertinent motions, applications, notices, disclosure statements, proposed orders, settlement materials, hearing notices, and deadlines affecting its ability to object or participate. QPWB is unaware of any specific allocation made as to bifurcated responsibility of the verdict. QPWB is unaware as to what the $108,000,000 received was allocated for between compensatory and punitive damages. QPWB therefore demands identification of every person who determined that notice to QPWB was unnecessary, declined to provide notice, or evaluated QPWB's right to participate or be heard, together with the factual and legal basis for those determinations.

QPWB is investigating whether the settlement was negotiated, approved, or structured in a manner that unfairly or improperly shifted risk and asserted exposure to QPWB, while depriving QPWB of notice and a meaningful opportunity to protect its interests. That investigation includes the settlement process; the releases, carve-outs, assignments, and allocation decisions that were negotiated or implemented; the waiver, abandonment, or non-pursuit of post-trial and appellate rights; the treatment of claims or potential claims against the carrier and other participants; and the conduct, communications, and authority of the persons involved in those decisions. As you may have gleaned

SGRO | ROGER
ATTORNEYS AT LAW

LAS VEGAS | RENO | MILAN

by now, QPWB is investigating litigation related to the manifestation of the previously refined settlement agreement.

QPWB further requires identification of each person who participated in, recommended, authorized, approved, directed, negotiated, materially influenced, or implemented the settlement and related claim-resolution decisions. That identification should include the Trustee; Trustee's counsel; bankruptcy counsel; the Debtor's representatives; insurer or carrier representatives; post-verdict and appellate counsel; consultants; agents; any individual physician-manager or principal; and every other person who provided advice, exercised authority, or participated in deliberations concerning settlement, releases, assignments, carve-outs, post-trial relief, appellate rights, or claims maintained against QPWB. For each person, please identify the person's role, the authority relied on, the advice provided or received, and the communications and materials considered in making or influencing the decision.

QPWB also requires the complete factual and legal basis for releasing, protecting, compromising, resolving, or otherwise limiting claims involving the liability insurer or carrier. This includes the carrier's potential liability or exposure; all settlement demands, offers, coverage analyses, reservations of rights, and bad-faith analyses; the consideration given for any release or protection; the valuation and allocation of settlement proceeds; the comparative-fault and causation analysis applied to the carrier and other released parties; and the reasons those parties were released, protected, or resolved while claims against QPWB were retained, assigned, carved out, or otherwise left exposed. QPWB requests all analyses, communications, negotiation records, drafts, and approval materials bearing on those matters.

Under Bankruptcy Rule 9019, a court may approve only a settlement that is fair and equitable to creditors and in the best interest of the estate. The Trustee bears the burden of demonstrating that standard. *In re Mickey Thompson Entertainment Group, Inc.*, 292 B.R. 415, 420 (9th Cir. BAP 2003). The business-judgment rule does not extend to decisions that lack a business purpose, are tainted by a conflict of interest, are so egregious as to amount to a no-win decision or result from an obvious and prolonged failure to exercise oversight or supervision. *Joy v. North*, 692 F.2d 880, 886 (2d Cir. 1982). The District of Nevada applied those principles in the bankruptcy context in *Buchanan v. Henderson*, 131 B.R. 859, 868 (D. Nev. 1990).

Judge Cox relied on these same authorities in her written decision involving GTG, warning that the lack of disclosure of conflicts and adverse interests also may incur consequences, including, but not limited to, the complete loss of the business-judgment presumption. *In re MP Reorganization*, Case No. 22-14422-nmc, at 39 (Bankr. D. Nev. May 20, 2024). Taken together, these authorities establish that the Trustee cannot invoke business-judgment deference where the decision-making was tainted by undisclosed conflicts and apparent self-dealing. QPWB is evaluating whether the Trustee's conduct makes him ineligible for business-judgment-rule protections.

While courts have discretion to afford meaningful deference to a trustee's business judgment in evaluating a proposed Rule 9019 settlement, (see e.g. *Mickey Thompson*, 292 B.R. at 420, that judgement does not eliminate the Trustee's statutory obligations to examine and object to improper claims when doing so serves a purpose, to preserve and maximize estate value, or to administer the estate free from disqualifying conflicts. Plan-granted authority does not authorize conflicted decision-making, excuse material nondisclosure, eliminate fiduciary duties, or insulate a settlement from scrutiny where the operative facts support a good-faith question whether estate value was sacrificed to benefit the Trustee, GTG, or a favored creditor at the expense of unsecured creditors.

**X. Demand**

In addition to the preservation obligations set forth in Section IX, QPWB demands that the Trustee and his counsel, within fourteen (14) days of this letter:

- Withdraw any and all pending demands against QPWB;
- Produce the engagement letter, compensation agreement, and any contingency terms governing the Trustee's counsel's representation of the estate in this matter, together with any Rule 2014 disclosures made to the Court regarding same;
- Produce all analyses, communications, and records concerning the decision not to pursue remittitur or appeal of the underlying verdict, and the decision to release the carrier and the physician-managers;
- Provide a full accounting of the $108,000,000 insurer settlement, including proposed allocation of damages resolved, and distribution to creditors and proposed compensation to the Trustee and his counsel from that recovery;
- Produce all materials sufficient to identify and substantiate the allocation of the Beazley settlement proceeds, including the amounts paid to Sanchez, GTG, the Trustee, every other professional, and each creditor; the estate claims assigned to Beazley; the consideration for and scope of the insurer release; and the projected or actual dividend to each unsecured creditor;
- Produce all communications, calendars, meeting invitations, term sheets, draft settlement agreements, draft plans, and attorney work product memorializing settlement discussions among GTG, Beazley, Sanchez, the Trustee, or their representatives before May 22, 2025, together with all materials reflecting the disclosure or nondisclosure of those matters in connection with GTG's employment application and the requested contingency-fee arrangement;

SGRO | ROGER
ATTORNEYS AT LAW

LAS VEGAS | RENO | MILAN

- Produce all analyses, declarations, correspondence, and agreements concerning the availability of Beazley funding for post-judgment motions and appeals, the decision to forgo remittitur or appeal, and any decision to stipulate to or preserve the asserted punitive-damages claim amount;
- Identify any other bankruptcy estates in which the Trustee and/or his counsel have employed a comparable litigation and settlement structure, including any other matter in which this Trustee and this counsel have had a prior contingency-fee relationship with one another, any other trustee for whom this counsel has served on a contingency-fee basis, and any other contingency-fee litigation this Trustee has pursued with different counsel;
- Confirm the Trustee and his counsel's intention to voluntarily disgorge compensation received in this matter;
- Produce all pre-petition communications within the Trustee's or his counsel's possession, custody, or control between any of the Trustee, his counsel, the liability carrier, the Debtor's principals, the physician-managers, and predecessor counsel.

**X-A. Notice Regarding Settlement Proceeds and Supplemental Production**

The preservation obligations in Section IX also apply to materials held by or for the Debtor, counsel, agents, consultants, vendors, insurers, litigation funders, former counsel, monitoring counsel, appellate counsel, and all other persons or entities that participated in or communicated about these matters. They include emails, letters, text messages, instant messages, messaging-platform communications, voicemail, attachments, metadata, personal accounts or devices used for relevant communications, cloud-storage locations, document-management systems, and backup media. Immediately suspend auto-delete settings and all ordinary-course deletion, overwriting, alteration, recycling, or disposition of responsive information. Preserve ESI in native format where applicable, together with associated metadata. This preservation demand does not seek disclosure of privileged or protected information; any withheld responsive material must nonetheless be preserved in native form and identified in an appropriate privilege log when required. Within five (5) business days, please confirm in writing that a litigation hold has been implemented and that reasonable steps have been taken to preserve the foregoing materials.

QPWB requests that no settlement proceeds or other funds traceable to the settlement be disbursed, transferred, distributed, encumbered, or otherwise dissipated pending completion of QPWB's investigation and reasonable advance notice to QPWB of any proposed disposition. If any distribution is asserted to be necessary or authorized, provide written notice sufficiently in advance to permit QPWB to evaluate the proposed disposition and, if appropriate, seek relief from the Bankruptcy Court or another court of competent jurisdiction.

SGRO | ROGER
ATTORNEYS AT LAW

LAS VEGAS | RENO | MILAN

Within five (5) business days of this letter, please confirm in writing: (a) whether settlement proceeds remain in the Trustee's possession or control and their present location; (b) whether any disbursement is proposed or scheduled; (c) the amount, recipient, and anticipated date of each proposed distribution; and (d) the process by which QPWB may obtain documents and information necessary to evaluate how the settlement was reached, including why QPWB was left exposed and whether it received notice and an opportunity to be heard.

In addition to the categories stated in Section X, please produce all communications and materials reflecting QPWB's notice, participation, service, or opportunity to be heard, including service lists, disclosure statements, plans, motions, applications, notices, hearing materials, orders, proofs of service, and communications concerning whether notice was required or provided.

The requested preservation and production also expressly include communications, contacts, negotiations, or understandings involving Sanchez's counsel and Dr. Asandra, Dr. Feliciano, other NuMale-affiliated defendants, their representatives, or intermediaries relating to settlement, testimony, litigation strategy, the verdict, post-trial proceedings, appeal, or potential claims against QPWB. This request encompasses materials bearing on whether any such communications created, reflected, or were affected by a conflict; whether they were timely disclosed; and whether they influenced decisions that left QPWB exposed.

The ESI preservation demand specifically includes audio and video recordings, spreadsheets, presentations, databases, mobile-device data, collaboration-platform data, audit logs, e-discovery-vendor materials, cloud-service-provider materials, backup media, and data created after the date of this letter that concerns the matters identified here.

QPWB further reserves the right to seek appropriate relief concerning professional retention, disinterestedness, adverse interests, disclosures, compensation, fee sharing, and the return or disgorgement of fees under applicable law, including 11 U.S.C. §§ 327, 328, 329, and 330; and to evaluate and assert, if supported by the evidence and permitted by law, claims including aiding and abetting, breach of fiduciary duty, fraud-based claims, civil conspiracy, and other available remedies.

**XI. Reservation of Rights**

Nothing in this letter waives, and QPWB expressly reserves, all rights, remedies, claims, and defenses available to it at law, in equity, in this Court, in any other court of competent jurisdiction (subject to any required Barton leave), before the Office of the United States Trustee, before any bar disciplinary authority, and before any law enforcement or regulatory body. QPWB's willingness to engage in dialogue regarding withdrawal of the claim should not be construed as a concession on any point addressed above or in QPWB's substantive defenses to the underlying claim, which are reserved and addressed separately.

SGRO | ROGER
ATTORNEYS AT LAW

LAS VEGAS | RENO | MILAN

You have an affirmative and continuing "duty to correct or withdraw litigation positions after it becomes obvious that they are meritless". *Franco v. Dow Chem. Co. (In re Girardi)*, 611 F.3d 1027, 1064 (2010)(citing *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998) (affirming § 1927 sanctions for the "willful continuation of a suit known to be meritless")).

We are available to discuss the foregoing. Absent a substantive response within the time specified, QPWB will proceed with the steps outlined in this letter, including seeking leave of the Bankruptcy Court to pursue the Trustee individually.

Respectfully,
**SGRO & ROGER**

*/s/ Anthony Sgro*
ANTHONY P. SGRO, ESQ.

# EXHIBIT 2

EXHIBIT 2

GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone (725) 777-3000
Facsimile (725) 777-3112
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>AFFECTS THIS DEBTOR, ☐<br><br>AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐<br><br>NUMEDICAL SC, ☐<br><br>NUMALE COLORADO SC, ☐<br><br>NUMALE FLORIDA TB PLLC, ☐<br><br>NUMALE NEBRASKA LLC, ☐<br><br>NUMALE NEW MEXICO SC, ☐<br><br>NUMALE ALL DEBTORS, ☒<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC,<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br><br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Date: September 24, 2025<br>Time: 9:30 a.m. |

# <u>JOINT PLAN OF REORGANIZATION</u>

## Table of Contents


**1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME ..... 1**

1.1. Definitions. ..... 1

1.2. Rules of Interpretation.. ..... 16

**2. TREATMENT OF UNCLASSIFIED CLAIMS ..... 16**

2.1. General. ..... 16

2.2. Treatment of Administrative Claims. ..... 17

2.3. Treatment of Priority Tax Claims. ..... 17

2.4. Requests for Payment. ..... 17

**3. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS ..... 17**

3.1. Determination of Claims and Equity Interests Within Classes. ..... 17

3.2. Summary of Classification. ..... 18

**4. TREATMENT OF CLASSES OF CLAIMS UNDER THIS PLAN ..... 19**

4.1. Class 1 – Newtek Secured Claim. ..... 19

4.2. Class 2 – Kalamata Claim. ..... 19

4.3. Class 3 – EBF Holdings Claim. ..... 19

4.4. Class 4 – Fox Funding Claim. ..... 20

4.5. Class 5 – Top Tier Claim. ..... 20

4.6. Class 6 – LCF Group Claim. ..... 20

4.7. Class 7 – Ford Motor Claim. ..... 21

4.8. Class 8 – Priority Unsecured Claims. ..... 21

4.9. Class 9 – Sanchez Claim. ..... 21

4.10. Class 10 – General Unsecured Claims. ..... 22

4.11. Class 11 – Intercompany Claims. ..... 22


Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

4.12. Class 12 – Subordinated Claims. ... 23
4.13. Class 13 – Equity Interests. ... 23

**5. MEANS FOR IMPLEMENTATION OF PLAN ... 23**
5.1. Overview. ... 23
5.2. General Settlement of Claims. ... 23
5.3. Substantive Consolidation for Plan Purposes.. ... 23
5.4. Beazley Settlement Payment on the Effective Date.. ... 24
5.5. Corporate Action. ... 24
5.6. Distributions ... 25
5.7. Effective Date Distributions. ... 25
5.8. Liquidation Trust. ... 25
5.9. Liquidation Trustee Compensation.. ... 27
5.10. Liquidation Trustee as Representative of the Debtors' Estates.. ... 28
5.11. Powers of the Liquidation Trustee. ... 28
5.12. Prosecution of the Quintairos Claims and Quintairos Non-Debtor Claims. ... 29
5.13. Liquidation Trust Beneficiaries.. ... 30
5.14. Distribution of Liquidation Trust Interests ... 30
5.15. Net Distributable Assets and Distribution Waterfall.. ... 30
5.16. Reorganization of Debtors and Vesting of Non-Litigation Assets. ... 31
5.17. 363 Sale. ... 32
5.18. Winddown of the Reorganized Debtors. ... 32
5.19. Notice of Effectiveness. ... 32
5.20. Final Decree. ... 32
5.21. No Corporate Action Required. ... 32

**6. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ... 32**
6.1. Executory Contracts. ... 32

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

6.2. Approval of Assumption and Assignment or Rejection. ... 32

6.3. Cure of Defaults. ... 33

6.4. Objection to Cure Amounts. ... 33

6.5. Confirmation Order. ... 33

6.6. Post-Petition Date Contracts and Leases. ... 34

6.7. Bar Date. ... 34

**7. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE ... 34**

7.1. Conditions to Confirmation. ... 34

7.2. Conditions to Effectiveness. ... 34

7.3. Waiver of Conditions. ... 34

**8. GLOBAL SETTLEMENT AGREEMENT; DISCHARGE; INJUNCTION ... 34**

8.1. General. ... 34

8.2. Global Settlement Agreement and Mutual Releases. ... 35

8.3. Limitation on Liability of the Liquidation Trustee. ... 35

8.4. Compromise and Settlement. ... 35

8.5. Discharge.. ... 35

8.6. Injunction. ... 36

8.7. Exculpation. ... 37

**9. RETENTION OF JURISDICTION ... 37**

9.1. Jurisdiction. ... 37

9.2. No Waiver. ... 39

**10. MODIFICATION AND AMENDMENT OF PLAN ... 39**

10.1. Modification and Amendment. ... 39

**11. ADDITIONAL CLAIM OBJECTION AND DISTRIBUTION INFORMATION ... 39**

11.1. Objections to Claims and Disallowed Claims. ... 39

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**11.1.1. Authority to File Objections to Claims.** .... 39

**11.1.2. Deadline for Filing Objections to Claims.** .... 40

**11.1.3. Resolution of Objections After Effective Date.** .... 40

**11.1.4. Late-Filed Claims.** .... 40

11.2. Delivery of Distributions; Undeliverable Distributions. .... 40

11.3. Fractional Payments and Application of Payments. .... 41

11.4. Set Offs. .... 42

11.5. Allocation of Distributions between Principal and Interest. .... 42

11.6. Withholding Taxes. .... 42

12. MISCELLANEOUS. .... 43

12.1. Effectuating Documents; Further Transactions; Timing. .... 43

12.2. Binding Effect. .... 43

12.3. Termination of Responsibilities of the Patient Care Ombudsman. .... 43

12.4. Exemption from Transfer Taxes. .... 43

12.5. Governing Law. .... 44

12.6. Modification of Payment Terms. .... 44

12.7. Notices. .... 44

12.8. Extension of Time. .... 45

12.9 Severability. .... 45

12.10. Revocation or Withdrawal of this Plan. .... 45

12.11. Post-Confirmation Reporting. .... 45

12.12. Cramdown. .... 45

12.13. Quarterly Fees. .... 45

12.14. Conflicts. .... 46

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Michael W. Carmel, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors") proposes this joint plan of reorganization (the "Plan") for the resolution of Debtors' outstanding Claims and Equity Interests (as these terms are defined herein). All Creditors, Equity Interest Holders (as both terms are defined herein), and other parties-in-interest should refer to the Disclosure Statement (as this term is defined herein) for a discussion of Debtors' history, assets, historical financial data, and for a summary and analysis of this Plan and certain related matters. All Holders of Claims against, and Equity Interests in, Debtors are encouraged to read this Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject this Plan.

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article 10 of this Plan, the Trustee expressly reserves the right to alter, amend, strike, withdraw, or modify this Plan one or more times before its substantial consummation.

## 1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**1.1. Definitions.** For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. As used in this Plan, the following terms in bold have the meanings set for the below.

**1.1.1. 363 Assets.** All of Debtors' Assets, solely excluding the Distributable Assets, the Debtors' 2019 Ford F150, the proceeds from the 363 Sale, and the Equity Interests in each of the Debtors.

**1.1.2. 363 Bid Procedures.** The procedures governing the sale process for the Section 363 Sale, which shall include the following terms: (i) approval of the 363 Stalking Horse and the 363 Stalking Horse Bid; (ii) designation of the 363 Stalking Horse as a qualified bidder; (iii) for any other bidder to qualify as a qualified bidder, the bidder must provide prior to the auction, among other things, (a) a bid of no less than $25,000 more than the Stalking Horse Bid in immediately available funds; (b) proof satisfactory to the Trustee of immediately available funds for the full amount of the bid; (c) a deposit of twenty percent (20%) of the bid; (d) the identity and corporate authority to submit the bid; and (e) an executed asset purchase agreement and redline against the asset purchase agreement executed by the 363 Stalking Horse; (iv) in the event there is more than one qualified bidder, the Trustee shall conduct an auction; (v) if the 363 Stalking Horse Bid is the only timely qualified bid, there will be no auction and the 363 Stalking Horse Bid will be identified as the prevailing bidder at the final sale hearing.

**1.1.3. 363 Motion.** The motion filed by the Trustee seeking approval of the 363 Bid Procedures and the sale of the 363 Assets to the 363 Stalking Horse pursuant to, among other

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

provisions, sections 363(b), (f), (m), and (n) of the Bankruptcy Code, or, in the event of multiple bidders, to the prevailing bidder after the completion of an auction.

**1.1.4. 363 Sale.** The sale effectuated in accordance with section 363 of the Bankruptcy Code for the sale of the 363 Assets free and clear of all Liens, Claims, and encumbrances in accordance with the 363 Bid Procedures, the 363 Motion, and the 363 Sale Order.

**1.1.5. 363 Sale Order.** The Final Order approving the 363 Sale to the prevailing bidder.

**1.1.6. 363 Stalking Horse.** Justin Pullian and/or his assignee.

**1.1.7. 363 Stalking Horse Bid.** In accordance with the terms of the Global Settlement Agreement and in exchange for the 363 Stalking Horse's New Value Contribution: (i) the 363 Stalking Horse shall have an Allowed Secured Claim in the amount of $300,000, which the 363 Stalking Horse is credit bidding at the 363 Sale; provided, however, in no event shall this Allowed Secured Claim be entitled to any Distribution in the Chapter 11 Cases or under this Plan beyond the right to credit bid; (ii) the 363 Stalking Horse may, at his election, credit bid the Allowed Pulliam Administrative Claim and/or the Allowed Pulliam Priority Claim; and (iii) the 363 Stalking Horse may, at his election, credit bid the Allowed Pulliam Unsecured Claim, which each dollar of the Allowed Pulliam Unsecured Claim credit bid shall be equal to $0.25 Cash.

**1.1.8. 363 Stalking Horse Bid Protections.** The Stalking Horse reimbursement of the documented reasonable, actual, out-of-pocket costs and expenses paid or incurred by the Stalking Horse Bidder directly, incident to, under, or in connection with the negotiation, execution, and performance as the Stalking Horse Bidder and the transactions contemplated thereunder (including travel expenses and reasonable fees and disbursements of counsel, accountants and financial advisors) in an amount not to exceed $30,000.

**1.1.9. Administrative Claim Bar Date.** The first (1st) Business Day occurring on or after the fifteenth (15th) day after the Effective Date.

**1.1.10. Administrative Claim.** A Claim for any cost or expense of administration of the Chapter 11 Cases allowed under Sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, but not limited to: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (ii) all Taxes arising between the Petition Date and the Effective Date, including those Taxes for which returns are not yet due; and (iii) all Professional Fees approved by the Bankruptcy Court pursuant to interim and final allowances. To the extent that a Claim is allowed pursuant to Sections 365(d)(3) and (d)(5) of the Bankruptcy Code, such Claim shall also be deemed an "Administrative Claim" under this paragraph.

**1.1.11. Affiliate.** This term has the meaning set forth in Section 101(2) of the Bankruptcy Code.

**1.1.12. Allowed Administrative Claim.** An Administrative Claim as to which no objection has been filed or, if an objection has been filed, has been resolved by the allowance of such Administrative Claim by a Final Order of the Bankruptcy Court; or which requires payment in the ordinary course and as to which there is no Final Order of the Bankruptcy Court in effect

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

which prohibits any such payment. For the avoidance of doubt, the unpaid salary and unreimbursed expenses incurred by Justin Pulliam between the Petition Date and the Effective Date, which unreimbursed expenses are documented, verified, and approved by the Trustee, in the Trustee's sole discretion, shall be an Allowed Administrative Claim on the Effective Date. For the avoidance of doubt, the Trustee and all parties in interest retain the right to object to all asserted Administrative Claims.

**1.1.13. Allowed Claim.** A Claim or any portion thereof that is not a Disputed Claim: (i) that is allowed pursuant: (w) to this Plan or Final Order of the Bankruptcy Court, including the Global Settlement Order, (x) to any stipulation executed prior to the Confirmation Date and approved by the Bankruptcy Court, (y) to any stipulation with Debtors or the Liquidation Trustee, as applicable, executed on or after the Confirmation Date and approved by the Bankruptcy Court, or (z) to any contract, instrument, or other agreement entered into or assumed in connection herewith; (ii) proof of which, requests for payment of which, or application for allowance of which, was filed or deemed to be filed on or before the Bar Date for filing proofs of Claim or requests for payment of Claims of such type against Debtors; or (iii) if no proof of Claim is filed, which has been or hereafter is listed by Debtors in the Schedules as liquidated in amount and not disputed or contingent; and in the case of (ii) or (iii), no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or the Bankruptcy Court has entered a Final Order Allowing all or a portion of such Claim.

**1.1.14. Allowed Equity Interest.** An Equity Interest as of the Record Date that: (i) is allowed pursuant to this Plan; (ii) is not disputed by the Trustee and/or any of the Debtors; or (iii) if a Disputed Equity Interest, which Equity Interest has been allowed in whole or in part by Final Order of the Bankruptcy Court.

**1.1.15. Asandra Claim.** The unsecured Claim asserted by Christopher Asandra against NuMale Corp in proof of claim number 17 filed in bankruptcy case number 25-10341-nmc, which Claim is in the amount of $417,705.75. On the Effective Date, the Asandra Claim shall be an Allowed General Unsecured Claim in the amount of $417,705.75.

**1.1.16. Assets.** All of the assets, property, interests, and effects, real and personal, tangible and intangible, wherever situated, of the Debtors, as they exist on the Effective Date.

**1.1.17. Avoidance Actions.** All avoidance, recovery, subordination, and other similar state and federal actions and causes of action preserved for the Estates under the Bankruptcy Code, including but not limited to those set forth in Sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

**1.1.18. Ballot.** The form of ballot or ballots that will be distributed with the Disclosure Statement to Holders of Claims and Equity Interests entitled to vote under this Plan in connection with the solicitation of acceptances of this Plan.

**1.1.19. Bankruptcy Code.** Title 11, United States Code, as applicable to the Chapter 11 Cases, as now in effect or hereafter amended, 11 U.S.C. §§ 101, *et seq.*

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.20. Bankruptcy Court.** The United States Bankruptcy Court for the District of Nevada having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the United States District Court for the District of Nevada, pursuant to 28 U.S.C. § 151.

**1.1.21. Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court as applicable to the Chapter 11 Cases, as now in effect or hereinafter amended.

**1.1.22. Bar Date.** The applicable date or dates established by the Bankruptcy Court, the Bankruptcy Code, and/or the Bankruptcy Rules for the filing of proofs of Claim for Creditors, excepting therefrom, Administrative Claims.

**1.1.23. Beazley.** Certain Underwriters at Lloyd's, London, Syndicates 623 and 2623.

**1.1.24. Beazley Policies.** Any insurance policies issued by Beazley to the Debtors, their Affiliates and/or for the benefit of any of their principal(s).

**1.1.25. Beazley Settlement Payment.** The payment made by Beazley to the Trustee on or before the Effective Date pursuant to the terms of the Global Settlement Agreement and Global Settlement Order.

**1.1.26. Business Day.** Any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.1.27. Cash.** The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, negotiable instruments, wire transfers of immediately available funds, or other cash equivalents.

**1.1.28. Causes of Action.** All actions, causes of action, claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims and any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases.

**1.1.29. Chapter 11 Cases.** The cases under Chapter 11 of the Bankruptcy Code involving Debtors, having case numbers 25-10341-nmc, 25-10342-nmc, 25-10343-nmc, 25-10344-nmc, 25-10345-nmc, 25-10346-nmc, and 25-10347-nmc, and being jointly administered under case number 25-10341-nmc, including all adversary proceedings pending in connection therewith.

**1.1.30. Chapter 11 Trustee.** Michael W. Carmel, in his capacity as the duly appointed and acting Chapter 11 trustee for the Debtors and their Estates.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.31. Claim.** Any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date or relating to any event that occurred before the Effective Date, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.1.32. Class.** A category of Holders of Claims or Equity Interests as classified in this Plan.

**1.1.33. Computation of Time.** In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**1.1.34. Confirmation.** The entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Cases.

**1.1.35. Confirmation Date.** The date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**1.1.36. Confirmation Hearing.** The duly-noticed initial hearing held by the Bankruptcy Court to confirm this Plan pursuant to Section 1128 of the Bankruptcy Code, and any subsequent hearing held by the Bankruptcy Court from time to time to which the initial hearing is adjourned without further notice other than the announcement of the adjourned dates at the Confirmation Hearing or by a subsequent order of the Bankruptcy Court.

**1.1.37. Confirmation Order.** The order entered by the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

**1.1.38. Contingent Claim.** A Claim which is contingent, unmatured, or unliquidated on or immediately before the Confirmation Date.

**1.1.39. Contingent Expense Reimbursement.** The reimbursement provided to Beazley from the Liquidation Trust in accordance with the terms of the Global Settlement Agreement and the Global Settlement Order for all reasonable and documented costs and expenses, if any, incurred by Beazley in connection with the Liquidation Trust's pursuit of Litigation Claims and all of Beazley's losses and reasonable and documented costs and expenses, if any, incurred in connection with claims or causes of action asserted by Brad Palubicki, Carlos Feliciano or any of their respective related persons against Beazley, which reimbursement is capped at $5,000,000.

**1.1.40. Creditor.** Any Holder of a Claim, whether or not such Claim is an Allowed Claim.

**1.1.41. Cure.** The Distribution on the Effective Date or as soon thereafter as practicable of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to Section 365(b) of the Bankruptcy Code, or with respect to any other debt instrument, in an amount equal to: (i) all unpaid monetary obligations due under such executory contract or

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

unexpired lease or required to pay to bring current the debt instrument and thereby reinstate the debt and return to the pre-default conditions to the extent such obligations are enforceable under the Bankruptcy Code or applicable non-bankruptcy law; and (ii) with respect to any debt instrument, if a claim arises from a Debtor's failure to perform any non-monetary obligation as set forth in Sections 1124(2)(C) and 1124(2)(D) of the Bankruptcy Code, payment of the dollar amount which compensates the Holder of such a claim for any actual pecuniary loss incurred by such Holder as a result of any such failure and the dollar amount of the Claim that is established by the Holder's sworn declaration and accompanying admissible evidence filed with the Bankruptcy Court and served upon the Trustee's counsel on or before such date ordered by the Bankruptcy Court for the filing of objections to the Plan.

**1.1.42. Debtors.** Collectively, NuMale Corp, Feliciano NuMale, NuMedical SC, NuMale Colorado, NuMale Nebraska, NuMale Florida, and NuMale New Mexico, the Debtors in the Chapter 11 Cases pursuant to Section 1108 of the Bankruptcy Code.

**1.1.43. Disclosure Statement.** The disclosure statement that relates to this Plan, as amended, supplemented, or modified from time to time, describing this Plan that is prepared and distributed in accordance with, among others, Sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.1.44. Disputed Claim or Disputed Equity Interest.** A Claim or Equity Interest or any portion thereof that is: (i) subject to timely objection interposed by the Trustee, Reorganized Debtors, Liquidation Trustee, or any party-in-interest entitled to file and prosecute such objection in the Chapter 11 Cases, if at such time such objection has not been withdrawn or determined by Final Order; (ii) a Claim that is listed by Debtors as disputed, unliquidated, or contingent in the Schedules, with respect to which no proof of claim has been timely filed; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to Section 502(c) of the Bankruptcy Code; or (iii) a claim held by any Holder against which the Trustee and/or the Estates has asserted, or expects in good faith to assert, any Avoidance Action, pending the resolution of such Avoidance Action by a Final Order. The term "Disputed," when used to modify a reference in this Plan to any Claim or Equity Interest (or Class of Claims or Equity Interest), shall mean a Claim or Equity Interest (or any Claim or Equity Interest in such Class) that is a Disputed Claim or Disputed Equity Interest. In the event there is a dispute as to classification or priority of a Claim or Equity Interest, it shall be considered a Disputed Claim or Disputed Equity Interest in its entirety. Until such time as a Contingent Claim becomes fixed and absolute, such Claim shall be treated as a Disputed Claim and not an Allowed Claim for purposes related to allocations and Distributions under this Plan.

**1.1.45. Disputed Claim Reserve.** A reserve established on the Effective Date to hold in a separate account Cash equal to the aggregate amount that would have been distributed on the Effective Date and in accordance with the terms of this Plan on account of a Disputed Claim. The Reorganized Debtors shall have sole control over the Disputed Claim Reserve. The Disputed Claim Reserve shall terminate upon all Disputed Claims being fully resolved and paid their Effective Date payments pursuant to the terms of the Plan to the extent they become Allowed Claims. Any remaining funds in the Disputed Claim Reserve shall be tendered to the Liquidation Trust upon all Disputed Claims being resolved and paid in accordance with the terms of this Plan.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.46. Distributable Assets.** Shall mean the following Assets distributable by the Trustee, Reorganized Debtors, or Liquidation Trustee, as applicable, to Allowed Claims in accordance with this Plan: (i) all Litigation Claims; (ii) all claims, rights, and recoveries available with respect to the Liability Insurance Policies; (iii) the Beazley Settlement Payment; (iv) the New Value Contribution; and (v) the proceeds from the 363 Sale.

**1.1.47. Distribution.** Any Distribution by the Trustee, Reorganized Debtors, or Liquidation Trust of Distributable Assets on account of Allowed Claims.

**1.1.48. EBF Holdings Claim.** The Claim asserted by EBF Holdings, LLC d/b/a/ Everest Business Funding against NuMale Florida, among others, in duplicate proof of claim numbers 18 and 19, which are duplicate claims filed in bankruptcy case number 25-10341-nmc, which asserted Claim is in the amount of $32,317.50.

**1.1.49. Effective Date.** The first (1st) Business Day on which all of the conditions set forth in Article 7 to this Plan have been satisfied or waived.

**1.1.50. Equity Interest.** An Equity Interest as the term is defined in Section 101(16) of the Bankruptcy Code and includes the shares and membership interests, as applicable, in the Debtors and any warrants, options, redemption rights, dividend rights, liquidating preferences, rights to purchase any such Equity Interest, or any other rights related thereto.

**1.1.51. Estates.** The Estates created for the Debtors in the Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code.

**1.1.52. Executory Contract.** A contract to which one or more of the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code and that has not been terminated or otherwise concluded on the Effective Date.

**1.1.53. Exhibits and Plan Schedules.** All exhibits and schedules attached to this Plan or filed in a Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein.

**1.1.54. Feliciano NuMale.** Feliciano NuMale Nevada PLLC, a Nevada professional limited liability company, the debtor in bankruptcy case number 25-10342-nmc pending in the Bankruptcy Court.

**1.1.55. Final Decree.** Pursuant to Rule 3022 of the Bankruptcy Rules, upon the administration of the Estates and effectuation of all Distributions under this Plan, the Final Order(s) of the Bankruptcy Court closing the Chapter 11 Cases.

**1.1.56. Final Order.** An order, judgment, or other decree of the Bankruptcy Court, or other court of competent jurisdiction, entered on the docket of such court, that has not been reversed, reconsidered, or stayed, that is in full force and effect, and as to which order or judgment: (i) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending; (ii) any appeal taken or petition for certiorari or request for reconsideration or further review or rehearing filed: (a) has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, or certiorari was sought; or (b) has not yet been resolved by such highest court,

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

but such order has not been stayed pending appeal, and otherwise consistent with the definition of "Final Order" pursuant to the laws of the venue in which such matter arose. Notwithstanding the foregoing, the Confirmation Order herein shall become a Final Order upon the occurrence of both: (i) the Global Settlement Agreement becoming effective in accordance with its terms; and (ii) the first (1st) Business Day that is fourteen (14) days after the entry of such Confirmation Order unless any appeal of such Confirmation Order was accompanied by a stay pending appeal.

**1.1.57. Ford Motor Claim.** The Secured Claim asserted by Ford Motor Credit Company, LLC against NuMale Corp in proof of claim number 1 filed in bankruptcy case number 25-10341-nmc, which asserted Claim is in the amount of $21,593.98.

**1.1.58. Fox Funding Claim.** The Claim asserted by Fox Funding Group, LLC against NuMale Corp, NuMedical SC, NuMale Colorado, NuMale Florida, NuMale Nebraska, and NuMale New Mexico, among others, in duplicate proof of claim number 20 filed in bankruptcy case number 25-10341-nmc and proof of claim number 1 filed in bankruptcy case number 25-10346, which asserted Claim is in the amount of $78,225.00.

**1.1.59. General Unsecured Claim.** A Claim that is not secured by a Lien or other charge against or interest in property in which the Estates have an interest and is not (i) an Administrative Claim, (ii) a Priority Tax Claim, or (iii) a Priority Unsecured Claim; (iv) the Sanchez Claim; (v) an Intercompany Claim; or (vi) a Subordinated Claim. General Unsecured Claims shall include all Claims arising under Section 502(g) of the Bankruptcy Code, and for the avoidance of doubt, the Asandra Claim and the Pulliam Claim.

**1.1.60. Global Settlement Agreement.** The Settlement, Release, and Policy Buyback Agreement by and between Sanchez, Beazley, the Trustee, NuMale Corp, NuMale New Mexico, NuMale Albuquerque LLC (d/b/a NuMale Medical Center), Christopher Asandra, Justin Pulliam, NMC Illinois, LLC, Nevada NuMale LLC, NuFemme Milwaukee, LLC, NuMale Green Bay, LLC, SC, NuMale Wisconsin GB, SC, NuMale Omaha, LLC, NuMale Tampa, LLC, NuMale Charlotte, LLC, and NuMale Denver, LLC, filed in the Chapter 11 Cases on 25-10341-nmc, at ECF No. [*] in bankruptcy case number 25-10341-nmc, and approved by the Global Settlement Order. The Global Settlement Agreement is attached to this Plan as **Exhibit 1** and fully incorporated herein.

**1.1.61. Global Settlement Order.** The *Order Approving Motion Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 363 and 105 to Authorize and Approve Global Settlement and Associated Releases and Authorize Insurance Policies Buyback* entered by the Bankruptcy Court approving the Global Settlement Agreement in the Chapter 11 Cases pursuant to Bankruptcy Rule 9019, entered in bankruptcy case number 25-10341-nmc.

**1.1.62. Governmental Unit.** Governmental Unit has the meaning as defined in section 101(27) of the Bankruptcy Code.

**1.1.63. Howard and Howard Litigation.** The litigation case styled *NuMale Corporation v. Howard & Howard et. al.*, pending in the Eighth Judicial District Court, Clark County, Nevada, as case number A-25-970072-C.

**1.1.64. Holder.** A Person holding an Equity Interest or Claim.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.65. Hassoun Claim.** The judgment against Basel Said Hassoun arising from an arbitration award entered by Arbitrator Ralph C. Anzivino against Dr. Hassoun, confirmed on or about August 25, 2022, by the District Court of Oklahoma County, State of Oklahoma, Case No. CJ-2020-206, as confirmed by the Court of Civil Appeals of the State of Oklahoma in Case No. 120,720 on or about June 21, 2024.

**1.1.66. Impaired.** Impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.1.67. Initial Distribution.** The Distribution tendered by the Trustee and/or the Reorganized Debtors, as applicable, to the Holders of the Allowed Sanchez Claim and Allowed General Unsecured Claims. The Initial Distribution shall be calculated as the Beazley Settlement Payment proceeds net of Allowed Administrative Claims that have not been deferred to payment from the Liquidation Trust, Allowed unclassified Claims, Allowed Secured Claims in Classes 1 through 7, Allowed Priority Unsecured Claims, Allowed Cure payments set forth on Schedule 6.3 of this Plan, and the Liquidation Trust Reserve.

**1.1.68. Insider.** This term has the meaning ascribed to it in section 101(31) of the Bankruptcy Code.

**1.1.69. Intercompany Claims.** Claims held by one the Debtors against one or more of the other Debtors.

**1.1.70. Kalamata Claim.** The Claim asserted by Kalamata Capital Group, LLC against each of the Debtors, among others, in proof of claim number 9 filed in bankruptcy case number 25-10341-nmc, which asserted Claim is in the amount of $86,628.41.

**1.1.71. LCF Group Claim.** The Claim asserted by The LCF Group, Inc. against NuMale New Mexico, Feliciano NuMale, NuMale Corp, NuMale Florida, among others, in duplicate proof of claim number 22 filed in bankruptcy case number 25-10341-nmc, and proof of claim number 1 filed in bankruptcy case number 25-10347-nmc, which asserted Claim is in the amount of $113,378.47; proof of claim number 3 filed in bankruptcy case number 25-10342, which asserted Claim is in the amount of $149,466.02; and late filed claim number 42 in bankruptcy case number 25-10341-nmc, which is in the amount of $242,599.07 and is based on an asserted guarantor obligation.

**1.1.72. Liability Insurance Policies.** All insurance policies and insurance obligations maintained by the Debtors as of the Petition Date and/or the Effective Date, including tail coverage after the termination of any such policies, and the proceeds thereof, including without limitation, insurance policies issued by or involving Arch Insurance Company and Chubb, including without limitation Policy Number J06578044 and Policy Number SPL0066696-03. For the avoidance of doubt, the term Liability Insurance Policies expressly excludes (x) Beazley and the Beazley Policies, and (y) any other policy obligations released pursuant to the Global Settlement Agreement.

**1.1.73. Lien.** This term shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.74. Liquidation Trust.** That certain grantor trust created for the benefit of the Holders of Administrative Claims that have deferred payment, the Allowed Sanchez Claim, Allowed General Unsecured Claims, the Contingent Expense Reimbursement, and Allowed Subordinated Claims, and as further described in Section 5 of this Plan.

**1.1.75. Liquidation Trust Agreement.** The trust agreement filed in the Plan Supplement that establishes the Liquidation Trust and governs the powers, duties, and responsibilities of the Liquidation Trustee.

**1.1.76. Liquidation Trust Assets.** The Liquidation Trust Reserve, plus all Distributable Assets remaining after (i) payment of the Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the Disputed Claim Reserve.

**1.1.77. Liquidation Trust Beneficiaries.** The Holders of Liquidation Trust Interests.

**1.1.78. Liquidation Trust Expenses.** The costs, expenses, or other obligations incurred, payable, or owed by the Liquidation Trust from and after the Effective Date, including the reasonable fees, costs, and expenses of the Liquidation Trustee and his or her attorneys and other professionals, relating to, among other things, the implementation of the Plan and the administration of the Liquidation Trust.

**1.1.79. Liquidation Trust Interests.** Collectively, the beneficial interests in the Liquidation Trust distributed to the Holders of the: (i) Allowed Administrative Claims that have agreed in writing to defer payment or partial payment of such Allowed Claims; (ii) Contingent Expense Reimbursement; (iii) Allowed Sanchez Claim; (iv) Allowed General Unsecured Claims; (v) Allowed Subordinated Claims; and (vi) Beazley solely with respect to the Contingent Expense Reimbursement.

**1.1.80. Liquidation Trust Reserve.** The sum of $150,000.00 paid on the Effective Date to the Liquidation Trust from the Beazley Settlement Payment.

**1.1.81. Liquidation Trustee.** Michael W. Carmel.

**1.1.82. Litigation Claims.** All other rights, claims, torts, liens, liabilities, obligations, actions, Causes of Action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that the Debtors or the Estates may have against any Person, including but not limited to, those listed on Schedule 1.1.82 hereto. Failure to list a Litigation Claim on Schedule 1.1.82 shall not constitute a waiver or release by the Debtors and/or the Estates of such Litigation Claim. Each of the Litigation Claims is preserved for the benefit of the Liquidation Trust and the Liquidation Trust Beneficiaries. For the avoidance of doubt, the term Litigation Claims does not include (i) any Causes of Action held by the Debtors or the Estates against Beazley or Sanchez, all of which have been released pursuant to the Global Settlement Agreement; and (ii) the Palubicki and Feliciano Claims, which were transferred to Beazley pursuant to the Global Settlement Agreement.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.83. Michael E. Sanchez Qualified Settlement Fund.** The Qualified Settlement Fund ("QSF") established pursuant to Section 468B of the Internal Regulation Code and Treasury Regulations promulgated thereunder, consisting of an escrow account with Flatirons Bank, which serves as Fund Administrator and Escrow Agent and shall administer the Fund in accordance with the Justice Escrow Account Agreement. The Michael E. Sanchez QSF has been assigned a W-9 Taxpayer Identification Number and certification. All payments due to Sanchez as a Creditor under the Plan of Reorganization or Global Settlement Agreement shall be made payable to the Michael E. Sanchez QSF in order to fully preserve his rights and protections as a bodily injury claimant under the Internal Revenue Code.

**1.1.84. Net Distributable Trust Assets.** The Liquidation Trust Assets from and after the Effective Date available to the Liquidation Trust Beneficiaries after payment of all Liquidation Trust Expenses.

**1.1.85. Nevada Secretary of State.** The Secretary of State of the State of Nevada.

**1.1.86. Newtek Claim.** The Claim asserted by Newtek Bank N.A. aka Newtek Small Business Finance, LLC against NuMale Corp, among others, in proof of claim number 24, filed in bankruptcy case number 25-10341-nmc, which asserted Claim is in the amount of $5,033,301.46.

**1.1.87. Newtek Secured Claim.** The Secured Claim portion of the Newtek Claim in the amount of $1,000,000 pursuant to the terms of the Newtek Settlement.

**1.1.88. Newtek Settlement.** The settlement by and between the Trustee, Debtors, Justin Pulliam, and Irma L. Pulliam, whereby the Newtek Claim shall be an Allowed Secured Claim against the Debtors in the amount of $1,000,000; the balance of the Allowed Newtek Claim is a General Unsecured Claim; Justin Pulliam and Irma L. Pulliam shall be released from all liability and liens in connection with the Newtek Claim; and Newtek Bank N.A. shall retain all rights to pursue recovery of the balance of the Newtek Claim from all obligors and guarantors that are not party to the Newtek Settlement. The Newtek Settlement is memorialized in the Settlement and Release Agreement, which shall be approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

**1.1.89. New Value Contribution.** The NuMale Settling Defendants': (i) contribution to the Debtors and the Estates of each and every claim they could conceivably assert against Beazley, which claims were settled and released by the Global Settlement Agreement and Global Settlement Order; (ii) contribution to the Estates of each and every claim they could conceivably assert under any Liability Insurance Policies held by any of the Debtors (solely excluding the claims each released against Beazley and Sanchez in the Global Settlement Agreement); (iii) the agreement regarding the prosecution of the Quintairos Non-Debtor Claims as set forth in Section 5.12 of this Plan; (iv) the voluntary subordination of the NuMale Albuquerque Claim; and (v) the voluntary cancellation and release of the Intercompany Claims.

**1.1.90. NuMale Albuquerque Claim.** The General Unsecured Claim asserted by NuMale Albuquerque LLC against NuMale Corp in an amount not to exceed $1,025,000, inclusive of the scheduled claim in the amount of $1,080,292.91.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.91. NuMale Corp.** NuMale Corporation, a Nevada corporation, the debtor in bankruptcy case number 25-10341-nmc pending in the Bankruptcy Court.

**1.1.92. NuMedical SC.** NuMedical SC, a Wisconsin service corporation, the debtor in bankruptcy case number 25-10343-nmc pending in the Bankruptcy Court.

**1.1.93. NuMale Colorado.** NuMale Colorado SC, a Colorado service corporation, the debtor in bankruptcy case number 25-10344-nmc pending in the Bankruptcy Court.

**1.1.94. NuMale Florida.** NuMale Florida TB PLLC, a Florida professional limited liability company, the debtor in bankruptcy case number 25-10345-nmc pending in the Bankruptcy Court.

**1.1.95. NuMale Nebraska.** NuMale Nebraska LLC, a Nebraska limited liability company, the debtor in bankruptcy case number 25-10346-nmc pending in the Bankruptcy Court.

**1.1.96. NuMale New Mexico SC.** NuMale New Mexico SC, a Wisconsin service corporation, the debtor in bankruptcy case number 25-10347-nmc pending in the Bankruptcy Court.

**1.1.97. NuMale Settling Defendants.** Collectively, Justin Pulliam, Christopher Asandra, NuMale Corp, NuMale New Mexico SC, and NuMale Albuquerque LLC.

**1.1.98. N2 Litigation Claim.** All claims, causes of action, or rights held by the Debtors' prior to the Petition Date solely against The N2 Company and its digital services division, Hyport Digital.

**1.1.99. Palubicki and Feliciano Claims.** All Claims, Causes of Action or rights held by the Debtors or their Estates or their respective direct and indirect subsidiaries, whether arising prior to or after the Petition Date, against Brad Palubicki, Eva Gabriela Farmer de la Torre, Carlos Feliciano, any entities they respectively own or control and any of their respective subsequent transferees, including the claims and causes of action asserted in the adversary proceeding number 25-01155-nmc and the Palubicki Whistleblower Claims (as defined in the Global Settlement Agreement).

**1.1.100. Person.** An individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization or government, governmental unit, or any subdivision thereof, or any other entity.

**1.1.101. Petition Date.** January 22, 2025, the date on which voluntary Chapter 11 petition was filed by Debtors, thereby commencing the Chapter 11 Cases.

**1.1.102. Plan.** This plan of reorganization, either in its present form or as it may be amended, supplemented, or modified from time to time, including all exhibits and schedules annexed hereto or referenced herein.

**1.1.103. Plan Supplement.** Collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments

referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time, which shall be filed with the Bankruptcy Court. The Trustee shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date. For the avoidance of doubt the Plan Supplement and any amendments thereto shall comply with any consent rights set forth in the Plan or the Global Settlement Agreement, as applicable.

**1.1.104. Priority Tax Claims.** Any and all governmental unit Claims accorded priority in right of payment under Section 507(a)(8) of the Bankruptcy Code.

**1.1.105. Priority Unsecured Claims.** Any and all Claims accorded priority in right of payment under Section 507(a) of the Bankruptcy Code, except under Section 507(a)(2) and Section 507(a)(3).

**1.1.106. Professional Fees.** The Administrative Claims for compensation and reimbursement submitted pursuant to Sections 328, 330, 331, or 503(b) of the Bankruptcy Code of Persons: (i) employed pursuant to an order of the Bankruptcy Court under Sections 327, 328 or 1102 of the Bankruptcy Code; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Sections 363(b) or 503(b) of the Bankruptcy Code or by other Final Order.

**1.1.107. Proof of Claim.** A proof of Claim filed by a Creditor in accordance with Section 501 of the Bankruptcy Code and Bankruptcy Rule 3001.

**1.1.108. Pro Rata.** The ratio of an Allowed Claim in a particular class to the aggregate amount of all such Allowed Claims in any such Class.

**1.1.109. Pulliam Administrative Claim.** The Administrative Claim of Justin Pulliam arising from post-petition wages and unreimbursed expenses incurred in the ordinary course of the Debtors' operations post-petition, which expenses shall be established through receipts and other documentation acceptable to the Trustee in his sole reasonable discretion, which amount shall not exceed $300,000.00. The wages and expense reimbursement approved by the Trustee shall be an Allowed Administrative Claim.

**1.1.110. Pulliam Claims.** Together, the Pulliam Administrative Claim, the Pulliam Priority Claim, and the Pulliam Unsecured Claim.

**1.1.111. Pulliam Priority Claim.** The Claim asserted by Justin Pulliam for unpaid pre-petition wages, which Claim shall be Allowed in the statutory amount of $15,150.00.

**1.1.112. Pulliam Unsecured Claim.** The Unsecured Claim portion of the Claim asserted by Justin Pulliam against NuMale New Mexico SC in proof of claim number 4 filed in bankruptcy case number 25-10347-nmc, which amount is subject to determination by agreement of the Trustee and Justin Pulliam upon provision of satisfactory evidence and/or Final Order of the Bankruptcy Court.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.113. Quintairos Non-Debtor Claims.** All rights, claims, and causes of action against Quintairos, Prieto, Wood & Boyer, P.A. and its attorneys, employees, Insiders, and Affiliates held or controlled by the non-Debtor NuMale Settling Defendants.

**1.1.114. Quintairos Claims.** All of the Debtors and the Estates' Causes of Action against Quintairos, Prieto, Wood & Boyer, P.A. and its attorneys, employees, Insiders, and Affiliates.

**1.1.115. Record Date.** The Confirmation Date for the purpose of determining the Holders of Equity Interests.

**1.1.116. Rejection Damages Claim.** A Claim arising from any Debtor's rejection of an Executory Contract or Unexpired Lease.

**1.1.117. Rejection Damages Claim Bar Date.** The end of the first (1st) Business Day occurring on or after the fifteenth (15th) day after the Effective Date.

**1.1.118. Reinstated or Reinstatement.** These terms shall mean: (i) leaving unaltered the legal, equitable, and contractual rights of the Holder of a Claim so as to leave such Claim Unimpaired in accordance with Section 1124 of the Bankruptcy Code; or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (a) Curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim as such maturity existed before such default; (c) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants, or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required in order to accomplish Reinstatement.

**1.1.119. Reorganized Debtors.** This term means collectively, Reorganized NuMale Corp, Reorganized Felicia NuMale, Reorganized NuMedical SC, Reorganized NuMale Colorado, Reorganized NuMale Florida, Reorganized NuMale Nebraska, and Reorganized NuMale New Mexico. As set forth more fully in Section 5.16 of the Plan, Michael W. Carmel, the Trustee, shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law and shall be authorized to exercise all of the rights and powers of as managers or directors, as applicable, as provided by the Plan, including effectuation of the 363 Sale.

**1.1.120. Reorganized Feliciano NuMale.** This term means Feliciano NuMale as reorganized pursuant to this Plan on and after the Effective Date.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.121. Reorganized NuMale Colorado.** This term means NuMale Colorado as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.122. Reorganized NuMale Corp.** This terms means NuMale Corp as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.123. Reorganized NuMale Florida.** This term means NuMale Floria as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.124. Reorganized NuMale Nebraska.** This term means NuMale Nebraska as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.125. Reorganized NuMale New Mexico.** This term means NuMale New Mexico as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.126. Reorganized NuMedical SC.** This term means NuMedical SC as reorganized pursuant to this Plan on and after the Effective Date.

**1.1.127. Sanchez.** Michael E. Sanchez.

**1.1.128. Sanchez Claim.** The unsecured Claim held by Sanchez as asserted in proof of claim number 7 filed in bankruptcy case number 25-10341-nmc and proof of claim number 3 filed in bankruptcy case number 25-10347-nmc, in the asserted amount of $579,442,390.01 as of the Petition Date, which Claim is Allowed in the amount of $410,000,000 pursuant to the terms of the Global Settlement Agreement.

**1.1.129. Secured Claim.** A Claim that is secured by a Lien against property of the Estates to the extent of the value of any interest in such property of the Estates securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Section 553 of the Bankruptcy Code, in either case as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.1.130. Schedules.** The schedules of assets and liabilities and any amendments thereto filed by the Debtors with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code.

**1.1.131. Subordinated Claims.** Unless determined by Final Order to be entitled to treatment in Class 10, the following Claims that are voluntarily equitably subordinated pursuant to the terms of the Global Settlement Agreement and/or equitably subordinated pursuant to section 510(c) of the Bankruptcy Code: (i) the NuMale Albuquerque Claim, and (ii) all General Unsecured Claims asserted by Brad Palubicki; Carlos Feliciano; NMC Illinois, LLC; Nevada NuMale, LLC; NuMale Chicago LLC, and every other Insider and Affiliate of any of the Debtors, solely excluding the Asandra Claim and the Pulliam Claims. For the avoidance of doubt, the Trustee has sought the disallowance and equitable subordination of the Claims asserted by Brad Palubicki and Carlos Feliciano in a pending Adversary Proceeding, thereby rendering them Disputed Claims that will only qualify as Subordinated Claims should the Disputed Claims be Allowed by Final Order of the Bankruptcy Court.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**1.1.132. Tax Code.** The Internal Revenue Code of 1986, as amended.

**1.1.133. Taxes.** All income, franchise, excise, sales, use, employment, withholding, property, payroll, or other taxes, assessments of governmental charges, together with any interest penalties, additions to tax, fines, and similar amounts relating thereto, whether or not yet assessed or imposed, collected by, or due to any federal, state, local or foreign governmental authority.

**1.1.134. Top Tier Claim.** The Claim asserted by Proventure d/b/a Top Tier Capital against Feliciano NuMale, NuMale New Mexico SC, and NuMale Nebraska, among others, in duplicate proof of claim number 21 filed in bankruptcy case number 25-10341-nmc and proof of claim numbers 1 and 2 filed in bankruptcy case number 25-10342, which asserted Claim is in the amount of $263,942.88.

**1.1.135. Trustee.** Michael W. Carmel, the Chapter 11 Trustee in the Chapter 11 Cases.

**1.1.136. Trustee Fees.** The fees and costs awarded to the Trustee pursuant to Section 326 of the Bankruptcy Code.

**1.1.137. Unexpired Lease.** A lease of real property or personal property to which the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code**.**

**1.1.138. Unimpaired.** This term has the meaning as set forth in Section 1124 of the Bankruptcy Code and that has not been terminated or otherwise concluded on the Effective Date.

**1.1.139. Unsecured Claim.** Any Claim that is not a Secured Claim, a Priority Tax Claim, a Priority Unsecured Claim, or an Administrative Claim.

**1.2. Rules of Interpretation.** For purposes of this Plan only: (i) any reference in this Plan to a contract, instrument, release, or other agreement or documents being in particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (iv) the words "herein," "hereof," "hereto," and "hereunder" refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (vi) the rules of construction and definitions set forth in Sections 101 and 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply unless otherwise expressly provided.

## 2. TREATMENT OF UNCLASSIFIED CLAIMS

**2.1. General.** Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Claims against Debtors set forth in this Article 2 are not classified within any Class. The Holders of such

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Claims are not entitled to vote on this Plan. The treatment of the Claims set forth in this Article 2 is consistent with the requirements of Section 1129(a)(9) of the Bankruptcy Code.

**2.2. Treatment of Administrative Claims.** To the extent an Allowed Administrative Claim has not been paid prior to the Effective Date in accordance with an order of the Bankruptcy Court, each Allowed Administrative Claim shall be paid upon the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable, (iii) the first (1st) Business Day that is fourteen (14) days after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Claim and the Trustee, Reorganized Debtors, or Liquidation Trustee, as applicable, and the Holder of the Administrative Claim shall agree upon.

**2.3. Treatment of Priority Tax Claims.** Each Allowed Priority Tax Claim, if any, shall be paid in full in Cash by the Trustee or Reorganized Debtors, as applicable, on the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable, (iii) the first (1st) Business Day that is fourteen (14) days after such Priority Tax Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Priority Tax Claim and the Trustee, Reorganized Debtors, or Liquidation Trustee, as applicable, shall agree. Until the Allowed Priority Tax Claim is paid in full, the unpaid balance shall accrue statutory interest from the Effective Date fixed at the applicable federal or state statutory rate in effect with respect to such Priority Tax Claim on the Petition Date.

**2.4. Requests for Payment.** All requests for allowance and payment of Administrative Claims against the Debtors and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date or the Holders thereof shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, and/or the Liquidation Trust. All Professional Fees applications must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees. Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no professional shall be required to file fee applications with the Bankruptcy Court and the Reorganized Debtors or Liquidation Trustee, as applicable, may pay all professionals in the ordinary course for fees and expenses incurred after the Effective Date.

The failure to file a request for payment of an Administrative Claim on or before the Administrative Claim Bar Date shall result in such Administrative Claim being forever disallowed, barred, and expunged in its entirety without further notice to any party, or action, approval, or order of the Bankruptcy Court. For the avoidance of doubt, this includes any trade accounts payable, operating expenses, deposit reimbursements, accrued expenses, and other liabilities of the Debtors arising in the ordinary course of business after the Petition Date.

## 3. DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

**3.1. Determination of Claims and Equity Interests Within Classes.** Pursuant to this Plan and in accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors and the Holders of Equity Interests (except unclassified Claims) are placed in the Classes described below. A Claim or Equity Interest is classified in a particular Class only to the extent that the

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest is also classified in a particular Class only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. With respect to Classes of Claims described as Unimpaired under this Plan, except as otherwise provided under this Plan, nothing shall affect the rights and legal and equitable defenses of the Debtors, the Liquidation Trustee, and the Reorganized Debtors regarding such Claims, including but not limited to, all rights in respect of legal and equitable defenses to setoff or recoupment against such Claims.

**3.2. Summary of Classification.**

| **Class** | **Description** | **Treatment** | **Estimated Asserted Claim Amounts** |
|---|---|---|---|
| Class 1 | Newtek Secured Claim | Unimpaired;<br>No solicitation required. | $1,000,000.00 |
| Class 2 | Kalamata Claim | Unimpaired.<br>No solicitation required. | $86,628.42<br>(amount is disputed) |
| Class 3 | EBF Holdings Claim | Unimpaired.<br>No solicitation required. | $32,317.50<br>(amount is disputed) |
| Class 4 | Fox Funding Claim | Unimpaired.<br>No solicitation required. | $78,225.00<br>(amount is disputed) |
| Class 5 | Top Tier Claim | Unimpaired.<br>No solicitation required. | $263,942.88<br>(amount is disputed) |
| Class 6 | LCF Group Claim | Unimpaired.<br>No solicitation required. | $505,443.56<br>(amount is disputed) |
| Class 7 | Ford Motor Claim | Unimpaired.<br>No solicitation required. | $21,593.98 |
| Class 8 | Priority Unsecured Claims | Unimpaired.<br>No solicitation required. | $15,150.00 |
| Class 9 | Sanchez Claim | Impaired.<br>Solicitation required. | Allowed in the amount of $410,000,000.00 |
| Class 10 | General Unsecured Claims | Impaired.<br>Solicitation required. | $8,907,336.79<br>(amounts are disputed) |
| Class 11 | Intercompany Claims | Impaired.<br>Solicitation required. | $3,771,462.03<br>(amounts are disputed) |
| Class 12 | Subordinated Claims | Impaired.<br>Solicitation required. | $4,694,795.10<br>(amounts are disputed) |

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

| | | | |
|---|---|---|---|
| Class 13 | Equity Interests | Impaired; deemed rejected. No solicitation required. | N/A |

## 4. TREATMENT OF CLASSES OF CLAIMS UNDER THIS PLAN

**4.1. Class 1 – Newtek Secured Claim.** Class 1 consists of the Newtek Claim. The Allowed Claim in Class 1 shall be treated as follows:

In accordance with the terms of the Newtek Settlement, in full and final satisfaction of the Debtors, Justin Pulliam, and Irma Pulliam's obligations with respect to the Newtek Secured Claim, Newtek shall be paid $1,000,000 in Cash by the Reorganized Debtors upon the Effective Date or as soon thereafter as practicable.

The Creditor in Class 1 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.2. Class 2 – Kalamata Claim.** Class 2 consists of the Kalamata Claim. The Allowed Claim in Class 2 shall be treated as follows:

The Trustee disputes the validity of the Kalamata Claim and will be seeking disallowance of the Kalamata Claim. Should the Bankruptcy Court determine that any portion of the Kalamata Claim is an Allowed Secured Claim, then the Allowed Secured Claim portion of the Kalamata Claim shall be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) such date as may be fixed by the Bankruptcy Court; (ii) the first (1st) Business Day following the fourteenth (14th) day after such Secured Claim is Allowed; and (iii) such date as agreed upon by the Holder of such Secured Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors. Should the Bankruptcy Court determine that any portion of the Kalamata Claim is an Allowed Unsecured Claim, such Allowed Unsecured Claim portion of the Kalamata Claim shall be treated as an Allowed General Unsecured Claim in Class 10.

The asserted Secured Claim in Class 2 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.3. Class 3 – EBF Holdings Claim.** Class 3 consists of the EBF Holdings Claim. The Allowed Claim in Class 3 shall be treated as follows:

The Trustee disputes the validity of the EBF Holdings Claim and will be seeking disallowance of the EBF Holdings Claim. Should the Bankruptcy Court determine that any portion of the EBF Holdings Claim is an Allowed Secured Claim, then the Allowed Secured Claim portion of the EBF Holdings Claim shall be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) such date as may be fixed by the Bankruptcy Court; (ii) the first (1st) Business Day following the fourteenth (14th) day after such Secured Claim is Allowed; and (iii) such date as agreed upon by the Holder of such Secured Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors. Should the Bankruptcy Court determine that any portion of the EBF Holdings Claim is an Allowed

Unsecured Claim, such Allowed Unsecured Claim portion of the EBF Holdings Claim shall be treated as an Allowed General Unsecured Claim in Class 10.

The asserted Secured Claim in Class 3 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.4. Class 4 – Fox Funding Claim.** Class 4 consists of the Fox Funding Claim. The Allowed Claim in Class 4 shall be treated as follows:

The Trustee disputes the validity of the Fox Funding Claim and will be seeking disallowance of the Fox Funding Claim. Should the Bankruptcy Court determine that any portion of the Fox Funding Claim is an Allowed Secured Claim, then the Allowed Secured Claim portion of the Fox Funding Claim shall be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) such date as may be fixed by the Bankruptcy Court; (ii) the first (1st) Business Day following the fourteenth (14th) day after such Secured Claim is Allowed; and (iii) such date as agreed upon by the Holder of such Secured Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors. Should the Bankruptcy Court determine that any portion of the Fox Funding Claim is an Allowed Unsecured Claim, such Allowed Unsecured Claim portion of the Fox Funding Claim shall be treated as an Allowed General Unsecured Claim in Class 10.

The asserted Secured Claim in Class 4 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.5. Class 5 – Top Tier Claim.** Class 5 consists of the Top Tier Claim. The Allowed Claim in Class 5 shall be treated as follows:

The Trustee disputes the validity of the Top Tier Claim and will be seeking disallowance of the Top Tier Claim. Should the Bankruptcy Court determine that any portion of the Top Tier Claim is an Allowed Secured Claim, then the Allowed Secured Claim portion of the Fox Funding Claim shall be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) such date as may be fixed by the Bankruptcy Court; (ii) the first (1st) Business Day following the fourteenth (14th) day after such Secured Claim is Allowed; and (iii) such date as agreed upon by the Holder of such Secured Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors. Should the Bankruptcy Court determine that any portion of the Top Tier Claim is an Allowed Unsecured Claim, such Allowed Unsecured Claim portion of the Top Tier Claim shall be treated as an Allowed General Unsecured Claim in Class 10.

The asserted Secured Claim in Class 5 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.6. Class 6 – LCF Group Claim.** Class 6 consists of the LCF Group Claim. The Allowed Claim in Class 6 shall be treated as follows:

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

The Trustee disputes the validity of the LCF Group Claim and will be seeking disallowance of the LCF Group Claim. Should the Bankruptcy Court determine that any portion of the LCF Group Claim is an Allowed Secured Claim, then the Allowed Secured Claim portion of the LCF Group Claim shall be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) such date as may be fixed by the Bankruptcy Court; (ii) the first (1st) Business Day following the fourteenth (14th) day after such Secured Claim is Allowed; and (iii) such date as agreed upon by the Holder of such Secured Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors. Should the Bankruptcy Court determine that any portion of the LCF Group Claim is an Allowed Unsecured Claim, such Allowed Unsecured Claim portion of the LCF Group Claim shall be treated as an Allowed General Unsecured Claim in Class 10.

The asserted Secured Claim in Class 6 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.7. Class 7 – Ford Motor Claim.** Class 7 is comprised of the Allowed Ford Motor Claim.

The Allowed Ford Motor Claim shall, in full and final satisfaction of such claim, be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first (1st) Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors.

The Creditor in Class 7 is Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and not entitled to vote on this Plan.

**4.8. Class 8 – Priority Unsecured Claims.** Class 8 is comprised of the Allowed Priority Unsecured Claims. The Allowed Claims in Class 8, if any, shall be treated as follows:

Each Allowed Priority Unsecured Claim, shall, in full and final satisfaction of such Claim, be paid in full in Cash by the Reorganized Debtors upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first (1st) Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors.

Creditors in Class 8 are Unimpaired under this Plan, deemed to have accepted this Plan pursuant to Section 1126(f) of the Bankruptcy Code, and are not entitled to vote on this Plan.

**4.9. Class 9 – Sanchez Claim.** Class 9 is comprised of the Sanchez Claim. The Sanchez Claim is Allowed in the amount of $410,000,000. In full and final satisfaction of such Claim, the Allowed Sanchez Claim shall be treated as follows:

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

(i) In accordance with the terms of the Global Settlement Agreement, unless paid by the Trustee prior to the Effective Date pursuant to the terms of the Global Settlement Agreement, within two days of the Effective Date, Sanchez shall be paid in Cash its Pro Rata share of the Initial Distribution; provided, however, that Sanchez shall receive no more and no less than the sum of $96,500,000 from the Initial Distribution not subject to assessment of bankruptcy fees or costs, and payment shall be made as set forth in the Global Settlement Agreement; and

(ii) The remaining balance of the Allowed Sanchez Claim after the Initial Distribution is $313,500,000. Sanchez shall receive his Pro Rata share of the Liquidation Trust Interests and is entitled to all Distributions in the order of priority set forth in the Liquidation Trust Agreement.

Class 9 is Impaired under this Plan. The Holder of the Class 9 Claim is entitled to vote on this Plan.

**4.10. Class 10 – General Unsecured Claims.** Class 10 is comprised of the Allowed General Unsecured Claims. In full and final satisfaction of such Claims, each Allowed Claim in Class 10 shall be treated as follows:

(i) Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of a General Unsecured Claim shall be paid in Cash its Pro Rata share of the Initial Distribution after upon the latest of: (i) the sixtieth (60th) day after the Effective Date, or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court; (iii) the first (1st) Business Day following the fourteenth (14th) day after such Claim is Allowed; and (iv) such date as agreed upon by the Holder of such Claim and the Trustee, and after the Effective Date, by the Reorganized Debtors; and

(ii) Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Liquidation Trust Interests and is entitled to all Distributions in the order of priority set forth in the Liquidation Trust Agreement.

Class 10 is Impaired under this Plan. The Holders of the Class 10 Allowed General Unsecured Claims are Impaired and entitled to vote on this Plan.

**4.11. Class 11 – Intercompany Claims.** Class 11 is comprised of the Intercompany Claims. In full and final satisfaction of such Claims, the Allowed Claims in Class 11 shall be treated as follows:

All Intercompany Claims shall be cancelled, released, and extinguished as of the Effective Date, and no Distribution shall be made on account of any such Claim.

Class 11 is Impaired under this Plan. The Holders of the Class 11 Allowed Intercompany Claims are entitled to vote on this Plan.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**4.12. Class 12 – Subordinated Claims.** Class 12 is comprised of the Subordinated Claims. In full and final satisfaction of such Claim, the Allowed Claims in Class 12 shall be treated as follows:

Each Holder of an Allowed Subordinated Claim in Class 12 shall receive its Pro Rata share of the Liquidation Trust Interests and is entitled to all Distributions in the order of priority set forth in the Liquidation Trust Agreement.

Class 12 is Impaired under this Plan. The Holders of the Class 12 Allowed Subordinated Claims are entitled to vote on this Plan.

**4.13. Class 13 – Equity Interests.** Class 13 is comprised of the Equity Interests in the Debtors as of the Record Date. The Allowed Equity Interests in Class 13 shall be treated as follows:

On the Effective Date, all Allowed Equity Interests shall be deemed cancelled and extinguished without further act or action under any applicable agreement, law, regulation, order, or rule. No Distribution shall be made on account of any Equity Interest.

Class 13 is Impaired under this Plan and deemed to have rejected this Plan pursuant to Section 1126(g) of the Bankruptcy Code, and is not entitled to vote on this Plan.

## 5. MEANS FOR IMPLEMENTATION OF PLAN

**5.1. Overview.** This Plan is made consistent with the terms of the Global Settlement Agreement and Global Settlement Order and provides for: (i) the reorganization of the Debtors pursuant to the terms of the Plan; (ii) effectuation of the 363 Sale to the extent not closed prior to the Effective Date; (iii) payment of Effective Date payments by the Reorganized Debtors and the funding of the Disputed Claim Reserve; and (iv) the creation of the Liquidation Trust and a mechanism for the Liquidation Trustee to pursue, litigate, waive, settle, compromise, and liquidate the Litigation Claims and the other Liquidation Trust Assets to maximize additional recoveries by the Holders of Allowed Claims.

**5.2. General Settlement of Claims.** Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, the Estates, and the Holders of Claims and Equity Interests, and is fair, equitable, and reasonable.

**5.3. Substantive Consolidation for Plan Purposes.** The Plan serves as a motion by the Trustee seeking entry, pursuant to section 105 of the Bankruptcy Code, of an order authorizing, on the Effective Date, the substantive consolidation of the Debtors' Estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting, confirmation, and Distribution purposes. Such substantive consolidation will not (i) alter the state of organization of any Debtor for purposes of determining applicable law of any of the Litigation Claim; (ii) alter or impair the legal and equitable rights of any party in interest including the

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Liquidation Trustee to enforce any of the Litigation Claims; (iii) otherwise impair, release, discharge, extinguish or affect any of the substantive rights of the parties in interest (including any defenses to any such Litigation Claims); or (iv) alter or impair the 363 Assets.

If substantive consolidation for plan purposes is ordered, then on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims. All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors shall automatically be expunged so that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, shall be treated as one single collective obligation of the Debtors. Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under this Plan shall be deemed cured as of the Effective Date.

Notwithstanding the foregoing substantive consolidation for plan purposes, fees payable, pursuant to 28 U.S.C. § 1930, shall be due and payable by each individual Debtor.

**5.4. Beazley Settlement Payment on the Effective Date.** Within ten (10) days of the Global Settlement Order becoming a Final Order, the proceeds from the Beazley Settlement Payment shall be transferred to Michael W. Carmel, in his capacity as the Trustee, the Liquidation Trustee, and/or as the sole manager, officer, and director of the Reorganized Debtors, to enable Reorganized Debtors to make the Effective Date payments, to fund the Disputed Claim Reserve, and to fund the Liquidation Trust Reserve. For the avoidance of doubt, the Beazley Settlement Payment proceeds shall be held in a bank account under the sole control of Michael W. Carmel, in his capacity as Trustee, the Liquidation Trustee, and/or as the sole manager, officer, and director of the Reorganized Debtors, as applicable. Neither the Debtors nor the current or former shareholders, members, managers, officers, directors, employees, or agents of the Debtors shall have access to, rights to, or control over, the Beazley Settlement Payment.

**5.5. Corporate Action.** On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, managers, members, partners, or other equity holders of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the managers, members, directors, or officers of the Debtors.

Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (i) any existing manager, director, and officer of the Reorganized Debtors will be deemed to have resigned on the Effective Date without any further corporate action; (ii) the Trustee shall be deemed the sole manager, director, officer, and representative of the Reorganized Debtors to exercise the rights, power, and authority of the Reorganized Debtors under applicable provisions of this Plan and bankruptcy and non-bankruptcy law; and (iii) all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order shall act as an order modifying the Debtors' operating agreements or articles of incorporation, as applicable, such that the provisions

of this Plan can be effectuated.

On and after the Effective Date, the Trustee may, in the name of the Reorganized Debtors, take all steps to effectuate the 363 Sale in accordance with the 363 Bid Procedures and the 363 Sale Order. On and after the Effective Date, the Trustee may take all additional actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions imposed by the Global Settlement Agreement, the Global Settlement Order, the Plan, and/or the Confirmation Order.

**5.6. Distributions.** Except as provided herein, all Distributions shall be made by the Liquidation Trustee or the Reorganized Debtors in accordance with the terms of the Plan. The Liquidation Trustee or the Reorganized Debtors shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

The Liquidation Trustee and the Reorganized Debtors shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform their duties under the Plan; (ii) make all distributions contemplated hereby; and (iii) exercise such other powers as may be vested in the Liquidation Trustee and the Reorganized Debtors by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Liquidation Trustee and/or the Reorganized Debtors to be necessary and proper to implement the provisions hereof.

**5.7. Effective Date Distributions.** On the Effective Date, the Reorganized Debtors shall make the Distributions payable on the Effective Date and under this Plan from the Beazley Settlement Payment proceeds. On the Effective Date, the Reorganized Debtors shall also establish the Disputed Claim Reserve. Unless otherwise ordered by the Bankruptcy Court, within ten (10) days of a Disputed Claim becoming an Allowed Claim, the Reorganized Debtors shall Distribute to the Holder of such Allowed Claim from the Disputed Claim Reserve, the portion of their Allowed Claim that would have been paid on the Effective Date had the Claim not been Disputed. The Reorganized Debtors shall maintain the Disputed Claim Reserve until all Disputed Claims have been resolved by Final Order, at which point, the Reorganized Debtors shall tender any remaining funds in the Disputed Claim Reserve to the Liquidation Trust and close the Disputed Claim Reserve.

**5.8. Liquidation Trust.** Prior to the Effective Date, the Trustee shall execute the Liquidation Trust Agreement. The Liquidation Trust Agreement shall be in the form included in the Plan Supplement and acceptable to the Trustee, Beazley, and Sanchez, in their respective sole discretion.

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of maximizing the value of the Liquidation Trust Assets, which shall initially consist of the Distributable Assets, and effectuating Distributions to Creditors consistent with the Plan. The Liquidation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation Article 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.

All Litigation Claims are expressly preserved for, and shall vest in, the Liquidation Trust.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

On the Effective Date, the Liquidation Trust Assets, which includes the Litigation Claims, shall vest automatically in the Liquidation Trust. The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made for the benefit and on behalf of the Liquidation Trust Beneficiaries. The assets comprising the Liquidation Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Liquidation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Liquidation Trust Beneficiaries to the Liquidation Trust in exchange for the Liquidation Trust Interests in the Liquidation Trust. The Liquidation Trust Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust. Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtors' rights, title, and interest in the Liquidation Trust Assets, and the Debtors and Estates will have no further interest in or with respect to the Liquidation Trust Assets.

Except as otherwise provided in this Plan, on and after the Effective Date, all Liquidation Trust Assets will vest in the Liquidation Trust free and clear of all Claims, Liens, charges, other encumbrances, and Equity Interests. All parties shall execute any documents or other instruments as necessary to cause title to the applicable Liquidation Trust Assets to be transferred to the Liquidation Trust. The Liquidation Trust Assets will be held in trust for the benefit of all Liquidation Trust Beneficiaries pursuant to the terms of the Plan and the Liquidation Trust Agreement.

The Confirmation Order shall constitute a determination that the transfers of the Liquidation Trust Assets to the Liquidation Trust are legal and valid and consistent with applicable law, including Colorado, Florida, Nevada, and Wisconsin state law.

Without limiting the foregoing, the Liquidation Trustee may pay all reasonable Liquidation Trust Expenses in the ordinary course of business without further notice to Creditors or Holders of Equity Interests or approval of the Bankruptcy Court.

In pursuing any Litigation Claim, the Liquidation Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Litigation Claim may be brought under section 546 of the Bankruptcy Code. The Liquidation Trust Agreement will require consistent valuation of the Liquidation Trust Assets by the Liquidation Trustee and the Liquidation Trust Beneficiaries for all U.S. federal and other income tax and reporting purposes. The Liquidation Trust will not be permitted to receive or retain Cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the Liquidation Trust Assets.

In connection with the prosecution of the Litigation Claims, any attorney-client privilege, work-product privilege, joint interest privilege, or other privilege or immunity attaching to any prepetition and/or pre-Effective Date documents or communications relating to the Litigation Claims shall be transferred to and shall vest in the Liquidation Trust. The Liquidation Trust's receipt of such privileges or immunities associated with the Litigation Claims shall not operate as a waiver of those privileges or immunities possessed or retained by the Debtors, nor shall it operate to eliminate the rights of any co-defendant to any applicable joint privilege or immunity. The Liquidation Trust shall also be vested with the Estates' rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004. The Liquidation Trust, however, shall not be considered a successor of any Debtor and shall not assume any obligations of the Debtors other than expressly provided for by the Plan and the

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Liquidation Trust Agreement.

Except as otherwise ordered by the Bankruptcy Court, the Liquidation Trust Expenses on or after then Effective Date shall be paid in the ordinary course of business in accordance with the Liquidation Trust Agreement, without further order of the Bankruptcy Court and without notice to any other party.

The Liquidation Trust shall file annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the Distributions made by it, and other matters required to be included in such report in accordance with the Liquidation Trust Agreement. In addition, the Liquidation Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a).

The Liquidation Trust Interests are not intended to constitute "securities." To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act or other applicable law. If the Liquidation Trustee determines, with the advice of counsel, that the Liquidation Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act, or other applicable law, then the Liquidation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the Securities and Exchange Commission to the extent required by applicable law.

The existence of the Liquidation Trust and the authority of the Liquidation Trustee will commence as of the Effective Date and will remain and continue in full force and effect until the date on which: (i) all material Liquidation Trust Assets are liquidated and/or monetized in accordance with the Plan; provided, however, for the avoidance of doubt, that the Liquidation Trustee shall not be required to pursue any Litigation Claims or take any other action that the Liquidation Trustee determines, in his sole discretion, is not likely to yield sufficient additional proceeds to justify further pursuit or action; (ii) the funds in the Liquidation Trust have been distributed in accordance with the Plan; and (iii) the order closing the Chapter 11 Cases is a Final Order.

To the extent that the terms of the Plan with respect to the Liquidation Trust are inconsistent with the terms set forth in the Liquidation Trust Agreement, then the terms of the Liquidation Trust Agreement shall govern.

**This Plan shall be interpreted so as to afford, for the benefit of all Holders of Allowed Claims, the greatest opportunity for maximum recovery by the Liquidation Trustee of the Liquidation Trust Assets and proceeds thereof, including the Litigation Claims and proceeds thereof, and the rights in and proceeds of any Liability Insurance Policies. The proceeds of Litigation Claims are material to the implementation of this Plan and the recoveries to Creditors.**

**5.9. Liquidation Trustee Compensation.** The Liquidation Trustee shall be compensated consistent with the calculation and provisions of section 326 of the Bankruptcy Code.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**5.10. Liquidation Trustee as Representative of the Debtors' Estates.** On the Effective Date, the Liquidation Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidation Trust Agreement, including the right to (i) effect all actions and execute all agreements, instruments, and other documents necessary to implement the provisions of the Liquidation Trust Agreement; (ii) administer the Liquidation Trust Assets, including prosecuting, settling, abandoning, or compromising any Litigation Claims; and (iii) employ and compensate professionals and other agents consistent with the provisions of the Plan.

For the avoidance of doubt, upon the occurrence of the Effective Date, the Liquidation Trustee shall automatically be granted, have, and be vested with exclusive standing and authority to: (i) bring and prosecute any Litigation Claim in a court of competent jurisdiction; and (ii) negotiate, settle, waive, or otherwise resolve any Litigation Claims. For the further avoidance of doubt, upon the Effective Date, the Liquidation Trustee shall automatically be: (i) deemed a representative of the Debtors and the Estates with respect to all applicable Litigation Claims and any related Liability Insurance Policies; and (ii) granted and have the right to control any and all privileges and protections on behalf of the Debtors and the Estates with respect to all applicable Litigation Claims. Nothing in this Plan shall require the Liquidation Trustee to prosecute or pursue any Litigation Claim.

**5.11. Powers of the Liquidation Trustee.** The Liquidation Trustee shall be a representative of the Debtors' Estates and shall, subject to the terms of the Liquidation Trust Agreement, have the power to make all decisions with respect to the Liquidation Trust Assets, including prosecution, negotiation, waiver, and/or settlement of any Litigation Claims. Unless otherwise provided in the Plan, the Confirmation Order, or the Liquidation Trust Agreement, the duties and powers of the Liquidation Trustee shall include the following, without need of further Court approval, the power to:

(i) Implement this Plan, including any other powers necessary or incidental thereto;

(ii) Exercise all power and authority that may be exercised, to commence, pursue, abandon, and/or settle all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtors prior to the Effective Date) that may be commenced, and to take all actions that may be taken to consummate the Plan and all transfers thereunder;

(iii) Make Distributions, or enable the Reorganized Debtors to make Distributions, to Holders of Allowed Claims, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves;

(iv) Use, manage, sell, lease, license, abandon, convert to Cash, and/or otherwise dispose of the Liquidation Trust Assets for the purpose of making Distributions and fully consummating the Plan;

(v) Prosecute objections to Claims, including Administrative Expense Claims, and compromise, settle, and/or litigate any such Claims (Disputed or otherwise);

(vi) Investigate and prosecute any and all Litigation Claims and compromise, settle, waive, and/or litigate any Litigation Claims;

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

(vii) Prepare and file tax returns for the Liquidation Trust to the extent required by law;

(viii) Employ and compensate any and all such professionals and agents as the Liquidation Trustee, in his sole discretion, deems reasonably necessary to perform his duties under the Plan and Liquidation Trust Agreement, without further order of the Bankruptcy Court;

(viv) Satisfy and pay all Trust Expenses;

(x) Participate in or file any post-Effective Date motion(s) to amend or modify this Plan or the Liquidation Trust Agreement, or any appeal(s) of the Confirmation Order;

(xi) Participate in or file any action to enforce or interpret this Plan;

(xii) Bind the Liquidation Trust; and

(xiii) Take all other actions not inconsistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration or implementation of the Plan, including filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases.

**5.12. Prosecution of the Quintairos Claims and Quintairos Non-Debtor Claims.** In exchange for the benefits and releases provided in the Global Settlement Agreement, the Liquidation Trust and the NuMale Settling Defendants shall jointly prosecute their respective Quintairos Claims and Quintairos Non-Debtor Claims, which claims shall be jointly prosecuted under the sole direction and control of the Liquidation Trustee. In exchange for the benefits and releases received under the Global Settlement Agreement, the NuMale Settling Defendants agree that the Liquidation Trustee shall have sole authority to retain counsel, determine litigation strategy, engage in settlement negotiations, approve a settlement, and/or make other decisions with respect to such joint litigation of the Quintairos Claims and Quintairos Non-Debtor Claims, though the Liquidation Trustee agrees to consult with, and keep informed, the NuMale Settling Defendants regarding ongoing negotiations, strategy, and any resolution or settlement.

The NuMale Settling Defendants shall fully cooperate with, and assist the Liquidation Trustee in, prosecuting the Quintairos Claims and Quintairos Non-Debtor Claims, including in connection with providing documents and testimony necessary for the successful prosecution of such claims.

To the extent that the Quintairos Claims and Quintairos Non-Debtor Claims produce a monetary recovery, and to the extent they cannot otherwise agree, the Liquidation Trustee and the NuMale Settling Defendants shall participate in a mediation to determine how such recovery shall be allocated between the Quintairos Claims and Quintairos Non-Debtor Claims after payment of retained counsel and experts' fees and costs. Within ten (10) days' written notice from the Liquidation Trustee that there is a monetary recovery on account of the Quintairos Claims and Quintairos Non-Debtor Claims, the Liquidation Trustee and the NuMale Settling Defendants shall jointly select a mediator to determine the allocation of such recovery amongst themselves. If an agreement cannot be reached with respect to the identification of the mediator, one of the following mediators will be selected by the Liquidation Trustee: Bruce Markell or Miles Ruthberg. The mediation will occur within thirty (30) days of the selection of the meditator unless otherwise agreed in writing by the Liquidation Trustee and each of the NuMale Settling Defendants. If the

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Liquidation Trustee and each of the NuMale Settling Defendants cannot agree on an allocation of the proceeds from the recovery of the Quintairos Claims and Quintairos Non-Debtor Claims at the mediation and the mediator determines, in the mediator's sole discretion, that the parties have reached an impasse, the mediator shall present a mediator's proposal for the proper allocation of the recovery from the Quintairos Claims and Quintairos Non-Debtor Claims between the Liquidation Trust and each of the NuMale Settling Defendants, which mediator's proposal shall be immediately binding on the Liquidation Trust and each of the NuMale Settling Defendants without any further order, act, or approval and without any right of appeal. Any resolution shall be noticed to the full matrix in the Chapter 11 Cases.

**5.13. Liquidation Trust Beneficiaries.** Each of the Liquidation Trust Beneficiaries shall be recorded and set forth in a schedule maintained by the Liquidation Trustee expressly for such purpose based upon the Liquidation Trust Beneficiaries' Allowed Claim.

The ownership of Liquidation Trust Interests shall not entitle any Liquidation Trust Beneficiary to any title in or to the Liquidation Trust Assets; any right to call for a partition or division of such Liquidation Trust Assets; or to require an accounting, except as may be specifically provided herein. Ownership of a Liquidation Trust Interest (i) shall be noted in the books and records of the Liquidation Trust; and (ii) shall not be evidenced by any certificate, note, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee.

As set forth in more detail in the Liquidation Trust Agreement, the Liquidation Trust Interests may not be transferred, sold, assigned, hypothecated, or pledged, except as they may be assigned or transferred by will, intestate succession, or operation of law.

**5.14. Distribution of Liquidation Trust Interests.** Upon the Effective Date, the Liquidation Trust Interests shall be distributed to the Liquation Trust Beneficiaries.

**5.15. Net Distributable Assets and Distribution Waterfall.** The source of all Distributions and payments under the Plan will be the Distributable Assets and the proceeds thereof. Distributions to the Liquidation Trust Beneficiaries will be funded entirely from Liquidation Trust Assets consisting of Net Distributable Assets.

As more fully set forth in the Liquidation Trust Agreement, Distributions of the Net Distributable Assets (excluding the monetary recovery net of legal fees for the Palubicki and Feliciano Claims) on account of the Liquidation Trust Interests shall be made in the following order and priority:

(i) First, all Liquidation Trust Expenses shall be paid in full.

(ii) Second, any Allowed Administrative Claims that were not satisfied by the Reorganized Debtors and were deferred for payment by the Liquidation Trust shall be paid in full.

(iii) Third, the Contingent Expense Reimbursement shall be paid in full.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

(iv) Fourth, Allowed General Unsecured Claims shall receive their Pro Rata share of the Net Distributable Assets until all Allowed General Unsecured Claims are paid in full.

(v) Fifth, Allowed Subordinated General Unsecured Claims shall receive their Pro Rata share of the Net Distributable Assets until all Allowed Subordinated General Unsecured Claims are paid in full.

Distributions of Net Distributable Assets shall not be made in respect of Allowed General Unsecured Claims and Allowed Subordinated General Unsecured Claims until Disputed Administrative Claims have been Allowed or Disallowed, and until all contingencies that could give rise to a liquidated Contingent Expense Reimbursement Claim have been finally resolved, including, where applicable, by a Final Order, and all payments in respect of the Contingent Expense Reimbursement Claim have been made.

**5.16. Reorganization of Debtors and Vesting of Non-Litigation Assets.** On the Effective Date, all Assets, including the 363 Assets if the 363 Sale has not yet closed (and solely excluding the Liquidation Trust Assets that shall vest in the Liquidation Trust as set forth in the Plan, and the Palubicki and Feliciano Claims, which shall be transferred to Beazley in connection with the Global Settlement Agreement) shall be vested in the Reorganized Debtors free and clear of all Liens, Claims, and Equity Interests, expect as otherwise expressly provided in the Plan. For the avoidance of doubt, the Assets (other than the Liquidation Trust Assets and the Palubicki and Feliciano Claims) shall vest in the respective Reorganized Debtor that owned such revested Assets prepetition. In exchange for Justin Pulliam's New Value Contribution, on the Effective Date, title to the Debtors' 2019 Ford F150 shall vest in Justin Pulliam, free and clear of all Liens, Claims, and Equity Interests.

On and after the Effective Date, subject to the requirements of the Plan, each Debtor will continue to exist as a separate limited liability company or corporation, as applicable, and shall retain all of the powers of a limited liability company or corporation, as applicable, under applicable non-bankruptcy law, and without prejudice to any right to amend its operating agreement or articles of incorporation (as applicable), dissolve, merge, or convert into another form of business entity, or to alter or terminate its existence.

Michael W. Carmel, the Trustee, shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law and shall be authorized to exercise all of the rights and powers of as managers or directors, as applicable, as provided by the Plan, including effectuation of the 363 Sale. The Trustee shall continue to be compensated in accordance with the provisions of section 326 of the Bankruptcy Code. Further, each of the Debtors' operating agreements or articles of incorporation, as applicable, shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

Neither the occurrence of the Effective Date, nor the effectiveness of this Plan, nor any provision of applicable non-bankruptcy law shall cause a dissolution of the Debtors, which shall be continued as limited liability companies or corporations, as applicable, under the control of the Trustee following the Effective Date and subject to the terms of the Plan.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**5.17. 363 Sale.** To the extent that the 363 Sale has not closed prior to the Effective Date, the Reorganized Debtors shall effectuate the 363 Sale as soon as practicable after the Effective Date in accordance with the 363 Bid Procedures and the 363 Sale Order.

**5.18. Winddown of the Reorganized Debtors.** Upon completion of the 363 Sale, the transfer of the 363 Assets to the prevailing bidder(s) in accordance with the terms of the 363 Sale Order, the transfer of the proceeds of the 363 Sale to the Liquidation Trust, the resolution of Disputed Claims with funds held in the Disputed Claims Reserve, and the completion of the Distributions required to be made by the Reorganized Debtors under this Plan, the Trustee shall take the necessary actions, in his business judgment, to wind-down and dissolve each of the Reorganized Debtors in accordance with applicable state law. For the avoidance of doubt, prior to winding down and dissolving the Reorganized Debtors, the Trustee may take all actions necessary to preserve the value of the Reorganized Debtors in his sole discretion without obtaining approved of the Bankruptcy Court; provided, however, that the Trustee may, in his sole discretion, seek approval of, or file applicable motions with, the Bankruptcy Court prior to causing the Reorganized Debtors to take any actions.

**5.19. Notice of Effectiveness.** When the steps contemplated by Section 7.2 have been completed, the Debtors shall file with the Bankruptcy Court and serve upon all Creditors and potential Holders of Administrative Claims reasonably known to the Trustee (whether or not Disputed), a Notice of Effective Date of Plan, which shall include a notice of the Administrative Claim Bar Date.

**5.20. Final Decree.** At any time following the Effective Date, the Liquidation Trustee shall be authorized to file a motion for the entry of a final decree closing one or more of the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code.

**5.21. No Corporate Action Required.** As of the Effective Date: (i) the adoption, execution, delivery, and implementation or assignment of all contracts, leases, instruments, releases and other agreements related to or contemplated by this Plan and the Global Settlement Agreement; and (ii) the other matters provided for under or in furtherance of this Plan and the Global Settlement Agreement involving corporate action to be taken by or required of Debtors shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without further order of the Bankruptcy Court or any requirement of further action by the members or officers of Debtors or the Trustee.

## 6. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1. Executory Contracts.** Except for: (i) the Beazley Policies, and (ii) Executory Contracts and Unexpired Leases specifically addressed in this Plan or set forth on the schedule of Rejected Executed Contracts and Unexpired Leases attached as Schedule 6.1 hereto (which may be supplemented and amended up to the date the Bankruptcy Court enters the Confirmation Order), all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed assumed by the respective Debtor(s) on the Effective Date and assigned to the prevailing bidder(s) in connection with the 363 Sale.

**6.2. Approval of Assumption and Assignment or Rejection.** Entry of the Confirmation Order shall constitute as of the Effective Date: (i) approval, pursuant to Bankruptcy Code section 365(a) of the assumption by the respective Debtor(s) and assignment to the prevailing

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

bidder(s) in connection with the 363 Sale of each Executory Contract and Unexpired Lease to which any Debtor is a party that is not the Beazley Policies, not listed on Schedule 6.1, not otherwise provided for in this Plan, and neither assigned, assumed and assigned, nor rejected by separate order of the Bankruptcy Court prior to the Effective Date; and (ii) rejection by the applicable Debtor(s) of each Executory Contract and Unexpired Lease to which such Debtor(s) are a party that is listed on Schedule 6.1. Upon the Effective Date, each counterparty to an assumed Executory Contract or Unexpired Lease listed shall be deemed to have consented to an assumption and assignment contemplated by Section 365(c)(1)(B) of the Bankruptcy Code, to the extent such consent is necessary for such assumption and assignment. To the extent applicable, all Executory Contracts or Unexpired Leases assumed pursuant to this Article 6 shall be deemed modified such that the transactions contemplated by this Plan shall not be a "change of control," regardless of how such term may be defined in the relevant Executory Contract or Unexpired Lease and any required consent under any such Executory Contract or Unexpired Lease shall be deemed satisfied by confirmation of this Plan.

**6.3. Cure of Defaults.** The Reorganized Debtors shall make the Cure payments upon the latest of: (i) closing of the 363 Sale; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by the applicable Reorganized Debtor(s); or (iii) the first (1st) Business Day that is fourteen (14) days after the entry of a Final Order resolving any dispute regarding: (a) a Cure amount; (b) the ability of the prevailing bidder(s) in connection with the 363 Sale to provide "adequate assurance of future performance" under the Executory Contract(s) or Unexpired Lease(s) assumed and assigned pursuant to this Plan in accordance with Section 365(b)(1) of the Bankruptcy Code; or (c) any matter pertaining to assumption, assignment, or the Cure of a particular Executory Contract or an Unexpired Lease.

**6.4. Objection to Cure Amounts.** Any party to an Executory Contract or Unexpired Lease that is being assumed pursuant hereto who objects to the Cure amount identified on Schedule 6.3 or any alleged Cure amount that is not identified on Schedule 6.3 must file and serve an objection on the Trustee and all parties entitled to notice by ECF in the Chapter 11 Cases, no less than five (5) days prior to the Confirmation Hearing. Failure to file and serve a timely objection shall be deemed consent to the Cure amounts identified on Schedule 6.3 of this Plan. If there is a dispute regarding: (i) the amount of any Cure payment; (ii) the ability of the prevailing bidder(s) in connection with the 363 Sale to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease to be assumed or assigned; or (iii) any other matter pertaining to assumption, the Cure payments required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.

**6.5. Confirmation Order.** The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption and assignment described in this Article 6 pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Notwithstanding the forgoing, if, as of the date the Bankruptcy Court enters the Confirmation Order, there is pending before the Bankruptcy Court a dispute concerning the Cure amount or adequate assurance for any particular Executory Contract or Unexpired Lease, the assumption of such Executory Contract or Unexpired Lease shall be effective as of the date the Bankruptcy Court enters an order resolving any such dispute and authorizing assumption and assignment by the respective Debtor(s).

**6.6. Post-Petition Date Contracts and Leases.** Executory Contracts and Unexpired Leases entered into and other obligations incurred after the Petition Date by Debtors shall be assumed by the applicable Reorganized Debtor(s) on the Effective Date. Each such Executory Contract and Unexpired Lease shall be performed by the applicable Reorganized Debtor(s) in the ordinary course of its business.

**6.7. Bar Date.** All proofs of Claims with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than fifteen (15) days after the Effective Date. Any Claim not filed within such time shall be forever barred.

## 7. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**7.1. Conditions to Confirmation**. The following are conditions precedent to confirmation of the Plan:

**7.1.1.** The Confirmation Order shall have been entered and be in form and substance reasonably acceptable to the Trustee.

**7.1.2.** The Global Settlement Agreement shall have been approved in open Court by the Bankruptcy Court.

**7.2. Conditions to Effectiveness**. The following are conditions precedent to the occurrence of the Effective Date:

**7.2.1.** The Confirmation Order shall be a Final Order, except that the Trustee reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order if no stay pending appeal has been obtained;

**7.2.2.** The Liquidation Trust shall have been established;

**7.2.3.** The Disputed Claim Reserve shall have been established;

**7.2.4.** The Global Settlement Agreement has become effective in accordance with its terms;

**7.2.5.** The Beazley Settlement Payment shall have been received by the Trustee; and

**7.2.6.** All documents necessary to implement the transactions contemplated by this Plan shall be in form and substance reasonable acceptable to the Trustee.

**7.3. Waiver of Conditions.** The conditions to Consummation of the Plan set forth in Section 7.2 of this Plan may be waived by written agreement of the Trustee with the consent of Beazley and Sanchez, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

## 8. GLOBAL SETTLEMENT AGREEMENT; DISCHARGE; INJUNCTION

**8.1. General.** Notwithstanding anything contained in the Plan to the contrary, the allowance, classification, and treatment of all Allowed Claims and Equity Interests and their

respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, unless specifically provided otherwise in this Plan or the Liquidation Trust Agreement, after the Effective Date the Liquidation Trustee may, in his sole and absolute discretion, (i) compromise and settle Claims against the Debtors, and (iii) compromise and settle Litigation Claims against other Persons.

**8.2. Global Settlement Agreement and Mutual Releases.** The terms of the Global Settlement Agreement and Global Settlement Order, including the mutual releases granted therein, are incorporated fully into this Plan as set forth herein, and are fully enforceable.

**8.3. Limitation on Liability of the Liquidation Trustee.** The Liquidation Trustee will not be liable for any act he may do or omit to do in such capacity under the Plan and the Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of his reasonable business judgment; nor will he be liable in any event except for gross negligence, willful misconduct or intentional breaches of the Plan, the Global Settlement Agreement, or the Liquidation Trust Agreement, or fraud as determined by a Final Order of a court of competent jurisdiction. The foregoing limitation on liability also will apply to any Person employed by the Liquidation Trustee (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such party in the fulfillment of their respective duties hereunder or under the Liquidation Trust Agreement. Also, the Liquidation Trustee and any Person employed by such parties (including any professional employed or retained by the Liquidation Trustee) and acting on behalf of such a party shall be entitled to indemnification out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being, having been, or being employed by such party, or for performing any functions incidental to such service.

**8.4. Compromise and Settlement.** The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in this Plan, including the previously approved Global Settlement Agreement and the Global Settlement Order, are (i) in the best interests of the Debtors, their Estates, and all Holders of Claims and Equity Interests; (ii) fair, equitable and reasonable; (iii) made in good faith; and (iv) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

**8.5. Discharge. On the Effective Date, except as otherwise provided in this Plan, the Debtors shall be discharged from any and all Claims and all Equity Interests to the fullest extent provided in sections 524 and 1141 of the Bankruptcy Code. The Discharge shall be to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, and, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan and shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any kind or nature whatsoever against the Debtors or any of their Assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on**

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**account of such Claims. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtors shall be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code. Nothing in this Plan or Confirmation Order shall operate to expand the Debtors' discharge as provided for in this Section 8.5 beyond that allowed by the Bankruptcy Code. Nothing herein shall prevent or limit the rights of any Person to enforce the terms of, or their rights under, the Plan, the Global Settlement Agreement, or the Global Settlement Order.**

**8.6. Injunction. Except as otherwise provided in the Plan, from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or their Estates, are permanently enjoined from taking any action in furtherance of such Claim, Equity Interest, and/or any other cause of action released and/or discharged under the Plan, including, without limitation, the following actions: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Trustee, the Debtors, the Debtors' property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets, or the Reorganized Debtors with respect to any such Claim, Equity Interest, and/or other cause of action, or taking any act to recover such Claim or Equity Interest outside of the claims allowance procedures discussed in this Plan, the Bankruptcy Code, and Bankruptcy Rules; (ii) creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien, security interest, or encumbrance of any kind against the Debtors, the Debtors' property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets, or the Reorganized Debtors on account of any such Claim, Equity Interest, and/or other cause of action; (iii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Trustee, the Debtors, the Debtors' property, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets, or the Reorganized Debtors, on account of any such Claim, Equity Interest, and/or other cause of action; and (iv) asserting any right of setoff or subrogation of any kind, directly or indirectly, against any debt, liability or obligation due from or to the Debtors, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee, or the Liquidation Trust Assets, or against the property or interests in property of the Debtors, the Debtors' Estates, the Liquidation Trust, the Liquidation Trustee the Liquidation Trust Assets, or the Reorganized Debtors, on account of any such Claim, Equity Interest, and or other cause of action. By accepting Distributions, each Holder of an Allowed Claim or Equity Interest will be deemed to have specifically consented to the injunctions in the Plan. Such injunctions shall extend for the benefit of the Trustee, the Reorganized Debtors, the Liquidation Trustee, any successors of the Debtors, and to property and interests in property subject to this Plan. All injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date. For the avoidance of doubt, from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or their Estates, are permanently enjoined from taking any action that violates the Global Settlement Agreement, the Global Settlement Order, or the mutual releases provided therein. Nothing herein shall prevent or limit the rights of any Person to**

**enforce the terms of, or their rights under, the Plan, the Global Settlement Agreement, or the Global Settlement Order.**

**8.7. Exculpation. From and after the Effective Date, neither Debtors, the Reorganized Debtors, the Trustee, the Liquidation Trustee, Sanchez, Beazley and their respective professionals nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward), the Chapter 11 Cases, the pursuit of confirmation of this Plan, or the consummation of this Plan, except for gross negligence and willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Cases. Under no condition, however, shall this exculpation apply to Brad Palubicki, Carlos Feliciano, any entity controlled by Messrs. Palubicki and/or Feliciano, or the Palubicki and Feliciano Claims, nor with respect to any of the preserved Litigation Claims, including the Litigation Claims identified on Schedule 1.1.82 hereto.**

**Notwithstanding anything to the contrary herein, nothing in the Plan shall release, discharge, enjoin, or otherwise modify or affect the rights of Beazley to pursue the Palubicki and Feliciano Claims or any claims against NuMale Chicago LLC, NuMale Medical Center, LLC, and NuMale North Carolina, PLLC.**

## 9. RETENTION OF JURISDICTION

**9.1. Jurisdiction.** Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases, the Liquidation Trust, and the Reorganized Debtors after the Effective Date to the maximum extent permitted by law, including, without limitation, jurisdiction to:

**9.1.1.** Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Disputed Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Disputed Claims;

**9.1.2.** Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

**9.1.3.** Grant or deny any motion filed by the Liquidation Trustee seeking approval of a compromise or settlement; provided, however, the Liquidation Trustee is not required to seek such approval;

**9.1.4.** Grant or deny the 363 Sale and all other related relief requested or ancillary to the 363 Motion, the 363 Sale Procedures, and the 363 Sale Order;

**9.1.5.** Resolve any matters related to the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtors or Reorganized Debtors are

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

party and to hear, determine, and, if necessary, liquidate any Claims arising there from or Cure amounts related thereto;

**9.1.6.** Insure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and the Global Settlement Agreement;

**9.1.7.** Hear and decide disputes arising under the Global Settlement Agreement and enforce the releases and injunctions contained therein and in the order approving the Global Settlement Agreement;

**9.1.8.** Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications or motions involving the Debtors, the Reorganized Debtors, the Liquidation Trust, or the Liquidation Trustee that may be pending on the Effective Date or commenced thereafter as provided for by this Plan;

**9.1.9.** Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan (including the Global Settlement Agreement) and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

**9.1.10.** Decide or resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of any Final Order, this Plan, the Confirmation Order, and the Global Settlement Agreement, or any Person's obligations incurred in connection with this Plan, the Global Settlement Agreement, or the Confirmation Order;

**9.1.11.** Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code and the terms of the Plan or modify any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Final Order, this Plan, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

**9.1.12.** Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation, or enforcement of any Final Order, this Plan, the Global Settlement Agreement, the Global Settlement Order, or the Confirmation Order, except as otherwise provided herein;

**9.1.13.** Enter and implement such orders as are necessary or appropriate if a Final Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**9.1.14.** Determine any other matters that may arise in connection with or relate to this Plan, any Final Order, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Disclosure Statement, any Final Order, or Confirmation Order, except as otherwise provided herein;

**9.1.15.** Enter the Final Decree(s);

**9.1.16.** Hear and decide Litigation Claims and the Palubicki and Feliciano Claims and continue to hear and decide pending Litigation Claims and the Palubicki and Feliciano Claims and any other claim or cause of action of the Debtors, the Liquidation Trust, or the Reorganized Debtors; provided, however, that the Liquidation Trust is not required to prosecute Litigation Claims, and Beazley or its assignees are not required to prosecute the Palubicki and Feliciano Claims, in the Bankruptcy Court and each is expressly authorized to pursue Litigation Claims in other appropriate courts and under other applicable law; and

**9.1.17.** Decide or resolve any matter over which the Bankruptcy Court has jurisdiction pursuant to Section 505 of the Bankruptcy Code.

**9.2. No Waiver.** Nothing contained in this Article 9 shall constitute a waiver by the Liquidation Trustee or Beazley of the right to assert that the Bankruptcy Court lacks jurisdiction over any matter set forth in this Article 9.

## 10. MODIFICATION AND AMENDMENT OF PLAN

**10.1. Modification and Amendment.** Prior to Confirmation, the Trustee may alter, amend, or modify this Plan under section 1127(a) of the Bankruptcy Code at any time so long as such alterations, amendments or modifications do not affect the rights of Beazley under the Plan or the Global Settlement Agreement. After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Liquidation Trustee may, under section 1127(b), (c), and (d) of the Bankruptcy Code, alter, amend, or modify this Plan or institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, to make appropriate adjustments and modifications to this Plan or the Confirmation Order as may be necessary to carry out the purposes and effects of this Plan so long as such alternations, amendments, modifications, or proceedings do not affect the rights of Beazley under the Plan or the Global Settlement Agreement or otherwise materially adversely affect the treatment of Holders of Claims under this Plan.

## 11. ADDITIONAL CLAIM OBJECTION AND DISTRIBUTION INFORMATION.

**11.1. Objections to Claims and Disallowed Claims.**

**11.1.1. Authority to File Objections to Claims.** Prior to the Effective Date, objections to Claims shall be made and pursued by the Trustee or any other party authorized to do so by the Bankruptcy Code. After the Effective Date, objections to Proofs of Claim or proofs of Equity Interests may be made and pursued by any party-in-interest in the Chapter 11 Cases, including the Liquidation Trustee and the Reorganized Debtors. The Liquidation Trist shall pursue objections to Claims and Equity Interests made previous thereto by the Trustee and still pending on the Effective Date, unless expressly authorized by order of the Bankruptcy Court. Any objections to proofs of Claim or proofs of Equity Interests made after the Effective Date shall be

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

filed and served not later than thirty (30) days after the Effective Date; provided, however, that such period may be extended by order of the Bankruptcy Court.

**11.1.2. Deadline for Filing Objections to Claims.** Any objections to Claims made after the Effective Date shall be filed and served not later than the first (1st) Business Day that is thirty (30) days after the Effective Date; provided, however, that such period may be extended by request of the Reorganized Debtors and/or the Liquidation Trustee and entry of an order of the Bankruptcy Court approving such request.

**11.1.3. Resolution of Objections After Effective Date.** From and after the Effective Date, only the Reorganized Debtors and/or Liquidation Trustee may propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court irrespective of whether the Liquidation Trust was the Person that filed the objection. All other parties-in-interest prosecuting objections to Disputed Claims shall obtain either written approval of the Liquidation Trustee an order of the Bankruptcy Court to settle Disputed Claims.

**11.1.4. Late-Filed Claims.** No proof of Claim filed after the applicable Bar Date or, as applicable, the Administrative Claim Bar Date, shall be allowed, and all such proofs of Claim are hereby disallowed in full. After the Bar Date or the Administrative Bar Date, as applicable, no Creditor shall be permitted to amend any Claim or proof of Claim to increase the claimed amount and any such amendment shall be disallowed to the extent of the late-filed increase in the claimed amount.

**11.2. Delivery of Distributions; Undeliverable Distributions.** Unless otherwise specified in the Global Settlement Agreement, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed or if the Debtors have been notified of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Trustee or the Liquidation Trustee, as applicable, after the date of any related proof of Claim; or (iii) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Trustee or Liquidation Trustee has not received a written notice of a change of address. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Trustee or Liquidation Trustee is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Nothing contained in this Plan shall require the Trustee, the Reorganized Debtors, or the Liquidation Trustee to attempt to locate any Holder of an Allowed Claim.

Any Person that fails to claim a Distribution returned as undeliverable within ninety (90) days from the date upon which a Distribution is first made to such Person shall forfeit all rights to any Distribution under the Plan. Persons that fail to claim the Distribution shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors, the Disputed Clim Reserve, the Reorganized Debtors, the Liquidation Trustee, or against any Holder of an Allowed Claim to whom Distributions are made by the Reorganized Debtors or the Liquidation Trustee. Undeliverable Distributions shall not be entitled to any interest, dividends, or other accruals of any kind. Any check that is not cashed or otherwise deposited within ninety (90) days after the check's date shall be deemed an undeliverable Distribution under this Plan.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable Distribution within ninety (90) days after the first attempted delivery shall have its Claim for such undeliverable Distribution expunged and shall be forever barred from asserting any such Claim against the Debtors, the Estates, the Reorganized Debtors, the Disputed Claims Reserve, Liquidation Trust, the Liquidation Trustee, the Reorganized Debtors, or their respective property. In such cases, any Cash held for distribution on account of such Claims shall be property of the Liquidation Trust, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan. Nothing contained in the Plan shall require the Reorganized Debtors or Liquidation Trustee to attempt to locate any Holder of an Allowed Claim.

Similarly, checks or drafts issued pursuant to this Plan to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person shall be deemed nonnegotiable thereafter. Any Claim in respect of such Distribution shall be discharged and forever barred from assertion against the Debtors, the Estates, the Disputed Claims Reserve, the Liquidation Trust, the Liquidation Trustee, the Reorganized Debtors, and their respective property. Any Distribution which is deemed nonnegotiable shall vest or revest in the Liquidation Trust and be available for Distribution consistent with the Plan.

Subject to the terms of this Plan, undeliverable Distributions shall remain in the possession of the Reorganized Debtors or Liquidation Trustee, as applicable, until such time as a Distribution becomes deliverable.

For abundance of caution, the Initial Distribution to Sanchez shall be treated in all regards consistent with the Global Settlement Agreement, which characterizes the payment as damages for personal physical injuries or sickness arising out of negligence pursuant to IRS Tax Code 26 U.S.C. 104(a)(2), and shall be made payable directly to the Michael E. Sanchez Qualified Settlement Fund to protect Sanchez's rights under the IRS Tax Code.

**11.3. Fractional Payments and Application of Payments.**

If the Distribution to be received by the Holder of an Allowed Claim would be less than $25.00 on any payment date or in the aggregate, at the discretion of the Reorganized Debtors or Liquidation Trustee, as applicable, no such payment will be made to such Holder.

Whenever payment of a fraction of a dollar of value would be called for, the actual Distribution may, at the discretion of the Reorganized Debtors and/or Liquidation Trustee, as applicable, reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one-half of one dollar and a rounding up of such fraction to the nearest whole dollar if the amount is one-half or more of one dollar.

To the extent any Holder of an Allowed Claim receives a Distribution from the Reorganized Debtors or the Liquidation Trustee, such Distribution shall be applied by the recipient first to satisfy any Allowed Administrative Claims, Allowed Priority Tax Claims, or other Allowed Claims of the recipient against the Debtors which are entitled to priority under Bankruptcy Code sections 503 or 507 and, only after all such priority Claims are fully satisfied, to any Allowed Claims not entitled to such priority.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**11.4. Set Offs.** The Trustee, Reorganized Debtors, or the Liquidation Trustee, as applicable, may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim (before any Distribution is made on account of such Claim), claims of any nature whatsoever that the Debtors may have against the Holder of such Claim to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Trustee, the Liquidation or the Reorganized Debtors, as applicable, of any such Claim that it may have against such Holder.

For the abundance of caution, no set off shall apply to reduce the dollar amount of the Initial Distribution to be paid to Sanchez in accordance with the Global Settlement Agreement.

**11.5. Allocation of Distributions between Principal and Interest.** To the extent that any Allowed Claim entitled to a Distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such Distribution shall be allocated first to the principal amount of the Claim (ad determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to other such amounts.

**11.6. Withholding Taxes.** In connection with the Plan, to the extent applicable, the Reorganized Debtors and Liquidation Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtors and Liquidation Trustee, as applicable, shall be entitled to deduct any U.S. or non-U.S. federal, state, or local withholding taxes from any Distributions made with respect to Allowed Claims, as appropriate. To the extent necessary or advisable to comply with applicable law, a Holder of an Allowed Claim entitled to receive a Distribution shall not receive any Distribution unless such Holder has provided to the Reorganized Debtors and Liquidation Trustee, as applicable, such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Reorganized Debtors and Liquidation Trustee, as applicable, to comply with applicable tax reporting and withholding laws (including an IRS Form W-9 or (if the Holder is a non-U.S. Person) an appropriate IRS Form W-8 (unless such Person is exempt from information reporting requirements under the Tax Code)) and so notifies the Reorganized Debtors and Liquidation Trustee, as applicable. If such Holder does not provide such taxpayer identification number and such other information and certification reasonably requested by the Reorganized Debtors and/or Liquidation Trustee, such Holder will forfeit its interest to the Distribution and/or Liquidation Trust, as applicable, and shall not receive any Distribution. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. In connection with any Distribution, the Reorganized Debtors or Liquidation Trustee, as applicable may take whatever actions are necessary to comply with applicable U.S. federal, state, local and non-U.S. tax withholding obligations.

**Notwithstanding any other provision of this Plan or set forth in the Global Settlement Agreement, (i) each Holder of an Allowed Claim that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution; and (ii) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made**

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**arrangements satisfactory to the Reorganized Debtors or Liquidation Trustee, as applicable, for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution under this Plan.**

## 12. MISCELLANEOUS.

**12.1. Effectuating Documents; Further Transactions; Timing.** The Trustee, Reorganized Debtors, and Liquidation Trust are each authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any securities issued, transferred, or canceled pursuant to this Plan. All transactions that are required to occur on the Effective Date under the terms of this Plan shall be deemed to have occurred simultaneously. The Trustee, Reorganized Debtors, and Liquidation Trustee are authorized and directed to do such acts and execute such documents as are necessary to implement this Plan.

**12.2. Binding Effect. On the Effective Date and after the Effective Date, this Plan shall be binding upon all the Holders of all Claims against, and Equity Interests in, the Debtors and each such Holder's respective successors and assigns, notwithstanding whether or not such Holder (i) will receive or retain any property or interest in property under this Plan, (ii) has filed a proof of Claim or interest in this Chapter 11 Cases, or (iii) failed to vote to accept or reject the Plan or voted to reject the Plan.**

**12.3. Termination of Responsibilities of the Patient Care Ombudsman.** On the Effective Date, the duties and responsibilities of the Patient Care Ombudsman shall be terminated and the Patient Care Ombudsman shall be discharged from his duties as Patient Care Ombudsman and shall not be required to file any further reports or perform any additional duties as Patient Care Ombudsman. No Person may seek discovery in any form, including but not limited to by motion, subpoena, notice of deposition, or request or demand for production of documents, from the Patient Care Ombudsman or his agents, professionals, employees, or other representatives, designees, or assigns (collectively, with the Patient Care Ombudsman, the "Ombudsman Parties") with respect to any matter arising from or relating on any way to the performance of the duties of the Patient Care Ombudsman in connection with these Chapter 11 Cases. Nothing herein shall in any way limit or otherwise affect the obligations of the Patient Care Ombudsman under confidentiality agreements, if any, between the Patient Care Ombudsman and any other Person or shall in any way limit or otherwise affect the Patient Care Ombudsman's obligations under sections 332(c) and 333(c)(1) of the Bankruptcy Code or other applicable law or Bankruptcy Court orders, to maintain patient information, including patient records, as confidential, and no such information shall be released by the Patient Care Ombudsman without further order of the Bankruptcy Court.

**12.4. Exemption from Transfer Taxes.** Pursuant to Section 1146 of the Bankruptcy Code: (i) the issuance, Distribution, transfer, or exchange of Estates property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification, or recording of any lease or sublease; or (iv) the making, delivery, or recording of a deed or other instrument of

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

transfer under, in furtherance of, or in connection with, this Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing including, without limitation, all documents necessary to evidence and implement the provisions of and the Distributions to be made under the Plan, including the issuance of the Equity Interests, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real Estates transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state of local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**12.5. Governing Law.** Except to the extent that the Bankruptcy Code or other state or federal law is applicable or as provided in any contract, instrument, claim, release, or other agreement entered into in connection with this Plan or in any document which remains unaltered by this Plan, the rights, duties, and obligations of the Debtors, the Distribution Trust, the Liquidation Trust, the Reorganized Debtors, and any other Person arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law provisions. For abundance of caution, the substantive law of New Mexico shall apply to the Quintairos claims described herein, since those claims arose from the Sanchez litigation that transpired in New Mexico.

**12.6. Modification of Payment Terms.** The Liquidation Trust reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Allowed Claim at any time after the Effective Date upon the prior written consent of the Holder whose Allowed Claim treatment is being adversely affected.

**12.7. Notices.** Any notice required or permitted to be provided under this Plan shall be in writing and served by either: (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight courier service, freight prepaid as follows:

| | |
|---|---|
| If to the Trustee,<br>or Liquidation Trustee | Law Offices of Michael W. Carmel, Ltd.<br>Attn: Michael Carmel<br>80 East Columbus Avenue<br>Phoenix, Arizona 85012<br>Email: michael@mcarmellaw.com |
| With a copy to: | Garman Turner Gordon LLP<br>Attn: Gregory E. Garman, Esq.<br>Talitha Gray Kozlowski, Esq.<br>Mary Langsner, Ph.D.<br>7251 Amigo St, Suite 210<br>Las Vegas, NV 89119<br>Tel: (725) 777-3000<br>Email: ggarman@gtg.legal<br>tgray@gtg.legal<br>mlangsner@gtg.legal |

**12.8. Extension of Time.** For cause shown, any deadlines herein that are applicable to the Trustee, the Reorganized Debtors, the Liquidation Trustee, or the Liquidation Trust and which are not otherwise extendable pursuant to the terms of the Plan, may be extended by order of the Bankruptcy Court.

**12.9. Severability.** If any provision of this Plan is determined by the Bankruptcy Court to be invalid, illegal, or unenforceable or this Plan is determined to be not confirmable pursuant to Section 1129 of the Bankruptcy Code, the Bankruptcy Court, at the request of the Trustee or Liquidation Trustee shall have the power to alter and interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.10. Revocation or Withdrawal of this Plan.** The Trustee and Liquidation Trustee reserve the right to revoke or withdraw this Plan at any time prior to its substantial consummation if the Global Settlement Agreement is not approved and/or the Beazley Settlement Payment is not timely made. If this Plan is withdrawn or revoked, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person nor shall the withdrawal or revocation of this Plan prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtor. In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort and this Plan and any transaction contemplated thereby shall be inadmissible into evidence in any proceeding.

**12.11. Post-Confirmation Reporting.** Until the entry of the final decree closing the Chapter 11 Cases, the Liquidation Trustee shall comply with the Bankruptcy Code and Bankruptcy Rules post-confirmation reporting requirements. Additionally, the Liquidation Trustee shall file post-confirmation quarterly operating reports detailing receipts and disbursements (along with ending cash balance) for each calendar quarter from the date of confirmation until dismissal, conversion, or entry of a final decree closing the case no later than twenty (20) days after the expiration of the reported quarter.

**12.12. Cramdown.** In the event that any Impaired Class is determined to have rejected this Plan in accordance with Section 1126 of the Bankruptcy Code, the Trustee may invoke the provisions of Section 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan. The Trustee reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

**12.13. Quarterly Fees.** Prior to the Effective Date, the Debtors, and after the Effective Date, the Liquidation Trustee, shall pay all quarterly fees payable to the Office of the United States Trustee consistent with the sliding scale set forth in 28 U.S.C. § 1930(a)(6), and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**12.14. Conflicts.** To the extent of any conflict between this Plan and the Confirmation Order, the Confirmation Order shall govern. To the extent of any conflict between this Plan and the Confirmation Order on the one hand and the Global Settlement Agreement and the Global Settlement Order on the other hand, the Global Settlement Agreement and the Global Settlement Order shall govern.

DATED this 1st August of July, 2025.

NUMALE CORPORATION, FELICIANO NUMALE NEVADA PLLC, NUMEDICAL SC, NUMALE COLORADO SC, NUMALE FLORIDA TB PLLC, NUMALE NEBRASKA LLC, AND NUMALE NEW MEXICO SC

/s/ ____________________
Michael W. Carmel, Chapter 11 Trustee

GARMAN TURNER GORDON LLP

By: /s/ Talitha Gray Kozlowski
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Chapter 11 Trustee*

**SCHEDULE 1.1.82**
**TO PLAN OF REORGANIZATION**

**CERTAIN PRESERVED LITIGATION CLAIMS**

Except as expressly provided in the Global Settlement Agreement, nothing contained in this Plan shall be deemed a waiver or relinquishment of any Litigation Claim of the Debtors or their Estates, which Litigation Claims shall vest in the Liquidation Trust (collectively, along with the proceeds thereof).

The following is a non-exhaustive list of potential Litigation Claims for which the Debtors and their Estates may hold a claim or cause of action that are transferred to the Liquidation Trust. The Trustee reserves its right to modify this list to amend or add parties or causes of action, but disclaim any obligation to do so.

1. The Avoidance Actions;

2. The Quintairos Claims;

3. The Howard and Howard Claim;

4. The Hassoun Claim;

5. The N2 Litigation Claim;

6. All Litigation Claims against any Affiliates or Insiders of Brad Palubicki or Carlos Feliciano;

7. All Litigation Claims with respect to any of the Debtors' pre-petition merchant credit advance lenders or other lenders or creditors irrespective of whether an adversary proceeding was pending on the Effective Date;

8. All Litigation Claims against Debtors, their Affiliates, and the Insiders covered by, or for which a claim can be made with respect to, the Liability Insurance Policies, solely excluding Litigation Claims against Justin Pulliam and/or Christopher Asandra; provided, however, that such Litigation Claims shall not give rise to contribution claims by Beazley;

9. All Litigation Claims respecting any alleged theft, robbery, and/or burglary of the Debtors' Colorado clinic location occurring on or about February 3, 2025, referenced by Greenwood Village Police Department Case Report Number GV25001125, including but not limited to Zurich North America Claims No. NuMale Corporation 5630118129, and any disposition of proceeds thereof or therefrom including but not limited to the failure to turn over same to the Estates.

10. All Litigation Claims listed in each of the Debtors' Schedules;

11. All Litigation Claims relating to claims or rights the Debtors or their Estates may have to interplead third parties in actions commenced against any of the Debtors;

12. All Litigation Claims for collection of a debt or other amount owed to any of the Debtors prior to the Effective Date; and

13. All Litigation Claims arising from other rights, privileges, claims, actions, or remedies of the Debtors and/or Liquidation Trust existing on the Effective Date, whether arising at law or in equity.

There may also be other Litigation Claims which currently exist or may subsequently arise that are not set forth herein because the facts underlying such Litigation Claims are not currently known or sufficiently known by the Debtor. The failure to list any such unknown Litigation Claim herein is not intended to limit the rights of the Liquidation Trust to pursue any unknown Litigation Claim to the extent the facts underlying such unknown Litigation Claim become more fully known in the future.

Unless Litigation Claims against any individual or entity are expressly waived, relinquished, released, compromised, or settled by the Global Settlement Agreement, the Plan, or any Final Order, the Debtors and their Estates expressly reserves for the benefit of the Liquidation Trust all Litigation Claims, including, without limitation, all unknown Litigation Claims for later adjudication and therefore no preclusion doctrine (including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches) shall apply to such Litigation Claims after the confirmation or consummation of the Plan. In addition, the Debtors and their Estates expressly reserve for the benefit of the Liquidation Trust the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any individual or entity, including plaintiffs and co-defendants in such lawsuits.

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**SCHEDULE 6.1**
**PLAN OF REORGANIZATION**

**REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Subject to modification in connection with the entry of the 363 Sale Order, it is anticipated that all of the Debtors' Executory Contracts and Unexpired Leases that were not rejected prior to the Effective Date will be assumed and assigned to the prevailing bidder(s).

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**SECHEDULE 6.3**

**PLAN OF REORGANIZATION**

**CURE AMOUNTS PAYABLE BY THE REORGANIZED DEBTORS FOR ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

| Executory Contract or Unexpired Lease | Cure Amount Payable by the Reorganized Debtors Under the Plan |
|---|---|
| Lease between NuMale Corp and Prospect Rainbow LLC | $96,161.20 to cure pre- and post-petition arrearages, plus $69,062.31 as a pre-payment for the three months of rent following the Effective Date as adequate assurance of future performance |

**For any Executory Contract and/or Unexpired Lease for which no Cure payment is specifically identified on this Schedule 6.3, the Cure amount is $0.00.**

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**EXHIBIT 1**

**GLOBAL SETTLEMENT AGREEMENT**

Garman Turner Gordon
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

# EXHIBIT 3

EXHIBIT 3

Honorable Natalie M. Cox
United States Bankruptcy Judge

Entered on Docket
October 07, 2025

GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel,*
*Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>AFFECTS THIS DEBTOR, ☐<br><br>AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐<br><br>NUMEDICAL SC, ☐<br><br>NUMALE COLORADO SC, ☐<br><br>NUMALE FLORIDA TB PLLC, ☐<br><br>NUMALE NEBRASKA LLC, ☐<br><br>NUMALE NEW MEXICO SC, ☐<br><br>NUMALE ALL DEBTORS, ☒<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC,<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Confirmation Hearing:<br>Date: September 24, 2025<br>Time: 9:30 a.m. |

**ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION AND APPROVING ON A FINAL BASIS THE DISCLOSURE STATEMENT TO ACCOMPANY JOINT PLAN OF REORGANIZATION**

Michael W. Carmel, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC filed the *Joint Plan of Reorganization* [ECF No. 434] (together with all exhibits and the Plan Supplement filed at ECF No. 595, the "Plan") and the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435] (the "Disclosure Statement").

In accordance with the *Findings of Fact and Conclusions of Law in Support of the Order Confirming Joint Plan of Reorganization and Approving on a Final Basis the Disclosure Statement to Accompany Joint Plan of Reorganization* (the "FFCL") entered concurrently herewith, it having been determined after a hearing on notice that the requirements for final approval of the Disclosure Statement set forth in 11 U.S.C. § 1125 and for confirmation of the Plan set forth in 11 U.S.C. § 1129(a) and (b) of the Bankruptcy Code have been satisfied, and good cause appearing;

**IT IS HEREBY ORDERED** that the Plan, as modified by the FFCL, is confirmed.

**IT IS FURTHER ORDERED** that the Disclosure Statement is approved on a final basis.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED BY:

GARMAN TURNER GORDON LLP

By: */s/ Gregory E. Garman*
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Chapter 11 Trustee*



GARMAN TURNER GORDON
Attorneys at Law
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court waived the requirement of approval under LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated in the order.

| | |
|---|---|
| Steven B. Scow, Esq.<br>*Attorneys for Christopher Asandra* | APPROVED |
| Matthew C. Zirzow, Esq.<br>Summer Craig, Esq.<br>*Attorneys for Certain Underwriters at Lloyd's London Syndicates 623/2623* | APPROVED |
| Ryan Andersen, Esq.<br>*Attorneys for Justin Pulliam* | APPROVED |
| Justin C. Valencia, Esq.<br>Alyssa Rogan, Esq.<br>*Attorneys for U.S. Trustee-LV-11* | APPROVED |
| Matthew Johnson, Esq.<br>*Attorneys for Prospect Rainbow, LLC* | APPROVED |
| Joseph Went, Esq.<br>*Attorneys for Brad Palubicki* | APPROVED |
| Ogonna Brown, Esq.<br>Christina Fox, Esq.<br>*Attorneys for Michael E. Sanchez* | APPROVED |
| Ivan Gold, Esq.<br>Louis Bubala, Esq.<br>*Attorneys for Mayfair Mall LLC* | DISAPPROVED |
| David Stephens, Esq.<br>*NewTeck Bank, N.A.* | WAIVED |

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

###



GARMAN TURNER GORDON
Attorneys at Law
7251 Amigo St., Ste. 210
Las Vegas, NV 89119
725-777-3000

Honorable Natalie M. Cox
United States Bankruptcy Judge

Entered on Docket
October 07, 2025

GARMAN TURNER GORDON LLP
GREGORY GARMAN, ESQ.
Nevada Bar No. 6654
Email: ggarman@gtg.legal
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
MARY LANGSNER, Ph.D.
Nevada Bar No. 13707
mlangsner@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Michael Carmel, Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NUMALE CORPORATION,<br><br>AFFECTS THIS DEBTOR, ☐<br><br>AFFECTS FELICIANO NUMALE NEVADA PLLC, ☐<br><br>NUMEDICAL SC, ☐<br><br>NUMALE COLORADO SC, ☐<br><br>NUMALE FLORIDA TB PLLC, ☐<br><br>NUMALE NEBRASKA LLC, ☐<br><br>NUMALE NEW MEXICO SC, ☐<br><br>NUMALE ALL DEBTORS, ☒<br><br>Debtors. | Lead Case No.: 25-10341-nmc<br>Chapter 11<br><br>*Jointly administered with:*<br><br>Feliciano NuMale Nevada PLLC,<br>Case No. 25-10342-nmc<br><br>NuMedical SC<br>Case No. 25-10343-nmc<br><br>NuMale Colorado SC,<br>Case No. 25-10344-nmc<br><br>NuMale Florida TB PLLC,<br>Case No. 25-10345-nmc<br><br>NuMale Nebraska LLC<br>Case No. 25-10346-nmc<br>NuMale New Mexico SC<br>Case No. 25-10347-nmc<br><br>Confirmation Hearing:<br>Date: September 24, 2025<br>Time: 9:30 a.m. |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THE ORDER CONFIRMING JOINT PLAN OF REORGANIZATION AND APPROVING ON A FINAL BASIS THE DISCLOSURE STATEMENT TO ACCOMPANY JOINT PLAN OF REORGANIZATION**

Michael W. Carmel, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estates ("Estates") of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), having proposed the *Joint Plan of Reorganization* [ECF No. 434] (together with all exhibits thereto, and as may be amended, modified, or supplemented, including via the *Notice of Filing Plan Supplement to Joint Plan of Reorganization* [ECF No. 595], the "Plan"[1]) and the *Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 435] (with all exhibits thereto, the "Disclosure Statement"), and the Court having conducted a hearing to consider confirmation of the Plan on September 24, 2025 (the "Confirmation Hearing"), and the Court having considered (i) the *Order Conditionally Approving Disclosure Statement to Accompany Joint Plan of Reorganization* [ECF No. 447] (the "Solicitation Procedures Order"); (ii) the *Notice of: (i) Hearing to Consider Final Approval of Conditionally Approved Disclosure Statement and Confirmation of Joint Plan of Reorganization; (ii) Procedures for Objecting to Final Approval of Conditionally Approved Disclosure Statement and Confirmation of the Plan and Evidence in Support Thereof; and (iii) Procedures and Deadlines* [ECF No. 449] (the "Confirmation Notice"); (iii) the *Certification of Acceptance and Rejection of Joint Plaint of Reorganization (Ballot Summary)* [ECF No. 611] (the "Ballot Summary"); (iv) *Declaration of Michael W. Carmel in Support of Plan Confirmation and Final Approval of the Disclosure Statement* [ECF No. 622] (the "Carmel Decl."); (v) *Brief in Support of Confirmation of Joint Plan of Reorganization* [ECF No. 621] (the "Confirmation Brief"); (vi) the *Stipulation Resolving Confirmation Objection* [ECF No. 598] and *Notice of Withdrawal of Creditor Prospect Rainbow, LLC's Limited Objection to the Joint Plan of Reorganization* [ECF No. 596]; (vii) Michael Sanchez's *Joinder in Support of Plan Confirmation* [ECF No. 601]; (viii) Justin Pulliam's joinder

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

in support of the Trustee's Confirmation Brief [ECF No. 627]; (ix) Michael Sanchez's joinder in support of the Trustee's Confirmation Brief [ECF No. 628]; (x) Newtek Bank, N.A.'s joinder in support of the Trustee's Confirmation Brief [ECF No. 630]; (xi) the *Objection of Mayfair Mall, LLC to Confirmation of Proposed Joint Plan of Reorganization* (the "Mayfair Objection") and supporting declaration [ECF Nos. 623 and 624]; (xii) the Trustee's supplemental brief in support of confirmation and reply to the Mayfair Objection and supplemental declaration [ECF Nos. 651 and 652]; (xiii) *The United States Trustee's Reservation of Rights* [ECF No. 647]; (xiv) the notice of revised Plan Schedules 6.1 and 6.3 [ECF No. 648]; (xv) the *Notice of Proposed Confirmation Order and Findings of Fact and Conclusions of Law* [ECF No. 650]; (xvi) all other relevant papers and pleadings on file in the Chapter 11 Cases, including the numerous claim settlements; and (xvii) the arguments of counsel presented at the Confirmation Hearing; it appearing to the Court that notice of the Confirmation Hearing having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Plan Confirmation and the other evidence presented at the Confirmation Hearing having established just cause for the relief granted herein; and the Court having considered any and all responses and objections to the Plan and its Confirmation, and all such objections being consensually resolved or withdrawn, or otherwise addressed as set forth herein and on the record at the Confirmation Hearing and thereafter and herein and hereby overruled in their entirety to the extent not consensually resolved prior to the entry of this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**A. Findings and Conclusions.**

1. The findings and conclusions set forth herein, in the recitals, and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under FED. R. CIV. P. 52, made applicable herein by FED. R. BANKR. P. 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

2. The Court further relies upon and incorporates herein the analysis set forth in the Confirmation Brief and the Carmel Decl.

**B. Unrebutted Evidence.**

3. The testimony and documentary evidence introduced and admitted into evidence by the Trustee at the Confirmation Hearing, including through the Carmel Decl., were unrebutted, including without limitation the liquidation analysis prepared by Trustee.

**C. Jurisdiction, Venue, and Core Proceeding.**

4. The Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. §§ 1334 and 157. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code[2] and shall be confirmed. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of this Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

**D. Eligibility for Relief.**

5. The Debtors were and are entities eligible for relief under Section 109 of the Bankruptcy Code.

**E. Commencement and Administration of the Debtors' Chapter 11 Cases.**

6. On January 22, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (collectively, the "Chapter 11 Cases"). *See, e.g.*, ECF No. 1.

7. On April 1, 2025, this Court entered its *Interim Order Directing Joint Administration of Chapter 11 Cases*. *See* ECF No. 130.

8. On April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights, thereby directing the appointment of a Chapter 11 trustee for the Debtors' Estates*. *See* ECF No. 132.

9. On April 2, 2025, the United States Trustee for Region 17 ("US Trustee"),

[2] 11 U.S.C. §§ 101 – 1532, et seq. ("Bankruptcy Code").



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

appointed the Trustee as the Chapter 11 trustee for Debtors' Estates. *See* ECF No. 140.

10. On April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving the Trustee's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

11. Also on April 7, 2025, the Trustee filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 Trustee for the Debtors' Estates. *See* ECF No. 157.

12. On April 28, 2025, the Court entered its *Final Order Approving Motion for Order Directing Joint Administration of Debtors' Chapter 11 Cases Under Federal Rule of Bankruptcy Procedure 1015(b)*. See, e.g., ECF No. 209.

**F. <u>Burden of Proof – Confirmation of the Plan.</u>**

13. The Trustee as the proponent of the Plan has met his burden of proving the applicable elements of Sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation in the Ninth Circuit.

**G. <u>Notice.</u>**

14. Due, adequate, and sufficient notice of the Plan, the Disclosure Statement, and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Plan and objecting to the final approval of the Disclosure Statement, and all other materials distributed by the Trustee in connection with the Confirmation in compliance with the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"), have been provided to all parties in interest and all necessary parties. *See* ECF Nos. 540, 541, and 609. Such notice was adequate and sufficient under the facts and circumstances of these Chapter 11 Cases pursuant to 11 U.S.C. § 1128, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**H. <u>Ballots.</u>**

15. The only classes of Claims entitled to vote to accept or reject the Plan are Class 9 (Sanchez Claim), Class 10 (General Unsecured Claims), Class 11 (Intercompany Claims), and Class 12 (Subordinated Claims) (collectively, the "<u>Voting Classes</u>").



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

16. As approved by the Solicitation Procedures Order, the ballots that the Trustee used to solicit votes to accept or reject the Plan from Holders of Claims in the Voting Classes adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for Holders of Claims in the Voting Classes to vote to accept or reject the Plan.

**I. Solicitation.**

17. As described in the Carmel Decl., the solicitation of votes on the Plan complied with the solicitation procedures set forth in the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada ("Local Rules"), and any other applicable rules, laws, and regulations.

18. Following entry of the Solicitation Procedures Order, the Plan (in the form at ECF No. 434), the Disclosure Statement, the Confirmation Hearing Notice, and the ballots were transmitted and served to all Holders of Claims in the Voting Classes, in compliance with the Bankruptcy Code, including Sections 1125 and 1126 thereof; the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018; the Local Rules, including Local Rule 3017; the Solicitation Procedures Order; and any applicable nonbankruptcy law (collectively, the "Solicitation Packages"). *See* ECF No. 451. Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further or additional notice is required.

19. Additionally, copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, and the Confirmation Notice were also mailed to the Holders in the Non-Voting Classes, as well as the entire creditor matrix in these Chapter 11 Cases. *See* ECF No. 451. Thus, transmission and service of the Plan, Disclosure Statement, Solicitation Procedures Order, and the Confirmation Hearing Notice were timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further or additional notice is required.

20. As set forth in the Carmel Decl., the Solicitation Packages were distributed to Holders of Claims in the Voting Classes that held a Claim as of the Voting Record Date of July 1,

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

2025.

21. As approved by the Solicitation Procedures Order, the period during which the Trustee solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

22. Under Section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Newtek Secured Claim), Class 2 (Kalamata Claim), Class 3 (EBF Holdings Claim), Class 4 (Fox Funding Claim), Class 5 (Top Tier Claim), Class 6 (LCF Group Claim), Class 7 (Ford Motor Claim), and Class 8 (Priority Unsecured Claims), are Unimpaired and conclusively presumed to have accepted the Plan.

23. Pursuant to Bankruptcy Rule 3017(d), the Trustee is not required to transmit a Solicitation Package to the non-voting Classes. Holders of Claims in Class 13 (Equity Interests in the Debtors) are deemed to reject the Plan.

**J. Voting.**

24. As evidenced by the Carmel Decl. and approved by the Solicitation Procedures Order, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Procedures Order, the Disclosure Statement, and applicable nonbankruptcy laws, rules, and regulations.

**K. Compliance with Bankruptcy Rule 3016.**

25. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Trustee as the plan proponent. The Trustee appropriately filed the Disclosure Statement and the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

**L. Plan Modifications Addressing US Trustee Concerns.**

26. As set forth on the record at the Confirmation Hearing, the US Trustee informally raised several concerns with respect to confirmation of the Plan. Accordingly, with the consent of

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

the US Trustee and the parties to the Global Settlement Agreement, the Plan shall be, and here is, modified as follows, which modification does not alter the treatment of Claims or Equity Interests and does not require re-solicitation.

27. The following sentence in Section 5.3 of the Plan ("[n]otwithstanding the foregoing substantive consolidation for plan purposes, fees payable, pursuant to 28 U.S.C. § 1930, shall be due and payable by each individual Debtor"), and Sections 12.3, 12.11, and 12.13 of the Plan, are deleted in their entirety and replaced with the following provisions (the "Alternative Combined Provision"):

- Until the Effective Date of a confirmed plan, the debtors through the Chapter 11 Trustee shall continue to contemporaneously file separate UST Form 11-MOR, Monthly Operating Reports, when they become due.

- To comply with 11 U.S.C. § 1129(a)(12), all fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date.

- Within two (2) business days of the Effective Date, the Reorganized Debtors and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred.

- Each Reorganized Debtor and the Liquidating Trust through the respective Chapter 11 Trustee and/or the Liquidating Trustee or successor Liquidating Trustee or other post-confirmation entity created pursuant to the confirmed plan through its authorized party who has been charged with administering the confirmed plan shall contemporaneously file separate UST Form 11-PCR, Post-Confirmation Reports, that shall include all of their respective receipts and disbursements (along with ending cash balance) for that quarter and shall be filed on a quarterly basis in the Chapter 11 cases until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case. If the Court vacates any of the orders or reopens the case for reasons other than administrative purposes, i.e., anything involving substantive judicial relief that is not administrative, then the filing of Post-Confirmation Reports shall resume.

- Each Reorganized Debtor and the Liquidating Trust through the respective Chapter 11 Trustee and/or the Liquidating Trustee or successor Liquidating Trustee or other post-confirmation entity created pursuant to the confirmed plan through its authorized party who has been charged with administering the confirmed plan shall be jointly and severally liable for the payment of all United States Trustee quarterly fees due pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date.

- All fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date shall be paid on a quarterly basis until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case. If the Court vacates any of the orders or reopens the case for reasons other than administrative purposes, i.e., anything involving substantive judicial relief that is not administrative, then the



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

payment of United States Trustee quarterly fees shall resume.

- The reporting requirements and payment of United States Trustee quarterly fees described herein shall comply with the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for the District of Nevada.

28. The following Section 7.4 is added to the Plan:

**7.4 Effective Date.** Subject to all of the conditions set forth in Section 7.2 of the Plan occurring, the Effective Date shall occur on the earlier of: (i) the 363 Sale closing; and (ii) October 24, 2025.

29. Section 8.7 of the Plan is deleted and replaced in its entirety with the following provision (the "Revised Exculpation Provision"):

8.7 **Exculpation**. From and after the Effective Date, neither Debtors, the Trustee, Sanchez, Beazley, and their respective professionals nor any of their respective present or former members, directors, officers, managers, employees, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or Equity Interest or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward), the Chapter 11 Cases, the pursuit of confirmation of this Plan (including the pursuit of the Global Settlement Agreement and Global Settlement Order incorporated into the Plan), or the consummation of this Plan, except for gross negligence and willful misconduct. Notwithstanding the foregoing, under no condition shall this exculpation apply to any claims previously asserted or which can be asserted against Brad Palubicki, Carlos Feliciano, any entity controlled by Messrs. Palubicki and/or Feliciano, or the Palubicki and Feliciano Claims, nor with respect to any of the preserved Litigation Claims, including the Litigation Claims identified on Schedule 1.1.82 hereto.

Notwithstanding anything to the contrary herein, nothing in the Plan shall release, discharge, enjoin, or otherwise modify or affect the rights of Beazley to pursue the Palubicki and Feliciano Claims or any claims against NuMale Chicago LLC, NuMale Medical Center, LLC, and NuMale North Carolina, PLLC.

**M. Objections Overruled.**

30. Any resolutions of objections to Confirmation set forth in filings with this Court or otherwise explained on the record at the Confirmation Hearing are hereby incorporated by reference. All remaining unresolved objections, statements, informal objections, and reservations of rights related to the Plan, including the Mayfair Objection, are hereby overruled on the merits, with prejudice, in the entirety.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

**N. Compliance with Bankruptcy Code Requirements – Section 1129(a)(1).**

31. The Plan complies with all applicable provisions of the Bankruptcy Code as required by Section 1129(a)(1) of the Bankruptcy Code.

**a. Proper Classification – Sections 1122 and 1123.**

32. The Plan satisfies the requirements of Sections 1122(a) and 1123(a)(1) of the Bankruptcy Code. Section 3 of the Plan provides for the separate classification of Claims and Equity Interests into thirteen (13) Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Equity Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Equity Interests. Each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.

**b. Specified Unimpaired Classes – Section 1123(a)(2).**

33. The Plan satisfies the requirements of Section 1123(a)(2) of the Bankruptcy Code.

34. Section 3 of the Plan specifies that Claims and Equity Interests, as applicable, in the following Classes (collectively, the "Unimpaired Classes") are Unimpaired under the Plan within the meaning of Section 1124 of the Bankruptcy Code:

| Class | Description | Designation |
|---|---|---|
| Class 1 | Newtek Secured Claim | Unimpaired |
| Class 2 | Kalamata Claim | Unimpaired |
| Class 3 | EBF Holdings Claim | Unimpaired |
| Class 4 | Fox Funding Claim | Unimpaired |
| Class 5 | Top Tier Claim | Unimpaired |
| Class 6 | LCF Group Claim | Unimpaired. |
| Class 7 | Ford Motor Claim | Unimpaired |
| Class 8 | Priority Unsecured Claims | Unimpaired |

35. Additionally, Section 2 of the Plan specifies that Allowed Administrative Claims and Priority Tax Claims will be satisfied in accordance with the terms of the Plan (unless otherwise agreed by the Trustee, Reorganized Debtors, or Liquidation Trustee, as applicable, and the relevant

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Holder(s) in accordance with the terms of the Plan), although these Claims are not classified under the Plan.

**c. Specified Treatment of Impaired Classes – Section 1123(a)(3).**

36. The Plan satisfies the requirements of Section 1123(a)(3) of the Bankruptcy Code. Section 3 of the Plan specifies that Claims and Equity Interests, as applicable, in the following five Classes (collectively, the "Impaired Classes") are Impaired under the Plan within the meaning of Section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Description | Designation |
|---|---|---|
| Class 9 | Sanchez Claim | Impaired; solicitation required |
| Class 10 | General Unsecured Claims | Impaired; solicitation required |
| Class 11 | Intercompany Claims | Impaired; solicitation required |
| Class 12 | Subordinated Claims | Impaired; solicitation required |
| Class 13 | Equity Interests | Impaired; deemed rejected |

**d. No Discrimination – Section 1123(a)(4).**

37. The Plan satisfies the requirements of Section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest.

**e. Adequate Means for Plan Implementation – Section 1123(a)(5).**

38. The Plan satisfies the requirements of Section 1123(a)(5) of the Bankruptcy Code. The provisions in Section 5 and elsewhere in the Plan, and in the exhibits and attachments to the Plan and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including payment of certain Allowed Claims on the Effective Date from the Distributable Assets (i.e., (i) all Litigation Claims; (ii) all claims, rights, and recoveries available with respect to the Liability Insurance Policies; (iii) the Beazley Settlement Payment; (iv) the New Value Contribution; and (v) the proceeds from the 363 Sale), the creation of a Liquidation Trust to liquidate or otherwise dispose of the Liquidation Trust Assets, initially consisting of the Liquidation Trust Reserve plus all Distributable Assets remaining after (i) payment of the

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the Disputed Claim Reserve, and the reorganization of Debtors to effectuate the 363 Sale.

39. Additionally, the Plan calls for the substantive consolidation, pursuant to Section 105 of the Bankruptcy Code, on the Effective Date, of the Debtors' Estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting, confirmation, and Distribution purposes. As such, on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall hereby be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims. All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors are hereby automatically expunged such that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the obligations of any other Debtor are hereby eliminated, such that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, are henceforth treated as one single collective obligation of the Debtors. Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under this Plan are hereby deemed cured as of the Effective Date.

**f. Voting Power of Equity Securities – Section 1123(a)(6).**

40. The Plan satisfies the requirements of Section 1123(a)(6) of the Bankruptcy Code, as no party is authorized to issue nonvoting equity securities under the Plan and Section 5.16 of the Plan provides that each of the Debtors' operating agreements or articles of incorporation, as applicable, shall be deemed to include a provision prohibiting the issuance of nonvoting equity securities and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code.

**g. Directors and Officers – Section 1123(a)(7).**

41. The Plan satisfies the requirements of Section 1123(a)(7) of the Bankruptcy Code. The identity and powers of the Liquidation Trustee were disclosed in the Plan and the Liquidation Trust Agreement was filed in the Plan Supplement. The selection of the Liquidation Trustee is

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

consistent with the interests of Holders of Claims and Equity Interests and with public policy. Additionally, the Plan clearly provides in Section 5.16 that Michael W. Carmel, the Trustee, is shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law and is hereby authorized to exercise all of the rights and powers of as managers or directors, as applicable, as provided by the Plan, including effectuation of the 363 Sale.

**h. <u>Impairment/Unimpairment of Classes – Section 1123(b)(1).</u>**

42. The Plan is consistent with Section 1123(b)(1) of the Bankruptcy Code. Section 3 of the Plan impairs or leaves Unimpaired each Class of Claims and Equity Interests.

**i. <u>Assumption and Rejection – Section 1123(b)(2).</u>**

43. The Plan is consistent with Section 1123(b)(2) of the Bankruptcy Code. Section 6 of the Plan provides for the assumption, effective as of the Effective Date, of the Debtors' Executory Contracts and Unexpired Leases that exist on the Confirmation Date, and provides they shall be deemed assumed by the respective Debtor(s) on the Effective Date and assigned to the prevailing bidder(s) in connection with the 363 Sale, except for: (i) the Beazley Policies, (ii) Executory Contracts and Unexpired Leases specifically addressed in the Plan or set forth on the Schedule 6.1 of Rejected Executed Contracts and Unexpired Leases, (iii) those that have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto, and (iv) those that have been assumed by order of the Bankruptcy Court.

44. **Schedule 6.1 to the Plan.** Schedule 6.1 at ECF No. 434 p. 54 of 56 (*Rejected Executory Contracts and Unexpired Leases*) is hereby replaced in its entirety by the Schedule 6.1 appended to this Confirmation Order as **Exhibit 1.**

45. **Schedule 6.3 to the Plan.** Schedule 6.3 at ECF No. 434 p. 55 of 56 (*Cure Amounts Payable By the Reorganized Debtors for Assumed Executory Contracts and Unexpired Leases*) is hereby replaced in its entirety by the Schedule 6.3 appended to this Confirmation Order as **Exhibit 2**.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

**j. <u>Compromise, Settlement, Release, Exculpation and Injunction – Section 1123(b)(3).</u>**

46. The Plan is consistent with Section 1123(b)(3) of the Bankruptcy Code. Pursuant to Section 1123 of the Bankruptcy Code, and in consideration of the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. The compromise and settlement of such Claims and Equity Interests embodied in the Plan and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Equity Interests, and are fair, equitable, and reasonable.

47. Sections 8.2, 8.5, 8.6, and 8.7 of the Plan, as expressly modified in this Confirmation Order, provide the following release, discharge, injunction, and exculpation as granted by the Plan (collectively, the "<u>Release Provisions</u>"). The Confirmation Hearing Notice sent to Holders of Claims and Equity Interests, and all creditors and parties in interest in these Chapter 11 Cases, unambiguously and prominently stated that the Plan contains the Release Provisions and provided therein a copy of the Release Provisions excerpted from the Plan. The Trustee has satisfied the applicable standard with respect to the propriety of the Release Provisions. Such provisions are a necessary and integral element of the Plan and are fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests. Also, the Release Provisions are: (a) in exchange for the good and valuable consideration provided; (b) a good faith settlement and compromise of the Claims released under the Plan; and (c) given, and made, after due notice and opportunity for hearing. Creditors have voted in favor of the Plan, including the Release Provisions. The Plan, including the Release Provisions, was negotiated by sophisticated parties represented by able counsel. The Release Provisions are therefore the result of an arm's-length negotiation process.

48. Further, all creditors and parties in interest were provided notice of the Chapter 11 Cases, the Plan, and the deadline to object to confirmation of the Plan. Additionally, the Release Provisions of the Plan were conspicuous, emphasized with boldface type in the Disclosure

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Statement, and were in the Confirmation Notice.

49. Further, the Revised Exculpation Provision is appropriate under applicable law because the exculpated parties are limited to fiduciaries of the Estates, and the other primary stakeholders in the Global Settlement Agreement (Sanchez and Beazley) that were necessary to the Plan, and because the provision was proposed in good faith, is appropriately limited in scope, and includes a carve-out for gross negligence and willful misconduct. The Revised Exculpation Provision is consistent with and satisfies the standards set forth in *Blixseth v. Credit Suisse,* 961 F.3d 1074 (9th Cir. 2020), and as clarified in *In re Astria Health*, 623 B.R. 793 (Bankr. E.D. Wash. 2021).

50. The exculpated parties subject to the Revised Exculpation Provision have, and, upon entry of this Confirmation Order will be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation or such distributions made pursuant to the Plan.

51. The limitation of liability of the Liquidation Trustee described in Section 8.3 of the Plan is also appropriate under applicable law because it is essential to protect the Liquidation Trustee who is effectuating the Plan and administering and overseeing the Liquidation Trust, because it was proposed in good faith, because it is appropriately limited in scope, and because it includes a carve-out for gross negligence, willful misconduct, intentional breaches of the Global Settlement Agreement or the Liquidation Trust Agreement, and fraud. For the avoidance of doubt, to the extent there is any conflict between Section 8.3 of the Plan and Section 4.1 of the revised Liquidation Trust Agreement attached hereto as Exhibit 3, Section 4.1 of the Liquidation Trust Agreement shall control.

52. The Court has scheduled the 363 Sale auction and sale hearing to occur before the Plan's Effective Date. The Plan is effectuating a liquidation, and Sections 8.5 and 8.6 of the Plan shall be stricken in their entirety and of no force and effect in accordance with Section 1141(d)(3).

53. Except as otherwise provided herein, as of the Effective Date, all releases, waivers,



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

discharges, exculpations, and injunctions set forth in the Plan, as expressly modified by this Confirmation Order, shall be effective and binding on all persons and entities and any representatives thereof. The Plan and this Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for in, or resolved pursuant to, the Plan and/or this Confirmation Order, including the Release Provisions, as modified by this Confirmation Order.

**k. Additional Plan Provisions – Section 1123(b)(6).**

54. The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1123(b)(6) of the Bankruptcy Code.

**O. Trustee's Compliance with 11 U.S.C. § 1129(a)(2).**

55. The Trustee and his agents have complied in good faith with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of 11 U.S.C. § 1129(a)(2). Specifically:

a. The Debtors are each an eligible debtor under 11 U.S.C. § 109, and the Trustee is a proper proponent of the Plan under 11 U.S.C. § 1121(a);

b. The Trustee has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c. The Trustee has complied with the applicable provisions of the Bankruptcy Code, including 11 U.S.C. §§ 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy laws, rules, and regulations, the Solicitation Procedures Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**P. Plan Proposed in Good Faith – Section 1129(a)(3).**

56. The Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code. The Trustee has proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the process leading to Confirmation, including the support of the Voting Classes for the Plan, and the transactions to be implemented pursuant thereto. These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

the Trustee to implement an orderly liquidation of Litigation Claims through the Liquidation Trust, to substantively consolidate the Estates for confirmation purposes, and to reorganize the Debtors to effectuate and close the 363 Sale, before the Reorganized Debtors are ultimately wound down.

**Q. Payment for Services or Costs and Expenses – Section 1129(a)(4).**

57. The procedures set forth in the Plan for the Court's review and ultimate approval of the Administrative Claims to be paid by the Estates or the Liquidation Trust, as the case may be, in connection with the Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, in either instance, incurred in connection with the Chapter 11 Cases through the Effective Date, satisfy the objectives of, and are in compliance with, Section 1129(a)(4) of the Bankruptcy Code.

**R. Directors, Officers, and Insiders – Section 1129(a)(5).**

58. The Trustee has satisfied the requirements of 11 U.S.C. § 1129(a)(5). The identity and powers of the Liquidation Trustee were disclosed in the Plan and the Liquidation Trust Agreement was filed in the Plan Supplement. Additionally, the Plan discloses that Michael W. Carmel, the Trustee, shall have sole control and authority over each of the Reorganized Debtors and their property and shall be deemed to have been admitted as the manager or director, as applicable, of each Debtor under applicable non-bankruptcy law. The selections are consistent with the interest of Holders of Claims and Equity Interests and with public policy.

**S. No Rate Changes – Section 1129(a)(6).**

59. Section1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**T. Best Interest of Creditors – Section 1129(a)(7).**

60. The Plan satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code. The liquidation analyses attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, and credible as of the dates such analyses or evidence were prepared, presented, or proffered; (b) utilize reasonable and appropriate

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Allowed Claim or Equity Interest in each Class will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

**U. <u>Acceptance by Certain Classes – Section 1129(a)(8).</u>**

61. Classes 1 through 8 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with Section 1126(f) of the Bankruptcy Code. The Voting Classes have voted to accept the Plan. Class 13 is not receiving or retaining any property under the Plan on account of their Equity Interests under the Plan and is deemed not to have accepted the Plan in accordance with Section 1126(g) of the Bankruptcy Code. Notwithstanding the deemed rejection of the Plan by Class 13, the Plan is confirmable as a result of its satisfaction of Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**V. <u>Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code – Section 1129(a)(9).</u>**

62. The treatment of Administrative Claims and Priority Tax Claims under Section 2 of the Plan, and of Priority Unsecured Claims under Section 3 of the Plan, satisfies the requirements of, and complies in all respects with, Section 1129(a)(9) of the Bankruptcy Code.

**W. <u>Acceptance by at Least One Impaired Class – Section 1129(a)(10).</u>**

63. The Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Carmel Decl., the Voting Classes 9 and 10, which are impaired, voted to accept the Plan by the requisite numbers and amounts, determined without including any acceptance of the Plan by any insider (as that term is defined in Section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code.

**X. <u>Feasibility – Section 1129(a)(11).</u>**

64. The Plan satisfies the requirements of Section 1129(a)(11) of the Bankruptcy Code. The Global Settlement Agreement was approved by the Global Settlement Order, resulting in the $108.5 million Beazley Settlement Payment being made to the Estates, which funds shall be used

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

to satisfy the payment obligations under the Plan. Additionally, the Plan provides for the 363 Sale, which will produce additional value to facilitate payments on account of Allowed Claims in accordance with the Plan. Finally, the Plan provides for the establishment of the Liquidation Trust to prosecute litigation claims, which recovery will further be utilized to satisfy the Allowed Claims in accordance with the terms of the Plan and the Liquidation Trust Agreement. Accordingly, the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, except as provided in the Plan.

**Y. Payment of Fees – Section 1129(a)(12).**

65. Having incorporated Alternative Combined Provision into the Plan, the Plan satisfies the requirements of Section 1129(a)(12) of the Bankruptcy Code.

**Z. Continuation of Retiree Benefits – Section 1129(a)(13).**

66. Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits (as defined in Section 1114 of the Bankruptcy Code) at levels established pursuant to Section 1114 of the Bankruptcy Code. Here, the Plan does not alter retiree benefits, to the extent such benefits exist and are provided by the Debtors. The Plan therefore satisfies the requirements of Section 1129(a)(13) of the Bankruptcy Code.

**AA. Non-Applicability of Certain Sections – Sections 1129(a)(14), (15), and (16).**

67. Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**BB. "Cram Down" Requirements Satisfied – Section 1129(b).**

68. The requirements of Section 1129(b) of the Bankruptcy Code have been satisfied with respect to Class 13 because the Plan does not discriminate unfairly, and is fair and equitable, with respect to this Class. The Plan follows the "absolute priority" rule with respect to Class 13 because no Class junior to this Classes will receive any distribution under the Plan on account of junior claims or interests, and Class 13 is fairly excluded from the other Classes under the Plan based on its legal character and the circumstances of these Chapter 11 Cases.



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

**CC. Only One Plan – Section 1129(c).**

69. The Plan satisfies the requirements of Section 1129(c) of the Bankruptcy Code. The Plan is the only current chapter 11 plan filed in the Debtors' Chapter 11 Cases.

**DD. Principal Purpose of the Plan – Section 1129(d).**

70. The Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code. As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

**EE. Not Small Business Case – Section 1129(e).**

71. Section 1129(e) of the Bankruptcy Code does not apply to these Chapter 11 Cases as these are not small business cases.

**FF. Good Faith Solicitation – Section 1125(e).**

72. The Trustee has acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of his respective activities relating to support and consummation of the Plan, and solicitation of acceptances of the Plan, and is entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code.

**GG. Satisfaction of Confirmation Requirements.**

73. Based on the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in Section 1129 of the Bankruptcy Code. Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon all holders of Claims and Equity Interests, including holders of Claims and Equity Interests that voted to reject the Plan.

**HH. Plan Modifications Relating to Brad Palubicki and Carlos Feliciano.**

74. Notwithstanding anything contrary in the Plan, any Claims asserted by Brad Palubicki against the Estates shall be treated in accordance with the *Stipulation Regarding Brad Palubicki Claims* [ECF No. 666-1].

75. Notwithstanding anything contrary in the Plan, any Claims asserted by Carlos Feliciano against the Estates shall be treated in accordance with the *Stipulation Regarding Carlos*



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

*Feliciano Claims* [ECF No. 667-1].

**II. Modification of Section 5.12 of the Plan.**

76. Section 5.12 of the Plan is deleted and replaced in its entirety with the following provisions:

> **5.12. Prosecution of the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims.**[3] In exchange for the benefits and releases provided in the Global Settlement Agreement, the Liquidation Trust and the NuMale Settling Defendants shall jointly prosecute their respective Quintairos Claims and Quintairos Non-Debtor Claims, which claims shall be jointly prosecuted under the sole direction and control of the Liquidation Trustee. In exchange for the benefits and releases received under the Global Settlement Agreement, the NuMale Settling Defendants agree that the Liquidation Trustee shall have sole authority to retain counsel, determine litigation strategy, engage in settlement negotiations, approve a settlement, and/or make other decisions with respect to such joint litigation of the Quintairos Claims and Quintairos Non-Debtor Claims, though the Liquidation Trustee agrees to consult with, and keep informed, the NuMale Settling Defendants regarding ongoing negotiations, strategy, and any resolution or settlement.
>
> Additionally, the Liquidation Trust, Brad Palubicki, and Carlos Feliciano shall jointly prosecute their respective Quintairos Claims and Quintairos PF Claims, which claims shall be jointly prosecuted under the sole direction and control of the Liquidation Trustee. Brad Palubicki and Carlos Feliciano agree that the Liquidation Trustee shall have sole authority to retain counsel, determine litigation strategy, engage in settlement negotiations, approve a settlement, and/or make other decisions with respect to such joint litigation of the Quintairos Claims, the Quintairos Non-Debtor Claims, and Quintairos PF Claims, though the Liquidation Trustee agrees to consult with, and keep informed Brad Palubicki and Carlos Feliciano regarding ongoing negotiations, strategy, and any resolution or settlement.
>
> The NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano shall fully cooperate with, and assist the Liquidation Trustee in, prosecuting the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims, including in connection with providing documents and testimony necessary for the successful prosecution of such claims.

[3] "Quintairos PF Claims" means all rights, claims, and causes of action against Quintairos, Prieto, Wood & Boyer, P.A. and its attorneys, employees, Insiders, and Affiliates held or controlled by Carlos Feliciano and Brad Palubicki.



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

To the extent that the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims produce a monetary recovery, and to the extent they cannot otherwise agree, the Liquidation Trustee, the NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano shall participate in a mediation to determine how such recovery shall be allocated between the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims after payment of retained counsel and experts' fees and costs. Within ten (10) days' written notice from the Liquidation Trustee that there is a monetary recovery on account of the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims, the Liquidation Trustee, the NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano shall jointly select a mediator to determine the allocation of such recovery amongst themselves. If an agreement cannot be reached with respect to the identification of the mediator, one of the following mediators will be selected by the Liquidation Trustee: Bruce Markell or Miles Ruthberg. The mediation will occur within thirty (30) days of the selection of the meditator unless otherwise agreed in writing by the Liquidation Trustee, each of the NuMale Settling Defendants, Brad Palubicki, and Carlos Feiciano. If the Liquidation Trustee and each of the NuMale Settling Defendants, Brad Palubicki, and Carlos Feilciano cannot agree on an allocation of the proceeds from the recovery of the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims at the mediation and the mediator determines, in the mediator's sole discretion, that the parties have reached an impasse, the mediator shall present a mediator's proposal for the proper allocation of the recovery from the Quintairos Claims, Quintairos Non-Debtor Claims, and Quintairos PF Claims between the Liquidation Trust and each of the NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano, which mediator's proposal shall be immediately binding on the Liquidation Trust, each of the NuMale Settling Defendants, Brad Palubicki, and Carlos Feliciano without any further order, act, or approval and without any right of appeal. Any resolution shall be noticed to the full matrix in the Chapter 11 Cases.

**JJ. <u>Likelihood of Satisfaction of Conditions Precedent to the Effective Date.</u>**

77. Each of the conditions precedent to the Effective Date, as set forth in Section 7 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Section 7.3 of the Plan. The Plan shall not become effective unless and until the conditions set forth in Section 7 of the Plan have been satisfied or waived in accordance with the terms thereof.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

**KK. Implementation.**

78. All Plan documents necessary to implement the Plan, including the Liquidation Trust Agreement attached hereto as Exhibit 3, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are in the best interests of the Debtors and the Estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements. The Trustee is authorized to take any action reasonably necessary or appropriate, and consistent with the Plan and this Confirmation Order, to consummate such agreements and the transactions contemplated thereby.

**LL. Disclosure of Facts.**

79. The Trustee has disclosed all material facts regarding the Plan, including with respect to consummation of the Plan and any and all Plan-related documents.

**MM. Good Faith.**

80. The Trustee, and to the extent applicable, the Liquidation Trustee, have been and will be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to effectuate the Plan and any and all Plan-related documents.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:**

81. **Final Approval of Disclosure Statement.** The Disclosure Statement is approved on a final basis under Section 1125 of the Bankruptcy Code.

82. **Approval of the Revised Liquidation Trust Agreement.** The revised Liquidation Trust Agreement attached hereto as **Exhibit 3** is approved in all respects and shall be the final binding form of agreement executed upon the Effective Date.

83. **Confirmation of the Plan.** The Plan, as expressly modified by this Confirmation Order, is approved in its entirety and **CONFIRMED** under Section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

84. **Binding Effect.** Pursuant to Section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, the terms of the Plan, the terms of any and all Plan documents (including the Liquidation Trust Agreement), and the terms of this Confirmation Order are immediately effective and enforceable and deemed binding on the Debtors, the Trustee, the Liquidation Trust, the Liquidation Trustee, and any and all parties in interest, Holders of Claims or Equity Interests (regardless of whether such Holders of Claims or Equity Interests have, or are deemed to have, accepted the Plan), all Persons and Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person or Entity acquiring property under or pursuant to the Plan including the 363 Sale contemplated by the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, any Person or Entity making an appearance in the Chapter 11 Cases or any other Person or Entity in the Chapter 11 Cases; and the successors and assigns of all of the above and foregoing.

85. **Preservation of Litigation Claims**. Unless a Litigation Claim (including the right to any Claim asserted against the Estates) against a Person or Entity is, in writing, expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, all rights of the Estates from and after the Effective Date with respect to the Litigation Claims are expressly preserved for the benefit of, assigned to, and fully vested in the Liquidation Trust. Unless expressly stated otherwise in this Confirmation Order, nothing in this Confirmation Order shall modify or otherwise affect any provision of the Plan concerning the Litigation Claims. In accordance with Section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trustee shall be the representative of the Estates, and shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Litigation Claims, whether arising before or after the Petition Date, as set forth in the Plan and consistent with the terms thereof. For the avoidance of doubt, the Palubicki/Feliciano Claims are transferred to Beazley in accordance with Section X of the Global Settlement Agreement and Section 12 of the Global Settlement Order.

86. **Effectiveness of All Actions.** All actions contemplated by the Plan, including all actions in connection with any and all Plan documents, are hereby effective and authorized to be



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective directors, officers, or equity security holders of the Debtors and with the effect that such actions had been taken by unanimous action of such parties.

87. **Transactions.** This Confirmation Order shall and shall be deemed to, pursuant to Sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate, and consistent with the Plan, to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

88. **Liquidation Trust**. On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of maximizing the value of the Liquidation Trust Assets—which shall initially consist of the Liquidation Trust Reserve, plus all Distributable Assets (including the Litigation Claims) remaining after (i) payment of the Distributions made by the Reorganized Debtors on the Effective Date in accordance with the terms of the Plan; and (ii) the funding of the Disputed Claim Reserve—and effectuating distributions to creditors consistent with the Plan. The Liquidation Trust will be managed and administered by the Liquidation Trustee in a manner consistent with the Plan, without need for any other notice to or any vote, consent, authorization, approval, ratification, or other action by any entity or any director, stockholder, securityholder, manager, member, or partner (or board thereof) of any entity.

89. **Liquidation Trust Agreement.** The Trustee is authorized to enter into and effectuate the Liquidation Trust Agreement attached hereto as Exhibit 3, which shall not be inconsistent with this Confirmation Order or the Plan, including the entry into and consummation of the transactions contemplated thereby. Any transfers of assets affected or any obligations incurred through the Liquidation Trust Agreement are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance, reversal, or clawback.

90. **Substantive Consolidation.** This Confirmation Order hereby authorizes, on the Effective Date, the substantive consolidation of the Debtors' estates only for purposes of classifying and treating all Claims and Equity Interests under the Plan, including for voting,

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

confirmation, and Distribution purposes. Such substantive consolidation does not (i) alter the state of organization of any Debtor for purposes of determining applicable law of any of the Litigation Claims; (ii) alter or impair the legal and equitable rights of any party in interest including the Liquidation Trustee to enforce any of the Litigation Claims; (iii) otherwise impair, release, discharge, extinguish or affect any of the substantive rights of the parties in interest (including any defenses to any such Litigation Claims); or (iv) alter or impair the 363 Assets. Furthermore, on and after the Effective Date, all Distributable Assets and liabilities of the Debtors shall hereby be treated as though they were merged into a single estate for purposes of treatment of and Distributions on Allowed Claims. All duplicative Claims (identical in both amount and subject matter) filed against more than one of the Debtors are hereby automatically expunged so that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the obligations of any other Debtor are hereby eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, is hereby treated as one single collective obligation of the Debtors. Any alleged defaults under any applicable agreement with one or more of the Debtors arising from substantive consolidation under the Plan are hereby deemed cured as of the Effective Date.

91. **Compromise of Controversies.** Pursuant to Sections 105(a), 1123(b)(3), 1129, and 1141 of the Bankruptcy Code and Bankruptcy Rules 3016 and 9019, and in consideration for the Distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved under the Plan, and the entry of this Confirmation Order constitutes approval of such compromises and settlements.

92. **Authorization to Consummate.** The Trustee is authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Section 7 of the Plan. The Plan shall not become effective unless and until the conditions set forth in Section 7.2 of the Plan have been satisfied or waived.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

93. **Exemption from Transfer Taxes.** To the extent permitted by applicable law, pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp or similar tax or governmental assessment in the United States, or any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and this Confirmation Order hereby directs the appropriate state of local government officials or agents to forego the collection of any such tax or assessment and to accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax or assessment.

94. **Documents, Mortgages, and Instruments.** This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments (including financing statements under the applicable uniform commercial code) necessary, useful or appropriate to effectuate, implement, or consummate the Plan and this Confirmation Order.

95. **Nonseverability of Plan Provisions Upon Confirmation.** Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Trustee's consent and a Court order (and subject to such other consents and consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent.

96. **Applicable Nonbankruptcy Law.** To the maximum extent permissible under applicable law, the provisions of this Confirmation Order, the Plan and related documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

otherwise applicable nonbankruptcy law, expressly including Nevada law.

97. **Governmental Approvals Not Required.** To the maximum extent permissible under applicable law, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan; any certifications, documents, instruments, or agreements; and any amendments or modifications thereto; and any other acts referred to in, or contemplated by, the Plan and this Confirmation Order.

98. **Liquidation Trust Interests Not Securities; Exemption from Registration Requirements.** The Liquidation Trust Interests to be issued, authenticated, and distributed under the Plan are not intended to, and shall not, constitute "securities." If, notwithstanding the foregoing, the Liquidation Trust Interests are deemed to be "securities," the issuance of such Liquidation Trust Interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of "securities" pursuant to Section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities.

99. **Waiver of Stay.** For good cause shown, any stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

100. **References to and Omissions of Plan Provisions.** References to Sections and provisions of, and Schedules or supplements to, the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular Section, provision, supplement, or Schedule of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such Section, provision, supplement, or Schedule, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

101. **Retention of Jurisdiction.** The Court's retention of jurisdiction as set forth in Section 9 of the Plan comports with the parameters contained in 28 U.S.C. § 157. This Court does,



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

and upon the Effective Date shall, to the full extent set forth in the Plan and herein, retain jurisdiction over all matters arising out of and related to this Confirmation Order and these Chapter 11 Cases, including the matters set forth in Section 9 of the Plan and Section 1142 of the Bankruptcy Code. The Court retains in all circumstances the jurisdiction to adjudicate any disputes arising from, arising out of, related to, regarding, or concerning the Plan, this Confirmation Order, and any and all transactions contemplated thereby. For the avoidance of doubt, the Court's retention of jurisdiction provided in Section 19 of the Global Settlement Order is incorporated in this Confirmation Order.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

GARMAN TURNER GORDON LLP

By: */s/ Gregory E. Garman*
GREGORY E. GARMAN, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
MARY LANGSNER, Ph.D.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Michael Carmel, Chapter 11 Trustee*



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

**LR 9021 CERTIFICATION:**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

| | |
|---|---|
| Steven B. Scow, Esq.<br>*Attorneys for Christopher Asandra* | APPROVED |
| Matthew C. Zirzow, Esq.<br>Summer Craig, Esq.<br>*Attorneys for Certain Underwriters at Lloyd's London Syndicates 623/2623* | APPROVED |
| Ryan Andersen, Esq.<br>*Attorneys for Justin Pulliam* | APPROVED |
| Justin C. Valencia, Esq.<br>Alyssa Rogan, Esq.<br>*Attorneys for U.S. Trustee-LV-11* | APPROVED |
| Matthew Johnson, Esq.<br>*Attorneys for Prospect Rainbow, LLC* | APPROVED |
| Joseph Went, Esq.<br>*Attorneys for Brad Palubicki* | APPROVED |
| Ogonna Brown, Esq.<br>Christina Fox, Esq.<br>*Attorneys for Michael E. Sanchez* | APPROVED |
| Ivan Gold, Esq.<br>Louis Bubala, Esq.<br>*Attorneys for Mayfair Mall LLC* | DISAPPROVED |
| David Stephens, Esq.<br>*NewTeck Bank, N.A.* | WAIVED |

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

###



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

# EXHIBIT 1

EXHIBIT 1

**SCHEDULE 6.1**
**PLAN OF REORGANIZATION**

| REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES[1] |
|---|
| Mayfair Mall Mayfair Mall LLC c/o Brookfield Properties, regarding the premises: Suite 1140 of Mayfair North Tower, 2600 North Mayfair Road, Wauwatosa, WI 53226 |
| Mayfair Mall Mayfair Mall LLC c/o Brookfield Properties, regarding the premises: Suite 1150 of Mayfair North Tower, 2600 North Mayfair Road, Wauwatosa, WI 53226 |
| Centrum/Bellview LLC, regarding the premises: Suite 280E of Centrum Complex East Tower, 8200 E. Belleview Ave., Greenwood Village, CO 80111 |
| RepeatMD |
| Tosoh Bioscience, Inc. |
| Public Storage (Tucson), regarding the Suite located at: 7825 East Speedway Boulevard, Tucson, AZ 85710 |
| Public Storage (Omaha), regarding Suite located at: Suite A013, located at 301 South 74th Street, Omaha, NE |
| Towne Storage (Las Vegas), regarding the Suite located at: 6995 W Dewey Drive, Las Vegas, NV 89113 |
| Adobesign - Operations |
| ADT |
| AdvancedMD |
| ADW Diabetes |
| Amazon |
| American Mail Order |
| American Proficiency Institute |
| Anazao |
| AnazaoHealth |
| Apex Chat |
| Belmar |
| BioRad |

[1] For clarity and the avoidance of doubt, the listing of any contract or lease herein is not an admission by the Trustee, the Debtors, the Estates, or otherwise that such contract or lease is an "Executory Contract".



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

| REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES[1] |
|---|
| CardinalHealth |
| CarieBoyd (a/k/a Carrie Boyd) |
| Cynergy |
| Dagacci Scrubs |
| Docusign |
| Efax |
| Ellis Instruments |
| Empower |
| Fedex |
| Finix |
| Lorex |
| McKesson |
| MDToolbox |
| MessageMedia |
| Olympia |
| OrthoMolecular |
| Paylocity |
| PharmaLink |
| PharmaLink CS Disposal |
| Plymouth |
| Plymouth Medical |
| Policy Tec (a/k/a Policytech) |
| Practice HER |
| Primo Water |
| Qualer Pipettes |
| Qualgen |
| Quest |
| Quickbooks |
| Relaymed |
| Remote TC Systems |
| Save-RX |
| Stamps.com |
| Staples |



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

Case 26-00101-CLC 72-1 Entered 01/07/26 09:52:13 Page 4 of 28

| REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES[1] |
|---|
| Stericycle |
| Terminal Server |
| Trocarkit.com |
| Ubereats |
| Uberlube |
| Wells Pharmacy |

**TERMINATED[2]**

| |
|---|
| Equity Sales Finance, Inc. |
| SplitIt |
| The N2 Company (a/k/a Hyport Digital N2, a/k/a N2 Company) |

[2] These agreements appear to have been terminated, however in an abundance of caution, they are listed.



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

# EXHIBIT 2

EXHIBIT 2

**SECHEDULE 6.3**

**PLAN OF REORGANIZATION**

**CURE AMOUNTS PAYABLE BY THE REORGANIZED DEBTORS FOR ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

| Executory Contract or Unexpired Lease | Cure Amount Payable by the Reorganized Debtors Under the Plan |
|---|---|
| Lease between NuMale Corporation and Prospect Rainbow LLC | $120,424.37 to cure pre- and postpetition arrearages, CAM, and taxes, plus $71,134.17 as a pre-payment for the three months of rent following the Effective Date as adequate assurance of future performance. |
| Apple iCloud | $0 |
| Gmail | $0 |
| GoDaddy, Inc. | $0 |
| Insurance Zizzle | $0 |
| Microsoft 365 (OneDrive) | $0 |
| My Bodysite | $0 |
| MyMedLeads/Texting System | $0 |
| 444 Regency Parkway LLC (Gordman Lake Regency, LLC) | $0 |
| Wyoming Office Park, LLC (Brunacini Companies) | $0 |
| Reliant Capital (New Lane Finance) | $0 |
| Tampa Westshore 500 LLC | $0 |

**For any Executory Contract and/or Unexpired Lease for which no Cure payment is specifically identified on this Schedule 6.3, the Cure amount is $0.00.**



Garman Turner Gordon
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

# EXHIBIT 3

EXHIBIT 3

# LIQUIDATION TRUST AGREEMENT

This Liquidation Trust Agreement ("Liquidation Trust Agreement" or "Agreement") dated as of October [●], 2025, by and between Michael W. Carmel, as the Chapter 11 trustee for the bankruptcy estates of NuMale Corporation, Feliciano NuMale Nevada PLLC, NuMedical SC, NuMale Colorado SC, NuMale Florida TB PLLC, NuMale Nebraska LLC, and NuMale New Mexico SC (collectively, the "Debtors"), and Michael W. Carmel, as Liquidation Trustee (the "Liquidation Trustee" or "Trustee") under that certain *Joint Chapter 11 Plan of Liquidation* filed August 1, 2025 (as amended, modified, and/or supplemented, the "Plan"), is hereby being executed to facilitate the implementation of the Plan, which provides for the establishment of the Liquidation Trust (as defined below) created by this Liquidation Trust Agreement and the administration and disposition of the Trust Assets (as defined below), all for the benefit of the holders of certain Claims[1] as set forth in the Plan. The Liquidation Trustee's powers and duties are as set forth herein.

WHEREAS, on January 22, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court" or "Court"), which are jointly administrated under case number 25-10341-nmc (the "Chapter 11 Cases");

WHEREAS, on April 2, 2025, this Court entered its *Order on United States Trustee's Motion to Appoint Chapter 11 Trustee Under 11 U.S.C. § 1104(a), or in the Alternative, to Convert or Dismiss this Case Pursuant to 11 U.S.C. § 1112(b), and Reservation of Rights*, thereby directing the appointment of a Chapter 11 trustee for the Debtors' estates. *See* ECF No. 132.

WHEREAS, on April 2, 2025, Tracy Hope Davis, then United States Trustee for Region 17 ("US Trustee"), appointed Michael Carmel as the Chapter 11 trustee for Debtors' Estates. *See* ECF No. 140.

WHEREAS, on April 7, 2025, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [ECF No. 155], thereby approving Mr. Carmel's appointment. Later that same morning, the US Trustee filed its *Notice of Appointment of Chapter 11 Trustee* [ECF No. 156].

WHEREAS, on April 7, 2025, Mr. Carmel filed his *Notice of Acceptance of Appointment of Chapter 11 Trustee* accepting his appointment as the Chapter 11 trustee for the Debtors' Estates. *See* ECF No. 157.

WHEREAS, on August 1, 2025, the Chapter 11 Trustee filed a *Joint Plan of Reorganization* (the "Plan") and the Disclosure Statement;

WHEREAS, the Plan incorporates the terms of the Global Settlement Agreement and the Global Settlement Order;

WHEREAS, on September [*], 2025, the Bankruptcy Court entered the order confirming the Plan (the "Confirmation Order");

---

[1] Unless otherwise defined in this Liquidation Trust Agreement, all capitalized terms contained in this Liquidation Trust Agreement have the meanings ascribed to them in the Plan. To the extent that a definition of a term in the text of this Liquidation Trust Agreement and the definition of such term in the Plan are inconsistent, the definition in the Plan shall control.

WHEREAS, the Plan and the Confirmation Order provide for the establishment of a Liquidation Trust (as defined in the Plan, the "Liquidation Trust") pursuant to this Liquidation Trust Agreement and the appointment of the Liquidating Trustee to: (i) administer the Liquidation Trust for the benefit of the Holders or beneficiaries, as applicable of Allowed Administrative Claims that deferred payment, the Contingent Expense Reimbursement (the beneficiary of the Contingent Expense Reimbursement, the "Contingent Expense Reimbursement Beneficiary"), the Allowed Sanchez Claim, Allowed General Unsecured Claims, and Allowed Subordinated Claims under the Plan, and (ii) provide administrative services relating to the Plan's implementation;

WHEREAS, the Plan will become effective on the Effective Date;

WHEREAS, Michael W. Carmel, the Chapter 11 trustee for the Estates, is hereby appointed as the Liquidation Trustee;

WHEREAS, the Plan provides for, *inter alia*:

(a) the transfer to the Liquidation Trust, on the Effective Date, of the Debtors' and their Estates' rights, title, and interest in all of the Liquidation Trust Assets (as used in this Liquidation Trust Agreement, the "Trust Assets"), which shall consist of the (i) Distributable Assets remaining after (a) payment of the Distributions made by the Distribution Agent on the Effective Date in accordance with the terms of the Plan; and (b) the funding of the Disputed Claim Reserve; (ii) such additional or different corpus as the Liquidation Trustee may acquire and hold in trust pursuant to this Liquidation Trust Agreement from time to time, and (iii) any and all proceeds of any Trust Assets, free and clear of all Claims, Liens, charges, other encumbrances, and Equity Interests;

(b) the Distribution of Net Distributable Assets, in accordance with the terms of the Plan, for the benefit of (i) Allowed Administrative Claims that have agreed in writing to defer payment or partial payment of such Allowed Claims; (ii) the Contingent Expense Reimbursement; (iii) Allowed Sanchez Claim; (iv) Allowed General Unsecured Claims; and (v) Allowed Subordinated Claims (collectively, the "Liquidation Trust Beneficiaries" or "Beneficiaries"); provided, however, for the avoidance of doubt, to the extent any Claim is not an Allowed Claim, the Holder of such Claim shall not be deemed a Beneficiary hereunder);

(c) Distributions of Net Distributable Assets shall not be made in respect of Allowed General Unsecured Claims and Allowed Subordinated Claims until Disputed Administrative Claims have been Allowed or Disallowed, and until all contingencies that could give rise to a liquidated Contingent Expense Reimbursement Claim have been finally resolved, including, where applicable, by a Final Order, and all payments in respect of the Contingent Expense Reimbursement Claim have been made;

(d) the federal income tax treatment (i) of the Liquidation Trust Beneficiaries as the grantors and owners of the Liquidation Trust, and (ii) of the transfer of the Trust Assets to the Liquidation Trust as a deemed transfer from the Debtors to the Liquidation Trust

Beneficiaries followed by a deemed transfer by the Liquidation Trust Beneficiaries to the Liquidation Trust;

(e) the establishment of the Liquidation Trust Reserve and other appropriate reserves, including as may be reasonably necessary to pay Liquidation Trust Expenses (also referred to herein as "Trust Expenses";

(f) the administration of the Liquidation Trust and the Trust Assets by the Liquidation Trustee for the purposes and in the manner set forth in this Liquidation Trust Agreement subject to the Plan.

WHEREAS, the Liquidation Trust is intended to be treated as a liquidating trust pursuant to United States Treasury Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and as a grantor trust subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part 1, Subpart E of the Tax Code (hereinafter defined) owned by the Liquidation Trust Beneficiaries as grantors;

NOW, THEREFORE, pursuant to the Plan and in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE 1

## DECLARATION OF TRUST

**1.1 Purpose of the Liquidation Trust.** The Chapter 11 trustee for the Debtors and their Estates and the Liquidation Trustee, pursuant to the Plan and the Confirmation Order, and in accordance with the Bankruptcy Code and applicable tax statutes, rules, and regulations, to the extent incorporated in this Agreement, hereby constitute and create a trust (i.e., the Liquidation Trust) for the purpose of liquidating the Trust Assets for the benefit of the Liquidation Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business (except to the extent reasonably necessary to carry out, and consistent with, the liquidation purpose of the Liquidation Trust, provided that any such conduct will not affect the Liquidation Trust's tax status as a liquidation trust). In particular, the Liquidation Trust, through the Liquidation Trustee, shall (i) pending the reduction to Cash of the Trust Assets (and any non-Cash proceeds thereof), manage, and collect and obtain proceeds from the Trust Assets, with the goal of reducing the Trust Assets (and any non-Cash proceeds thereof) to Cash; (ii) make distributions pursuant to this Agreement, the Plan, the Global Settlement Agreement, the Global Settlement Order and the Confirmation Order; and (iii) take such steps as are reasonably necessary to accomplish such purposes, all as more fully provided in, and subject to the terms and provisions of, the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, and this Liquidation Trust Agreement. The Liquidation Trust shall not have authority to engage in a trade or business, and no portions of the Trust Assets shall be used in the conduct of a trade or business, except as is reasonably necessary for the prompt and orderly collection and reduction to Cash of the Trust Assets (and any non-Cash proceeds thereof), with the goal of maximizing such assets for the benefit of the Liquidation Trust Beneficiaries.

**1.2 Name of the Liquidation Trust.** The Liquidation Trust established hereby shall be known as the "NuMale Liquidation Trust." In connection with the exercise of the Liquidation Trustee's powers, the Liquidation Trustee may use such name or such variation thereof as the Liquidation Trustee sees fit and may transact the business and affairs of the Liquidation Trust in such name.

**1.3 Transfer of Assets to Create Liquidation Trust.** Pursuant to the Plan and the Confirmation Order, the Chapter 11 trustee for the Debtors and their Estates hereby irrevocably grants, releases, assigns, transfers, conveys, and delivers to the Liquidation Trustee, as of the Effective Date, the Trust Assets, to have and to hold by the Liquidation Trustee and the Liquidation Trustee's successors in trust and to be applied as specified in the Plan and this Liquidation Trust Agreement. On the Effective Date and from time to time thereafter, upon the direction of the Liquidation Trustee, the Chapter 11 trustee for the Debtors and their Estates shall execute and deliver (or cause to be executed and delivered to) the Liquidation Trustee any and all such documents, in recordable form where necessary or appropriate, and the Chapter 11 trustee for the Debtors and their Estates shall take or cause to be taken such further or other action as the Liquidation Trustee may reasonably deem appropriate, to vest or perfect in or confirm to the Liquidation Trustee, title to and possession of all of the Trust Assets. In connection herewith, the Liquidation Trustee shall be responsible for establishing and maintaining such accounts as the Liquidation Trustee shall deem necessary or appropriate to carry out the provisions of this Liquidation Trust Agreement, and to perform all obligations specified for the Liquidation Trustee under the Plan, the Confirmation Order, and this Liquidation Trust Agreement.

**1.4 Acceptance by Liquidation Trustee.** The Liquidation Trustee hereby accepts: (i) the appointment to serve as Liquidation Trustee; (ii) the transfer of the Trust Assets on behalf of the Liquidation Trust; and (iii) the trust imposed on the Liquidation Trustee by this Liquidation Trust Agreement. The Liquidation Trustee agrees to receive, hold, administer, and distribute the Trust Assets and the income or other proceeds derived therefrom, if any, pursuant to the terms of the Plan, the Confirmation Order, and this Liquidation Trust Agreement. The Liquidation Trustee agrees to perform all activities reasonably necessary to ensure the transfer of the Trust Assets to the Liquidation Trustee on behalf of the Liquidation Trust.

## ARTICLE 2

## LIQUIDATION TRUSTEE – GENERALLY

**2.1 Appointment.** The initial Liquidation Trustee shall be Michael W. Carmel, the Chapter 11 trustee for Debtors' Estates.

**2.2 Term of Service.** The Liquidation Trustee shall serve until (i) the termination of the Liquidation Trust in accordance with Article 9 of this Liquidation Trust Agreement, or (ii) the Liquidation Trustee's resignation, death, or removal, all in accordance with the provisions of this Liquidation Trust Agreement.

**2.3 Services.** The Liquidation Trustee (solely in his, her, or its individual capacity) shall be entitled to engage in such other activities unrelated to the administration of the Liquidation Trust as the Liquidation Trustee deems appropriate and are not in conflict with the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, this Liquidation Trust Agreement, or the interests of the Liquidation Trust Beneficiaries resulting from this Liquidation Agreement. The Liquidation Trustee shall devote such time as is necessary to fulfill all the Liquidation Trustee's duties as Liquidation Trustee.

**2.4 Resignation, Death, or Removal of Liquidation Trustee.** The Liquidation Trustee may resign at any time upon ninety (90) days' written notice to the Liquidation Trust Beneficiaries, the Bankruptcy Court and the creditor matrix in the Chapter 11 Cases. Such resignation may become effective prior to the expiration of such ninety (90) day notice period upon the appointment of a successor Liquidation Trustee by the Liquidation Trustee, in consultation with the Holder of the Allowed Sanchez Claim and the Contingent Expense Reimbursement Beneficiary. Such appointment of a successor Liquidation Trustee shall not require application to or further order of the Bankruptcy Court if such successor Liquidation Trustee is approved by the Holder of the Allowed Sanchez Claim and is reasonably acceptable to the Contingent Expense Reimbursement Beneficiary, but such successor Liquidation Trustee shall be required to execute an instrument accepting such appointment and file such acceptance in the Liquidation Trust records; provided, however, that the Liquidation Trustee may seek Bankruptcy Court approval of such successor Liquidation Trustee's appointment in the Liquidation Trustee's sole discretion. The Liquidation Trustee may be removed by the Bankruptcy Court upon application for good cause shown. In the event the Liquidation Trustee position becomes vacant, the vacancy shall be filled as determined by (x) the Holder of the Allowed Sanchez Claim, in consultation with the Contingent Expense Reimbursement Beneficiary, or (y) if the Holder of the Allowed Sanchez Claim does not identify or the Contingent Expense Reimbursement Beneficiary does not reasonably agree with the selection of a successor Liquidation Trustee, by the Bankruptcy Court upon submissions from any of the Liquidation Trust Beneficiaries. Upon appointment pursuant to this Section 2.4, any successor Liquidation Trustee, without any further act, shall become fully vested with all the rights, powers, duties, and obligations of such successor Liquidation Trustee's predecessor.

**2.5 Trust Continuance.** The death, resignation, or removal of the Liquidation Trustee shall not terminate the Liquidation Trust or revoke any existing agency (other than any agency of such Liquidation Trustee as Liquidation Trustee) created pursuant to this Liquidation Trust Agreement or invalidate any action theretofore taken by the Liquidation Trustee, and the successor Liquidation Trustee appointed in such event agrees that the provisions of this Liquidation Trust Agreement shall be binding upon and inure to the benefit of such successor Liquidation Trustee and all such successor Liquidation Trustee's heirs and legal and personal representatives, successors, or assigns.

**2.6 Compensation and Expenses of Liquidation Trustee.** The Liquidation Trustee shall be compensated in accordance with the parameters of Section 326 of the Bankruptcy Code, except that the Liquidation Trustee shall not need to seek Bankruptcy Court approval prior to payment. Payment to the Liquidation Trustee shall be concurrent with distributions to the Liquidation Trust Beneficiaries. All such reimbursements and compensation shall be paid (or

reserved for, as applicable) from the Trust Assets prior to any distribution to the Liquidation Trust Beneficiaries.

**2.7 Retention of Professionals.** The Liquidation Trustee may, without the necessity for application to or approval of the Bankruptcy Court, retain and engage such attorneys, accountants, and other professionals and persons as may be necessary to carry out the Liquidation Trustee's duties under this Agreement on reasonable terms, including a professional that was retained as a professional in the Debtors' Chapter 11 Cases. The reasonable and documented fees and expenses of all professionals retained consistent with this Section 2.7 shall be borne exclusively by the Liquidation Trust, shall be paid from the Liquidation Trust, and the Liquidation Trustee may establish one or more reserves for this purpose.

**2.8 Court Approval for Payment.** Neither the Liquidation Trustee nor any professional retained by the Liquidation Trustee is required to seek Bankruptcy Court authorization before the payment of any fees to the Liquidation Trustee or any professional retained by the Liquidation Trustee. In addition, the Liquidation Trustee may pay Professionals in the ordinary course of business for any reasonable and documented fees arising from any work authorized by the Liquidation Trustee performed on and after the Effective Date, including those reasonable and documented fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court.

## ARTICLE 3

## POWERS AND LIMITATIONS OF LIQUIDATION TRUSTEE

**3.1 General Powers of Liquidation Trustee.** In connection with the administration of the Liquidation Trust, except as otherwise set forth herein, the Liquidation Trustee shall be a representative of the Debtors and their Estates, and shall have the power and authority to make all decisions with respect to the Trust Assets and perform those acts necessary or desirable to accomplish the purposes of the Liquidation Trust. The Liquidation Trust shall succeed to all the rights of the Debtors and their Estates necessary to protect, conserve, and liquidate the Trust Assets as quickly as reasonably practicable consistent with the purposes of the Liquidation Trust. Subject to the limitations set forth in this Liquidation Trust Agreement, the Plan, and the Confirmation Order, and in addition to any powers and authority conferred by law, by the Plan, and by the Confirmation Order, or by any other section or provision of this Liquidation Trust Agreement, the Liquidation Trustee may exercise all powers granted to the Liquidation Trustee hereunder related to, or in connection with, the administration and liquidation of Trust Assets and distribution of Cash and other net proceeds derived therefrom in accordance with this Liquidation Trust Agreement, the Plan, the Global Settlement Agreement, the Global Settlement Order and the Confirmation Order. Without limitation, but subject to the foregoing, the Liquidation Trustee shall be expressly authorized, without need of further approval of the Bankruptcy Court to:

(a) Make all decisions with respect to the Trust Assets, including investigation, prosecution, waiver, and/or settlement of any Litigation Claims;

(b) Implement this Plan, including any other powers necessary or incidental thereto;

(c) Exercise all power and authority that may be exercised, to commence, pursue, abandon, and/or settle all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtors prior to the Effective Date) that may be commenced, and to take all actions that may be taken to consummate the Plan and all transfers thereunder;

(d) Make Distributions, or enable the Distribution Agent to make Distributions, to Holders of Allowed Claims, and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves;

(e) Use, manage, sell, lease, license, abandon, convert to Cash, and/or otherwise dispose of the Trust Assets for the purpose of making distributions and fully consummating the Plan;

(f) Prosecute objections to Claims, including Administrative Expense Claims, and compromise, settle, and/or litigate any such Claims (Disputed or otherwise);

(g) Investigate and prosecute any and all Litigation Claims and compromise, settle, waive, and/or litigate any Litigation Claims;

(h) File motions seeking Bankruptcy Court approval of compromises and settlements, to the extent deemed appropriate by the Liquidation Trustee;

(i) Prepare and file tax returns for the Liquidation Trust to the extent required by law;

(j) Employ and compensate any and all such professionals and agents as the Liquidation Trustee, in his sole discretion, deems reasonably necessary to perform his duties under the Plan and Liquidation Trust Agreement, without further order of the Bankruptcy Court;

(k) Satisfy and pay all Trust Expenses;

(l) Participate in or file any post Effective Date motion(s) to amend or modify the Plan or this Liquidation Trust Agreement, or any appeal(s) of the Confirmation Order, in each case consistent with the Global Settlement Agreement and the Global Settlement Order;

(m) Participate in or file any action to enforce or interpret the Plan;

(n) Bind the Liquidation Trust;

(o) File periodic reports with the Bankruptcy Court, including quarterly reports required by the Office of the United States Trustee; and

(p) Take all other actions not inconsistent with the provisions of the Plan, the Global Settlement Agreement, the Global Settlement Order and the Confirmation Order that the Liquidation Trustee deems reasonably necessary or desirable in connection with the administration or implementation of the Plan, including:

(i) filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases;

(ii) paying any statutory fees owed to the U.S. Trustee;

(iii) seeking an estimation of contingent or unliquidated Claims pursuant to 11 U.S.C. § 502(c) (but for the avoidance of doubt excluding the Contingent Expense Reimbursement);

(iv) opening and maintaining bank accounts on behalf of or in the name of the Liquidation Trust, calculating and making distributions, and taking other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Liquidation Trust;

(v) receiving, conserving, and managing the Trust Assets;

(vi) if the Liquidation Trustee determines that any of the Liquidation Trust Beneficiaries or the Liquidation Trust may, will, or has become subject to adverse tax consequences, taking such actions that the Liquidation Trustee, in the Liquidation Trustee's reasonable discretion, determines are intended to alleviate such adverse tax consequences, including, without limitation, dividing the Trust Assets into several trusts or other structures;

(vii) holding legal title to any and all Trust Assets;

(viii) establishing, funding, and administering a reserve for the payment of Trust Expenses;

(ix) entering into contracts and other business arrangements;

(x) representing the Liquidation Trust before governmental and other regulatory bodies;

(xi) removing Trust Assets or the situs of administration of the Liquidation Trust from one jurisdiction to another at any time or from time to time;

(xii) making decisions regarding the retention or engagement of professionals, employees, and consultants by the Liquidation Trust and paying, from the Liquidation Trust, the reasonable and documented fees and charges incurred by the Liquidation Trust on or after the Effective Date, including the reasonable and documented fees of professionals, disbursements,

expenses, or support services relating to the implementation of the Plan and this Liquidation Trust Agreement, without application to the Bankruptcy Court;

(xiii) paying all lawful expenses, debts, charges, and liabilities of the Liquidation Trust;

(xiv) withholding from the amount distributable to any Person or Entity such amount as may be sufficient to pay any tax or other charge that the Liquidation Trustee has determined, in his or her reasonable discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof; and in the exercise of the Liquidation Trustee's discretion and judgment, entering into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section;

(xv) entering into any agreement or executing any document required by or consistent with the Plan, Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, or this Liquidation Trust Agreement and the purposes of the Liquidation Trust, and performing all obligations under all the foregoing;

(xvi) investing Cash as deemed appropriate by the Liquidation Trustee in Cash equivalents; provided, however, that the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a "liquidating trust," within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise; provided further, however, that any investment of Cash must be with institutions and in investment vehicles covered by Federal Deposit Insurance Corporation ("FDIC") insurance;

(xvii) holding title to any investment in the Liquidation Trustee's name as Liquidation Trustee or in a nominee's name;

(xviii) suing and being sued, subject to the provisions herein, in the Plan, and in the Confirmation Order, and participating in any proceeding with respect to any matter regarding or relating to this Liquidation Trust Agreement, the Confirmation Order, the Plan, the Liquidation Trust, the Debtors, or the Estates; and

(xix) taking all other actions consistent with the provisions of this Liquidation Trust Agreement, the Plan, and the Confirmation Order that the Liquidation Trustee deems reasonably necessary or desirable to administer the Liquidation Trust.

**3.2 Limitations on the Liquidation Trustee.** Notwithstanding anything in this Liquidation Trust Agreement to the contrary, the Liquidation Trustee shall not do or undertake any of the following without both (a) the approval of the Holder of the Allowed Sanchez Claim; (b) the Contingent Expense Reimbursement Beneficiary and (c) an order of the Bankruptcy Court approving such decision or action:

(a) take any action in contravention of, or inconsistent with the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, or this Liquidation Trust Agreement;

(b) take any action that would significantly jeopardize treatment of the Liquidation Trust as a "liquidating trust" for federal income tax purposes;

(c) lend any Trust Assets to the Liquidation Trustee;

(d) purchase Trust Assets from the Liquidation Trust;

(e) transfer Trust Assets to another trust with respect to which the Liquidation Trustee serves as trustee;

(f) grant liens on any of the Trust Assets; or

(g) guarantee any debt incurred by any third party.

## ARTICLE 4

## LIABILITY OF LIQUIDATION TRUSTEE

**4.1 Trustee Standard of Care; Exculpation; Limitation on Liability; Indemnification.** The Liquidation Trustee shall not be liable for any act the Liquidation Trustee may do or omit to do as Liquidation Trustee under the Plan and this Liquidation Trust Agreement while acting in good faith and in the exercise of the Liquidation Trustee's reasonable business judgment; nor will the Liquidation Trustee be liable in any event except for an act or omission that is determined by Final Order of a court of competent jurisdiction to have constituted gross negligence, willful misconduct, intentional breaches of the Plan, the Global Settlement Agreement, or this Agreement, or fraud. The foregoing limitation on liability also will apply to any Person employed by the Liquidation Trustee and acting on behalf of the Liquidation Trustee in the fulfillment of the Liquidation Trustee's duties hereunder or under the Plan. In addition, the Liquidation Trustee and any Person employed by the Liquidation Trustee and acting on behalf of the Liquidation Trustee shall be entitled to indemnification and defense out of the assets of the Liquidation Trust against any losses, liabilities, expenses (including reasonable and documented attorneys' fees and disbursements), damages, taxes, suits, or claims that they may incur or sustain by reason of being or having been employed by the Liquidation Trust or the Liquidation Trustee or for performing any functions incidental to such service; provided, however, that the foregoing shall not relieve the Liquidation Trustee, or any Person employed by the Liquidation Trustee from liability, nor entitle any of the foregoing entities to indemnification pursuant to the Plan or this Liquidation Trust Agreement, for an act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud, or intentional breaches of the Plan, the Global Settlement Agreement, or this Agreement. Persons dealing with the Liquidation Trustee or any of the foregoing parties in their respective capacities as such, or seeking to assert claims against the Liquidation Trustee or any of the foregoing parties in their capacities as such, shall have recourse only to the Trust Assets (excluding any fund or reserve to pay Trust Expenses) to satisfy any liability incurred by the Liquidation Trustee

or any of the foregoing parties in their respective capacities as such to such Persons in carrying out the terms of the Plan and this Liquidation Trust Agreement. Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this section shall be payable only from the Trust Assets, and such right to payment shall be prior and superior to any other rights to receive on behalf of any Beneficiary any distribution of Trust Assets or proceeds thereof. The Liquidation Trust shall have the right to control the defense and settlement of claims as to which it is obligated to indemnify.

For the avoidance of doubt, this Section 4.1: (i) only applies to professionals hired and retained by the Liquidation Trustee, in his capacity as the Liquidation Trustee, to provide services to the Liquidation Trustee (the "LT Professionals"); (ii) only applies to services rendered by the LT Professionals after the Effective Date and after execution and formation of the Liquidation Trust Agreement; and (iii) only applies to services rendered by the LT Professionals to the Liquidation Trustee in the fulfillment of the Liquidation Trustee's duties under the Plan and Liquidation Trust Agreement. Section 4.1 shall not apply to bankruptcy estate professionals unless they are also separately hired and retained as LT Professionals and even then, this Section 4.1 shall only extend to services rendered after the Effective Date and only with regard to services rendered to the Liquidation Trustee in the fulfillment of the Liquidation Trustee's duties.

**4.2 Bond.** The Liquidation Trustee shall not be obligated to give any bond or surety for the performance of any of the Liquidation Trustee's duties unless otherwise ordered by the Bankruptcy Court. If so ordered, all costs and expenses of procuring a bond or surety shall be deemed a Trust Expense and payable from the Trust Assets.

**4.3 No Liability for Acts of Predecessor Liquidation Trustees.** No successor Liquidation Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidation Trustee unless a successor Liquidation Trustee expressly in writing assumes such responsibility.

**4.4 Reliance by Liquidation Trustee on Document or Mistake of Fact.** Except as may be otherwise provided in this Liquidation Trust Agreement, the Liquidation Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidation Trustee to be genuine and to have been presented by an authorized party. Also, the Liquidation Trustee shall not be liable if the Liquidation Trustee acts in good faith based on a mistake of fact before having actual knowledge of such mistake.

**4.5 Insurance.** The Liquidation Trustee may cause the Liquidation Trust to purchase errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses the Liquidation Trustee may incur, including but not limited to attorneys' fees, arising out of or due to the Liquidation Trustee's actions or omissions, or consequences of such actions or omissions, other than as a result of the Liquidation Trustee's fraud, gross negligence, or willful misconduct, with respect to the implementation and administration of the Plan, the Liquidation Trust, and this Liquidation Trust Agreement.

## ARTICLE 5

## DUTIES OF LIQUIDATION TRUSTEE

**5.1 General.** The Liquidation Trustee shall have all the duties specified in the Plan (incorporating the Global Settlement Agreement), the Confirmation Order, and this Liquidation Trust Agreement.

**5.2 Books and Records.** The Liquidation Trustee shall maintain, in respect of the Liquidation Trust, books and records relating to the Trust Assets and income and proceeds realized therefrom, and the payment of expenses of and claims against or assumed by the Liquidation Trust, in such detail and for such period of time as may be necessary to enable the Liquidation Trustee to make full and proper reports in respect thereof. Except as expressly provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order, nothing in this Liquidation Trust Agreement is intended to require the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Trust Assets or proceeds therefrom.

**5.3 Establishment of Accounts and Reserves.**

(a) On the Effective Date or as soon as practicable thereafter, the Liquidation Trustee shall establish one or more accounts which shall consist of all Cash belonging to the Liquidation Trust, including all Cash transferred to the Liquidation Trust pursuant to the Plan (the "General Account"); provided, however, that all Cash must be deposited with institutions covered by FDIC insurance.

(b) Except as otherwise provided in the Plan, Confirmation Order, and this Liquidation Trust Agreement, the Liquidation Trustee shall make distributions to the Liquidation Trust Beneficiaries in accordance with the terms of the Plan in the exercise of the Liquidation Trustee's sound discretion, based on, among other things, the amount of Cash on hand, the amount needed to fund any applicable reserves, including any reserves to cover the Trust Expenses, whether there remain any unpaid Allowed Administrative Expense Claims (including Allowed Professional Fee Claims), and the amount of the Sanchez Claim and General Unsecured Claims that are Allowed at the time, and the status of any pending litigation, if any, affecting such distributions.

## ARTICLE 6

## LIQUIDATION TRUST BENEFICIARIES

**6.1 Effect of Death, Incapacity, or Bankruptcy of Beneficiary.** The death, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidation Trust shall not operate to terminate the Liquidation Trust during the term of the Liquidation Trust, nor shall it entitle the representatives or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting, or to take any action in any court or elsewhere for the distribution of the Trust Assets or for a petition thereof, nor shall it otherwise affect the rights and obligations of the Beneficiary's representatives and creditors (in such capacity) under this Liquidation Trust Agreement or in the Liquidation Trust.

**6.2 Standing of Beneficiary.** Except as may be expressly provided in this Liquidation Trust Agreement, the Plan (incorporating the Global Settlement Agreement), or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Liquidation Trustee) upon or with respect to the Liquidation Assets.

**6.3 Release of Liability of Beneficiary.** A Beneficiary shall not relieve the Liquidation Trustee from any duty, responsibility, restriction, or liability that would otherwise be imposed under this Liquidation Trust Agreement unless such relief is approved by Final Order of the Bankruptcy Court.

## ARTICLE 7

## DISTRIBUTIONS

**7.1 Distributions from Trust Assets.** All payments to be made by the Liquidation Trustee to any Person shall be made only in accordance with the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, and this Liquidation Trust Agreement, and from the Cash or Cash proceeds of Trust Assets, and only to the extent that the Liquidation Trust has sufficient Cash to make such payments in accordance with and to the extent provided for in the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, and this Liquidation Trust Agreement. Any distribution made by the Liquidation Trustee in good faith shall be binding and conclusive on all interested parties, absent manifest error. Notwithstanding anything herein to the contrary, no distributions of Trust Assets shall be made in respect of Allowed General Unsecured Claims and Allowed Subordinated General Unsecured Claims until Disputed Administrative Claims have been Allowed or Disallowed and until all contingencies that could give rise to a liquidated Contingent Expense Reimbursement have been finally resolved, including, where applicable, by a Final Order, and all payments in respect of the Contingent Expense Reimbursement have been made.

**7.2 Distributions; Withholding.** The Liquidation Trustee shall make distributions at such times, consistent with the terms of the Plan, the Global Settlement Agreement, the Global Settlement Order, the Confirmation Order, and this Liquidation Trust Agreement, as the Liquidation Trustee deems appropriate from all net Cash income and all other Cash proceeds received by the Liquidation Trust; provided, however, that the Liquidation Trust may retain such amounts (i) as are reasonably necessary to meet known and contingent liabilities and to maintain the value of the Trust Assets during the term of the Liquidation Trust; (ii) to pay reasonable administrative expenses, including, without limitation, the compensation and the reimbursement of reasonable costs, fees (including attorneys' and other professional fees), and expenses of the Liquidation Trustee in connection with the performance of the Liquidation Trustee's duties under this Liquidation Trust Agreement, the Plan, and the Confirmation Order; and (iii) to satisfy all other liabilities incurred or assumed by the Liquidation Trust (or to which the Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order, and this Liquidation Trust Agreement. All such distributions shall be made, subject to any withholding or reserve, as provided in this Liquidation Trust Agreement,

the Plan, or the Confirmation Order. Additionally, the Liquidation Trustee may withhold from amounts otherwise distributable on behalf of Liquidation Trust Beneficiaries any and all amounts, determined in the Liquidation Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement. The Liquidation Trustee may withhold the entire distribution to any Beneficiary until such time as the Holder provides the Liquidation Trustee with the necessary information to comply with any withholding requirements of any governmental unit.

Notwithstanding any other provision of this Liquidation Trust Agreement, (i) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution; and (ii) no distribution shall be made to or on behalf of such Holder pursuant to this Liquidation Trust Agreement or the Plan unless and until such Holder has made arrangements satisfactory to the Liquidation Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such distribution. Any property to be distributed pursuant to this Liquidation Trust Agreement or the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution under this Liquidation Trust Agreement or the Plan.

**7.3 Method of Cash Distributions.** For the avoidance of doubt, the manner of distributions shall be consistent with the distribution procedures set forth in the Plan.

**7.5 Objections to Claims and Distributions.** For the avoidance of doubt, objections to Claims, the manner of distributions, and the effect of undeliverable distribution shall be in accordance with the Plan, including Section 11 of the Plan.

## ARTICLE 8

## TAXES

### 8.1 Income Tax Status.

(a) It is intended that the Liquidation Trust be classified for federal income tax purposes as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part I, Subpart E of the Tax Code that is owned by its Liquidation Trust Beneficiaries. Accordingly, the parties hereto intend that the Liquidation Trust Beneficiaries of the Liquidation Trust be treated as if they had received a distribution of the applicable assets transferred to the Liquidation Trust and then contributed such assets to the Liquidation Trust. As such, notwithstanding anything set forth herein, the transfer of assets to the Liquidation Trust shall be treated for all purposes of the Tax Code as a transfer from the Estates to creditors to the extent the creditors are Liquidation Trust Beneficiaries of the Liquidation Trust followed by a deemed transfer by the Liquidation Trust Beneficiaries to the Liquidation Trust. The

Liquidation Trust Beneficiaries will be treated as grantors and deemed owners of the Liquidation Trust.

(b) All parties, including the Chapter 11 trustee for the Debtors and their Estates, the Liquidation Trustee, and all Liquidation Trust Beneficiaries of the Liquidation Trust, must value all assets transferred to the Liquidation Trust consistently, and those valuations must be used for all federal, state, and local income tax purposes. The Liquidation Trustee must file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The assets shall be valued based upon the Liquidation Trustee's good faith determination of their fair market value.

(c) Anything set forth herein to the contrary notwithstanding, the Liquidation Trust shall not receive or retain Cash or Cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of Trust Assets during liquidation. All income of the Liquidation Trust must be subject to tax on a current basis. The taxable income of the Liquidation Trust will be allocated to and among Liquidation Trust Beneficiaries who are grantors of the Liquidation Trust as required by virtue of their being grantors and deemed owners of the Liquidation Trust, and they shall each be responsible to report and pay taxes due on their appropriate share of Liquidation Trust income.

(d) The Liquidation Trust shall be classified as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and in the event of any inconsistency between any term or provision herein, in the Plan, or in the Confirmation Order necessary for the Liquidation Trust to be deemed at all times a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 and any other term or provision herein, in the Plan, or in the Confirmation Order, the term(s) and provision(s) necessary for the Liquidation Trust to be deemed a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684 shall govern. Similarly, anything to the contrary set forth herein, in the Plan, or in the Confirmation Order notwithstanding, to the extent any term or provision herein, in the Plan, in the Confirmation Order would result in the Liquidation Trust not being classified as a liquidating trust at all times pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, such term or provision shall be ineffective and reformed to the extent necessary for the Liquidation Trust to be classified at all times as a liquidating trust pursuant to Treasury Regulations Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684.

(e) As used in this Liquidation Trust Agreement, the following terms shall have the following meanings:

"Tax Code" shall mean the Internal Revenue Code of 1986, 26 U.S.C. § 1 et seq., as amended from time to time, and corresponding provisions of any subsequent federal revenue act. A reference to a section of the Tax Code shall include a reference to any and all Treasury Regulations interpreting, limiting or expanding such section of the Tax Code; and

"Treasury Regulations" shall mean regulations promulgated under the Tax Code, including, but not limited to the Procedure and Administration Regulations, as such regulations may be amended from time to time.

**8.2 Tax Returns.** The Liquidation Trustee shall prepare and provide to, or file with, the appropriate parties such notices, tax returns, information returns, and other filings as may be required by the Tax Code and may be required by applicable law of other jurisdictions. The Liquidation Trustee shall be responsible for filing all required federal, state, and local tax returns and information returns of the Liquidation Trust. The Liquidation Trustee shall, when specifically requested by a Beneficiary in writing, make such tax information available to the Beneficiary for inspection and copying at the Beneficiary's expense, as is necessary for the preparation by such Beneficiary of its income tax return.

## ARTICLE 9

## TERMINATION OF TRUST

**9.1 Term.** The Liquidation Trust shall terminate upon the earlier of (a) the date on which all of the Trust Assets are liquidated in accordance with the Plan, the funds in the Liquidation Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the order closing the Chapter 11 Cases is a Final Order, or (b) ten (10) years from the date of creation of the Liquidation Trust, unless extended by the Bankruptcy Court as provided herein. The Liquidation Trustee shall at all times endeavor to liquidate expeditiously the Trust Assets (or any non-Cash proceeds thereof), and in no event shall the Liquidation Trustee unduly prolong the duration of the Liquidation Trust. The foregoing notwithstanding, in the event that the Liquidation Trustee determines that all of the Trust Assets and/or proceeds thereof will not, despite reasonable efforts, be distributed by the date which is ten (10) years from the date of creation of the Liquidation Trust, or for any other reason consistent with this Liquidation Trust Agreement and the Plan, and if warranted by the facts and circumstances, the Liquidation Trustee or the Contingent Expense Reimbursement Beneficiary may petition the Bankruptcy Court to extend the term of the Liquidation Trust. Each and every such extension must be for a reasonable finite period based on the particular facts and circumstances, must be subject to the approval of the Bankruptcy Court and approved upon a finding that the extension is necessary to the liquidating purpose of the Liquidation Trust and must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term. At such time as the Liquidation Trust has been fully administered (i.e., when all things requiring action by the Liquidation Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the date of the final distribution under the Plan (the "Final Distribution Date"), the Liquidation Trustee will file an application for approval of the Liquidation Trustee's final accounting and the entry of the final decree by the Bankruptcy Court. Upon final distribution pursuant to this Agreement, the Liquidation Trustee shall retain the books, records, and files that shall have been delivered to or created by the Liquidation Trustee. At the Liquidation Trustee's discretion, all such records and documents may be destroyed at any time after two (2) years after the Final Distribution Date.

**9.2 Event Upon Termination.** Upon the termination of the Liquidation Trust, the Liquidation Trustee shall distribute the remaining Trust Assets (including any proceeds thereof), if any, consistent with the terms of this Agreement, the Plan, the Confirmation Order, or another order of the Bankruptcy Court.

**9.3 Winding Up and Discharge of the Liquidation Trustee.** For the purposes of winding up the affairs of the Liquidation Trust at its termination, the Liquidation Trustee shall continue to act as Liquidation Trustee until the Liquidation Trustee's duties have been fully discharged. After doing so, the Liquidation Trustee, and the Liquidation Trustee's agents, employees, and professionals, shall have no further duties or obligations hereunder, except as required by this Liquidation Trust Agreement, the Plan, the Confirmation Order, or applicable law concerning the termination of a trust. Upon a motion by the Liquidation Trustee, the Bankruptcy Court may enter an order discharging the Liquidation Trustee, and the Liquidation Trustee's agents, employees, and professionals, and relieving them of any further duties.

## ARTICLE 10

## ADMINISTRATIVE EXPENSES

**10.1 Funding.** The costs and expenses of the Liquidation Trust, including, without limitation, the compensation to and the reimbursement of reasonable, actual, and necessary costs, fees (including attorneys' and other professional fees), and expenses of the Liquidation Trustee in connection with the performance of the Liquidation Trustee's duties in connection with the Plan and this Liquidation Trust Agreement, including the Trust Expenses and quarterly fees due to the Office of the United States Trustee, shall be paid from the applicable reserves, including the Liquidating Trust Reserve provided under the Plan, without the necessity for any approval by the Bankruptcy Court (the "Trustee's Administrative Expense Fund"). The Trustee's Administrative Expense Fund shall not be subject to charge for claims against the Liquidation Trust or the Trust Assets (including any proceeds thereof), including, without limitation, any claims under Section 4.1 of this Agreement.

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

**11.1 Amendments.** The Liquidation Trustee may propose to the Bankruptcy Court the modification, supplementing, or amendment of this Liquidation Trust Agreement. Such proposed modification, supplementing, or amendment shall be in writing and filed with the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, notice of such filing shall be served on the full mailing matrix. No modification, supplementing, or amendment of this Liquidation Trust Agreement shall be effective except upon a Final Order of the Bankruptcy Court.

**11.2 Waiver.** No failure by the Liquidation Trustee, or any Beneficiary to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**11.3 Cumulative Rights and Remedies.** The rights and remedies provided in this Liquidation Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**11.4 Irrevocability**. The Liquidation Trust is irrevocable.

**11.5 Division of Trust.** Under no circumstances shall the Liquidation Trustee have the right or power to divide the Liquidation Trust unless authorized to do so by the Bankruptcy Court.

**11.6 Governing Law.** This Agreement shall be governed and construed in accordance with the laws of the State of Nevada, without giving effect to rules governing the conflict of laws.

**11.7 Retention of Jurisdiction.** To the fullest extent permitted by law, and except as expressly set forth in the Plan, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, or this Liquidation Trust Agreement, or any Person or Entity's obligations incurred in connection therewith or herewith, including, without limitation, any action against the Liquidation Trustee or any professional retained by the Liquidation Trustee or the Liquidation Trust, in each case in its capacity as such. Each party to this Liquidation Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Liquidation Trust Agreement, or of any other agreement or document delivered in connection with this Liquidation Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that (i) any action to enforce, interpret, or construe any provision of this Liquidation Trust Agreement will be brought only in the Bankruptcy Court and (ii) all determinations, decisions, rulings, and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to reargument or reconsideration.

**11.8 Severability.** In the event that any provision of this Liquidation Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this of this Liquidation Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Liquidation Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**11.9 Limitation of Benefits.** Except as otherwise specifically provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Liquidation Trust Beneficiaries any rights or remedies under or by reason of this Liquidation Trust Agreement.

**11.10 Notices**. All notices, requests, demands, consents, and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person, by facsimile with an electromechanical report of delivery, sent by overnight courier or by registered or certified mail with postage prepaid, return receipt requested, or sent via electronic

mail to the following addresses (as applicable to the particular notice, request, demand, consent, or other communication at issue).

| | |
|---|---|
| If to the Liquidation Trustee: | Law Offices of Michael W. Carmel, Ltd.<br>Attn: Michael Carmel<br>80 East Columbus Avenue<br>Phoenix, Arizona 85012<br>Email: michael@mcarmellaw.com |
| With a copy to: | Garman Turner Gordon LLP<br>Attn: Gregory E. Garman, Esq.<br>Talitha Gray Kozlowski, Esq.<br>Mary Langsner, Ph.D.<br>7251 Amigo Street, Suite 210<br>Las Vegas, Nevada 89119 |

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands, requests, consents, notices, and communications shall be deemed to have been given (i) at the time of actual delivery thereof if by facsimile or electronic mail; (ii) if given by certified or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid, and properly addressed; or (iii) if given by overnight courier, the next business day after being sent, charges prepaid, and properly addressed.

**11.11 Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Liquidation Trust Agreement, and to consummate the transactions contemplated hereby.

**11.12 Integration.** This Liquidation Trust Agreement, the Plan, the Global Settlement Agreement, the Global Settlement Order and the Confirmation Order constitute the entire agreement, by and among the parties with respect to the subject matter hereof, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, or in the Confirmation Order. This Liquidation Trust Agreement, together with the Plan, the Global Settlement Agreement, the Global Settlement Order, and the Confirmation Order, supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.

**11.13 Successors or Assigns.** The terms of this Liquidation Trust Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**11.14 Interpretation.** The enumeration and section headings contained in this Liquidation Trust Agreement are solely for convenience of reference and shall not affect the

meaning or interpretation of this Liquidation Trust Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Liquidation Trust Agreement, the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder, and words with similar import, refer to this Liquidation Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**11.15 Relationship to the Plan.** The principal purpose of this Liquidation Trust Agreement is to aid in the implementation of the Plan and Global Settlement Agreement and, therefore, this Liquidation Trust Agreement incorporates and is subject to the provisions of the Plan, the Global Settlement Agreement, the Global Settlement Order and the Confirmation Order. In the event that any provision of this Liquidation Trust Agreement is found to be inconsistent with a provision of the Plan, the Global Settlement Agreement, the Global Settlement Order or the Confirmation Order that does not pertain specifically to the Liquidation Trust and its administration with respect to matters not addressed in the Plan, the Global Settlement Agreement, the Global Settlement Order or the Confirmation Order, the provisions of the Plan, the Global Settlement Agreement, the Global Settlement Order or the Confirmation Order, as applicable, shall control.

**11.16 Counterparts.** This Liquidation Trust Agreement may be signed by the parties hereto in counterparts, each of which shall be deemed an original, and which, when taken together, shall constitute one and the same document. Delivery of any executed counterpart may be in "wet ink" form, via telecopy, or via electronic transmission attaching a copy in pdf format or the like.

**IN WITNESS WHEREOF**, the parties hereto have either executed this Liquidation Trust Agreement, or caused it to be executed on its behalf by its duly authorized officer, all as of the date first above written.

**DEBTORS:**

**NUMALE CORPORATION**

By: ______________________________________
Michael W. Carmel, Chapter 11 Trustee

**FELICIANO NUMALE NEVADA PLLC**

By: ______________________________________
Michael W. Carmel, Chapter 11 Trustee

**NUMEDICAL SC**

By: ________________________________
Michael W. Carmel, Chapter 11 Trustee

**NUMALE COLORADO SC**

By: ________________________________
Michael W. Carmel, Chapter 11 Trustee

**NUMALE FLORIDA TB PLLC**

By: ________________________________
Michael W. Carmel, Chapter 11 Trustee

**NUMALE NEBRASKA LLC**

By: ________________________________
Michael W. Carmel, Chapter 11 Trustee

**NUMALE NEW MEXICO SC**

By: ________________________________
Michael W. Carmel, Chapter 11 Trustee

**LIQUIDATION TRUSTEE:**

By: ________________________________
Michael W. Carmel

# EXHIBIT 4

EXHIBIT 4

GARMAN
TURNER
GORDON

7251 AMIGO STREET
SUITE 210
LAS VEGAS, NV 89119
WWW.GTG.LEGAL
PHONE: 725 777 3000
FAX: 725 777 3112

October 7, 2026

Talitha Gray Kozlowski, Esq.
tgray@gtg.legal

**SENT VIA EMAIL AND U.S. MAIL**
Luis Salazar, Esq.
Cole Schotz P.C.
80 SW 8th St., Suite 1900
Miami, Florida 33130
LSalazar@coleschotz.com

Alex Fugazzi, Esq.
Charles Gianelloni, Esq.
Bob Olson, Esq.
Snell and Wilmer
1700 South Pavilion Center Drive
Suite 700
Las Vegas, Nevada 89135
cgianelloni@swlaw.com
Bolson@swlaw.com
afugazzi@swlaw.com

Re: *In re NuMale Corporation, et al.,* Lead Case No. 25-10341-nmc (Bankr. D. Nev.); Objection to Rule 2004 Subpoenas Served on Quintairos, Prieto, Wood & Boyer, P.A., Eric Boyer, and Eddie Prieto; Request to Meet and Confer

Dear Luis, Alex, Charles, and Bob:

While it is unfortunate our meet and confer efforts did not result in a consensual resolution, the Trustee is nonetheless willing to modify the subpoenaed document requests issued to Quintairos, Prieto, Wood & Boyer, P.A ("QPWB"), Eric Boyer, and Edward Prieto as follows:

In the subpoenas issued to Messrs. Boyer and Prieto, request numbers 4 through 12 are focused on subsequent transferees. In an effort to address the asserted (but disputed) overbreadth and burden, the Trustee will agree to replace request numbers 4 through 12 with the following three requests:

For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, during the 2024 calendar year, produce Documents sufficient to show: (i) the identity of the

transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, during the 2025 calendar year, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

For any person, trust, or entity to which You transferred $250,000 or more, in the aggregate, since January 1, 2026, produce Documents sufficient to show: (i) the identity of the transferee, (ii) the amount transferred, (iii) the date of the transfer(s); and (iv) the reason for the transfer(s). This request excludes real property purchases for property that You continue to own.

Similarly, while the Trustee does not agree that the subpoenas issued to QPWB are overbroad or imposes an undue burden, particularly in light of QPWB's counsel's (Mr. Sgro) contention that the Trustee has not undertaken a sufficient investigation into the asserted claims, the Trustee will agree to replace request numbers 3, 7 through 14, 16, 17, with the following two requests:

For the 80 to 100 attorneys described by QPWB as "rainmakers" or as heads of "business units" within QPWB, produce the: (i) agreement between QPWB and such lawyer(s) governing their compensation and other rights with respect to QPWB; and (ii) Documents sufficient to identify their aggregate compensation in 2024, 2025, and year to date 2026.

Due to the delay that has transpired during the meet and confer process and as a result of the pending motion to quash, the Trustee agrees to withdraw without prejudice from the QPWB subpoenas, request numbers 21, 22, 23, 26, 27, and 28.

GARMAN TURNER GORDON

TALITHA GRAY KOZLOWSKI, ESQ.

cc:

Michael W. Carmel, Esq., Trustee
Greg Garman
Jamie Garman